# EXHIBIT "B"



Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 461898 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

Page 1

**H**
Porter v. U.S. Dept. of Army
N.D.Ill.,1995.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.
Willie Delois PORTER, Plaintiff,
v.
UNITED STATES DEPARTMENT OF the ARMY, Togo D. West, Secretary of the Army, Defendants.
**No. 93 C 6900.**

July 17, 1995.

*MEMORANDUM OPINION AND ORDER*
NORDBERG, District Judge.
**\*1** Pro se plaintiff, Willie Delois Porter ("Porter" or "Plaintiff"), brings this suit against her former employer, the United States Department of the Army ("the Army" or "Defendant"). Ms. Porter's claims are two-fold: first, she claims that her discharge stemmed from racially discriminatory motives, violative of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16; second, she appears to claim that her discharge and the ensuing administrative hearing violated her due process rights. The Army has filed numerous motions in response: a motion to strike parts of Plaintiff's complaint, a motion to dismiss Plaintiff's prayer for compensatory and punitive damages, a motion to dismiss the due process claims, and a motion for summary judgment on the Title VII claim.

I. FACTS AND PROCEDURAL HISTORY

A. Facts

The facts of this case are undisputed. They flow from the Army's Rule 12(m) Statement of Facts ("Def.'s Stmt."), to which Ms. Porter failed to file a responsive Rule 12(n) Statement. Her failure to file a 12(n) Statement obligates this Court to deem admitted the Army's Statement.

Local Rule 12(m) stipulates that a party moving for summary judgment must submit a "statement of facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law."N.D. Ill. R. 12(m). Local Rule 12(n) allows the nonmoving party to file a response that denies specific allegations in the movant's 12(m) Statement by pointing to references in the record or to other evidence that supports a contrary finding. N.D. Ill. R. 12(n). If a 12(n) Statement does not controvert an "undisputed fact" in a 12(m) Statement, courts in this District will deem that fact admitted. *Id.;Schulz v. Serfilco, Ltd., 965 F.2d 516, 519 (7th Cir. 1992)*.

The Army submitted a 12(m) Statement of Facts that laid out what it believed to be the undisputed material facts. The Army also sent notice to Plaintiff that included the text of Local Rules 12(m) and 12(n), an explanation of the consequences of non-compliance, and a prominent caption in capital letters that said, "NOTICE TO PLAINTIFF REGARDING THE CONSEQUENCES OF FAILING TO RESPOND TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT."Despite such clear notice, Plaintiff did not respond to Defendant's 12(m) Statement. This Court will therefore deem admitted the Army's 12(m) Statement of Facts. The admitted facts are as follows.

Ms. Porter, who is black, received a "career-conditional" appointment as a Clerk Typist at the Veterans' Administration Medical Center in Chicago on October 14, 1986. (Def.'s Stmt. ¶ 5.) The appointment was subject to the completion of a one-year probationary period. *Id.* On January 18, 1987, Ms. Porter was transferred to the position of Secretary (Typing) at the Army's facility in Fort Sheridan, Illinois. *Id.*

**\*2** During Ms. Porter's time at Fort Sheridan, Thomas Stancato, her supervisor, received complaints about the rude manner in which Porter answered the telephone, the constant disarray of her work area, and her failure to file documents, deliver phone messages, and deliver mail correctly. (Def.'s Stmt. ¶ 8.) Other witnesses also observed the rude manner in which Ms. Porter answered the telephone and her failure to take and relay messages. *Id.* ¶¶ 9, 11, 12.According to her supervisor and co-workers, Ms. Porter

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  Page 2
Not Reported in F.Supp., 1995 WL 461898 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

prepared documents improperly, *id.* ¶ 9, made "quite a few" spelling errors, *id.* ¶ 13, and did not prepare travel orders, which normally should have been one of her duties, *id.* ¶ 12. Other members of the staff had to do the work that Ms. Porter should have done, *id.* ¶¶ 12, 13, and found her to be hostile, argumentative, rude, and uncooperative, *id.* ¶¶ 8, 9, 10, 12. Mr. Stancato initiated Ms. Porter's termination, and she was discharged on March 27, 1987. *Id.* ¶ 6.

### B. Administrative Remedies to Which Plaintiff Resorted

On July 30, 1987, the United States Army Civilian Appellate Review Agency ("USACARA") investigated Ms. Porter's allegation of race discrimination. (Def.'s Stmt. ¶ 8.) On September 29, 1987, USACARA determined that she had failed to establish a prima facie case of discrimination and could not prove that Defendant's proffered, nondiscriminatory reasons for discharging her were pretextual. *Id.* ¶ 15. Defendant issued its final agency decision on November 25, 1991, holding that Ms. Porter had not been the subject of discrimination. *Id.* ¶ 17. Defendant informed Ms. Porter that she could appeal the decision to either the Equal Employment Opportunity Commission ("EEOC") within twenty days of receipt of the decision or file a civil action in federal court within thirty days. *Id.* If she appealed the decision to the EEOC, Plaintiff could then file a suit in federal district court within thirty days of the EEOC decision or, if the EEOC had not rendered a decision, any time after 180 days from the date of filing the EEOC appeal. *Id.* (citing 29 C.F.R. § 1613.281).

Plaintiff appealed the agency decision to the EEOC on December 20, 1991, but has never appealed to the Merit Systems Protection Board. (Def.'s Stmt. ¶ 18.)

### C. Procedural History Before this Court

On January 2, 1992, Ms. Porter filed a complaint in this Court, claiming that her discharge had sprung from racial motives in violation of Title VII and that her discharge was procedurally defective. The Court dismissed her claims without prejudice on October 15, 1993, nunc pro tunc September 30, holding that it had no jurisdiction over Porter's due process claims because she had not exhausted her administrative remedies. This Court also held that it lacked jurisdiction with respect to Ms. Porter's Title VII claim because she had filed it less than 180 days after filing the same claim with the EEOC. The Court invited Ms. Porter to refile her claims once she had exhausted her administrative remedies.

*3 Porter filed the present suit on November 10, 1993. The Court granted her motion for appointment of counsel, and appointed counsel to represent her. When her first appointed attorney claimed unfamiliarity with federal procedure and withdrew, the Court appointed a second attorney. Porter objected to the second attorney and moved the Court to allow her to proceed pro se. The Court granted her motion on January 11, 1994.

The complaint was served on the Attorney General on January 10, 1994, and on the Secretary of the Army on January 14, 1994. The Court ordered the Army to answer or otherwise plead by February 15. On February 17, two days after the Court-ordered deadline but pursuant to the Court's granting leave to the Army to file a brief in excess of fifteen pages, the Army filed motions to strike the complaint in part, dismiss it in part, and grant summary judgment on the remainder. A Statement of Facts as required by Local Rule 12(m) and an appendix of evidentiary material accompanied the motions.

After receiving leave to amend her complaint, Porter filed amendments and sixteen pages of legal argument on March 28, 1994. The Court accepted these materials as a response to the Army's motions.

Porter then filed a motion for default judgment, contending that the Army, in filing motions instead of an answer, failed to answer her complaint and had therefore admitted all of her allegations. She also filed a motion for reconsideration, asking the Court to reconsider its ruling requiring her to respond to the Army's motions. She submitted a forty-two-page brief with her motions. The Court again accepted these materials as part of her response to the Army's motions. The Army later filed its reply.

The Army's motions were referred to a magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) (1988). The Magistrate Judge has forwarded her Report and Recommendation to this Court and has made the following recommendations: to deny the Army's motion to strike parts of Porter's complaint; to deny as moot the Army's motion to dismiss her prayer for compensatory or punitive damages; to grant the Army's motion to dismiss all claims found in Porter's amended complaint with the exception of her Title VII claim; and to grant the Army's motion for

Not Reported in F.Supp. Page 3
Not Reported in F.Supp., 1995 WL 461898 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

summary judgment on Porter's Title VII claim.

For the following reasons, this Court affirms and adopts the Magistrate Judge's Report and Recommendation.

## II. ANALYSIS

### A. Referral to the Magistrate Judge

Plaintiff's first objection targets the referral process, itself. She argues that the Magistrate Judge was "not authorized to make any ruling on Plaintiff's ... complaints."(Plaintiff's Objection, hereinafter "Pl.'s Obj.", at 4.) Plaintiff cites 28 U.S.C. § 636(b)(1)(A) (1988) as a statutory bar against magistrate judges making final rulings on dispositive motions.[FN1] While the Court agrees with Plaintiff that Section 636(b)(1)(A) bars magistrate judges from making final rulings on dispositive motions, the Court finds that Plaintiff's objection misconstrues the nature of the Magistrate Judge's Report and Recommendation. The Report and Recommendation is not a final ruling, but merely a recommendation made under companion subparagraph 28 U.S.C. § 636(b)(1)(B). Subparagraph § 636(b)(1)(B) authorizes a district court judge to designate a magistrate judge to submit "*proposed* findings of fact and *recommendations* for the disposition, by a judge of the [district] court, of any motion excepted in subparagraph (A)...." 28 U.S.C. § 636(b)(1)(B) (emphasis added). The district court judge then "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate."28 U.S.C. § 636(b)(1).

*4 A party is entitled to file an objection to a magistrate judge's report and recommendation. Filing an objection obligates the district court judge to "make a de novo determination of those portions of the report ... to which objection is made."28 U.S.C. § 636(b)(1). On the other hand, if no timely objection is filed, a court need only satisfy itself that there is no clear error on the face of the record before it affirms and adopts a report and recommendation. *Walker v. Hood,* 679 F. Supp. 372, 374 (S.D.N.Y. 1988).

It appears that Plaintiff has filed an objection to the entire Report and Recommendation, albeit a lengthy and amorphous one. The Court, therefore, will review the Report and Recommendation de novo and make a final disposition of the pending motions.

### B. The Timing of Defendant's Motions

Plaintiff asserts that filing motions prior to an answer is procedurally improper. (Pl.'s Obj. at 3.) She argues that this impropriety constitutes a failure to answer her complaint in its entirety. A failure to answer implies a failure to deny, which Fed. R. Civ. P. 8(d) transforms into an admission.Fed. R. Civ. P. 8(d) ("Averments in a pleading to which a responsive pleading is required ... are deemed admitted when not denied in the responsive pleading.")

In fact, the Army filed all of its motions in a timely manner. Rule 12(b) provides that a party may make motions to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted "before [the responsive] pleading if a further pleading is required."Fed. R. Civ. P. 12(b).Rule 12(f) mandates that a party make a motion to strike "before responding to a pleading." Fed. R. Civ. P. 12(f). Finally, a defending party may move for summary judgment "at any time." Fed. R. Civ. P. 56(b). The docket shows that Plaintiff served her complaint on the United States Attorney on January 10, 1994, thereby commencing the sixty-day period that U.S. agencies and officers have to answer a complaint, Fed. R. Civ. P. 12(a)(3). This Court shortened the period to a little over a month by ordering Defendant to answer or otherwise plead by February 15. Defendant filed its motions two days after the February 15 deadline, but the Court implicitly excused the delay by granting Defendant leave to file a brief longer than fifteen pages. Defendant, therefore, did not commit any procedural improprieties in filing its motions prior to filing an answer.

Moreover, Defendant did not need to submit an answer by the February 15 deadline set by this Court because it filed a Rule 12(b) motion. Courts in this Circuit have held that a timely filed Rule 12(b) motion alters the statutory period for filing an answer, and the defendant is justified in withholding an answer pending adjudication of its pre-answer motion. *Kness v. Grimm,* 761 F. Supp. 513, 516 (N.D. Ill. 1990). The time extension applies to an answer for the entire complaint and not just to answers for the portions of the complaint that the motion addresses. *Brocksopp Engineering, Inc. v. Bach Simpson, Ltd.,* 136 F.R.D. 485, 486 (E.D. Wis. 1991); *see also*5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1346, at 181 (1990). Defendant filed two motions under Rule 12(b): a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction and a Rule 12(b)(6)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  Page 4
Not Reported in F.Supp., 1995 WL 461898 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

motion for failure to state a claim upon which relief can be granted. Filing the Rule 12(b) motions alters the period for filing an answer and allows Defendant to wait until after adjudication of its motions to answer Plaintiff's complaint.

C. Defendant's Motions to Strike and to Dismiss

***5** Turning to the substance of Defendant's motions, Defendant first moves to strike all but the first seven pages of Plaintiff's complaint and all claims for punitive and compensatory damages. Defendant further moves to dismiss all claims, except the Title VII claim, for lack of subject matter jurisdiction. For the reasons outlined below, the Court affirms and adopts the Magistrate Judge's Report and Recommendation, and thereby (1) denies Defendant's motion to strike portions of the complaint,[FN2] (2) denies as moot Defendant's motion to dismiss Plaintiff's prayer for punitive and compensatory damages, and (3) grants Defendant's motion to dismiss all claims except the Title VII claim.

1. Motion to Strike Portions of the Complaint

Defendant moves to strike all but the first seven pages of Plaintiff's twenty-two-page complaint, arguing that while the first seven pages make up the substance of Plaintiff's complaint, the remaining pages contain legal argument, not factual allegations, and are therefore immaterial. Fed. R. Civ. P. 12(f) allows a court to strike "from any pleading ... any redundant, immaterial, impertinent, or scandalous matter."Indeed, the last fifteen pages of Plaintiff's complaint do contain arguments that appear to be immaterial or redundant.

However, courts have viewed Rule 12(f) motions with disfavor. *Balabanos v. North American Inv. Group, Ltd.,* 708 F. Supp. 1488, 1497 (N.D. Ill. 1988). Reasons include the risk that something may be discarded that may turn out to be material, (Report and Recommendation at 7); the drastic nature of this remedy, 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1380, at 647 (1990); and the fact that such motions are considered "time wasters" because they require courts to edit complaints, *id.* § 1382, at 683. Moreover, as the Magistrate Judge points out, some factual allegations are hiding among the pages of legal argument in Plaintiff's complaint, such as the allegation on page six (of the second part of the complaint) that Army officials illegally tampered with Porter's files. (Report

and Recommendation at 7.) In light of the above reasons, the Court affirms and adopts the Magistrate Judge's recommendation and denies Defendant's motion to strike portions of Plaintiff's complaint.[FN3]

2. Motion to Dismiss Prayer for Compensatory and Punitive Damages

Defendant incorrectly labels its defense to Plaintiff's claims for compensatory and punitive damages as a motion to strike, for such claims are neither an "insufficient defense" nor "redundant, immaterial, impertinent, or scandalous matter."Fed. R. Civ. P. 12(f). Defendant's motion may more accurately be labeled a motion to dismiss for "failure to state a claim upon which relief can be granted."Fed. R. Civ. P. 12(b)(6). Because the technical name is inconsequential, the Court may treat Defendant's motion to strike as a 12(b)(6) motion. *Balabanos v. North American Inv. Group, Ltd.,* 708 F. Supp. 1488, 1497 (N.D. Ill. 1988).

**\*6** Whether designated a motion to strike or a motion to dismiss, the Court need not address the merits of this motion. Because this Court has adopted below the Magistrate Judge's recommendation to grant Defendant's motion for summary judgment on Plaintiff's Title VII claim, Defendant's Motion to Strike Plaintiff's prayer for compensatory and punitive damages is rendered moot.

3. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Pursuant to Fed. R. Civ. P. 12(b)(1), Defendant moves to dismiss all claims, except the Title VII claim, for lack of subject matter jurisdiction. According to Defendant, the Court lacks jurisdiction because Plaintiff has failed to exhaust her administrative remedies. The Court agrees with Defendant and with the Magistrate Judge that Plaintiff has failed to exhaust her administrative remedies, and thus the Court grants Defendant's motion and dismisses without prejudice all of Plaintiff's claims other than her Title VII claim.

The claims for which Plaintiff has failed to exhaust her administrative remedies are her due process claims, which fall under the catch-all category of "prohibited personnel practices"[FN4] under 5 U.S.C. § 2302 of the Civil Service Reform Act ("CSRA"), P.L. No. 95-454, 92 Stat. 1138 (1978), found as amended in various sections of Title 5 of the United

Case 1:07-cv-06535   Document 22-3   Filed 12/13/2007   Page 6 of 11

Not Reported in F.Supp.  Page 5
Not Reported in F.Supp., 1995 WL 461898 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

States Code. Plaintiff's due process claims include allegations that her discharge was "arbitrary," "capricious," and "unlawful", (Pl.'s Compl. at 3); that Army officials sabotaged her work record, *id.* at 6 (part D); and that the Army improperly treated her as a probationary employee, *id.* at 2 (part B). Plaintiff further alleges that the subsequent USACARA hearing suffered from procedural defects, including claims that USACARA allowed in impermissible evidence and that, as a consequence, its ruling was "arbitrary," "capricious," and "an abuse of discretion." *Id.* at 3 (part C), 10 (part E). According to Plaintiff, the impermissible evidence included false testimony from noncredible witnesses, *id.* at 10 (part E), evidence obtained after the fact, *id.,* and illegally obtained evidence, specifically a Veterans' Administration's SF-50, *id.* at 6 (part D).

This Court dismissed Plaintiff's due process claims without prejudice in Plaintiff's previous case. *Porter v. United States Dep't of the Army,* No. 92 C 21, 1993 WL 420899 (N.D. Ill. Oct. 18, 1993) (hereinafter *Porter I*). In *Porter I,* the Court concluded that it lacked subject matter jurisdiction, as Plaintiff had failed to exhaust her administrative remedies by following the procedures outlined in the CSRA. Upon further research, the Court reaffirms its prior decision and adopts the Magistrate Judge's recommendation that Plaintiff's due process claims be dismissed without prejudice because Plaintiff has failed to exhaust her administrative remedies.

*7 The Court notes that the issue of employment status is crucial to the question of subject matter jurisdiction because, under the CSRA, an employee's employment status dictates whether or not she has access to the federal court system. This Circuit has determined that an employee's substantive rights and procedural protections depend on the employment category the employee falls under.[FN5] *Feit v. Ward,* 886 F.2d 848, 852 (7th Cir. 1989) (citing *Harrison v. Bowen,* 815 F.2d 1505, 1510 (D.C. Cir. 1987)). One substantive right a federal employee may possess is the right to court review of personnel decisions. Courts have held that the right to court review of federal personnel decisions is permitted as provided in the CSRA or not at all. *Veit v. Heckler,* 746 F.2d 508, 511 (9th Cir. 1984); *Ayrault v. Pena,* 866 F. Supp. 372, 375 (N.D. Ill. 1994).*See also Bush v. Lucas,* 462 U.S. 367, 388-90 (1983) (pointing to the comprehensive nature of civil service remedies as the reason for declining to create a "new judicial remedy").

Under the CSRA regime, a probationer's right to judicial review is vastly different from that of a federal nonprobationary employee, which Plaintiff claims to be, (Pl.'s Compl. at 2 (part B)). A probationer has only the "weakest claims of entitlement to continued employment and may be discharged within the broad discretion of the employing agency."*Bartholomew v. United States,* 740 F.2d 526, 530 (7th Cir. 1984). Her procedural rights, including her appeal rights, are accordingly circumscribed. *Id.;Mastriano v. Federal Aviation Auth.,* 714 F.2d 1152, 1155 (Fed. Cir. 1983). On the other hand, a federal nonprobationary employee, may avail herself of a wide panoply of procedural safeguards that encompass "procedures--administrative *and judicial*--by which improper action may be redressed."*Bush v. Lucas,* 462 U.S. 367, 385 (1983) (emphasis added). In fact, for a "mixed case,"[FN6] the CSRA provides federal nonprobationary employees[FN7] with nine windows into the federal court system. See Barbara L. Schlei & Paul Grossman, *Employment Discrimination Law* at 1210 n.146 (2d ed. 1983). One should note that, even for federal nonprobationary employees, judicial review is confined to the specific procedures set out in the CSRA. *Ryon v. O'Neill,* 894 F.2d 199, 204 (6th Cir. 1990). It follows that where a federal nonprobationary employee does not seek judicial review through one of the appropriate windows provided in the CSRA, a federal district court does not have subject matter jurisdiction.

Because Plaintiff's employment status dictates what administrative procedures she must exhaust and whether this Court has subject matter jurisdiction to hear Plaintiff's due process claims, the MSPB must first determine whether Plaintiff was a nonprobationary employee or a probationary employee at the time of her discharge. Plaintiff has failed to obtain an MSPB ruling on her employment status, and thus this Court cannot reach the question of subject matter jurisdiction with respect to Plaintiff's due process claims.

*8 A similar situation arose in *Majahad v. Reich,* No. CIV.A.94-10008-RWZ, 1995 WL 96903 (D. Mass. Feb. 28, 1995). The *Majahad* plaintiff, a federal civil servant, claimed due process violations, discrimination based on gender and age, and error by the employing agency in treating him as a probationary employee. The court determined that the plaintiff had to challenge his dismissal before the MSPB, and that failure to do so precluded a suit in federal court. *Id.* Upon the plaintiff's contention that an MSPB appeal was unavailable to probationary employees, the court decided that the MSPB

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-06535   Document 22-3   Filed 12/13/2007   Page 7 of 11

Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 461898 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.)

Page 6

nevertheless had authority to determine whether an agency properly deemed the employee to be on probation, and thus the *Majahad* court dismissed the plaintiff's due process claims for lack of subject matter jurisdiction. *Id. (citing Aizin v. Dep't of Defense,* 52 M.S.P.R. 146, 149 (1991)).

This Court finds the reasoning in *Majahad* persuasive. Although the Army, through the USACARA proceeding, never specifically determined Plaintiff's employment status, *Porter I,* 1993 WL 420899, at *3, it is not the role of this Court to serve as a "classification clerk," *Coyle v. Adelman,* 705 F. Supp. 48, 52 (D.D.C. 1989), or to entertain questions on jurisdiction or Plaintiff's appeal rights based on speculation as to whether or not Plaintiff was a probationary employee at the time of her discharge. Until Plaintiff presents the issue to the MSPB and the MSPB determines Plaintiff's employment status at the time of her discharge, this Court will not be able to determine whether Plaintiff has properly sought judicial review through one of the windows provided by the CSRA.

Plaintiff's final attempt to find an avenue into federal court for her Due Process Claims appears to originate from outside the CSRA. Specifically, she points to the Constitution as the source of her right to federal court review. Pl.'s Obj. at 2 (*citing Williams v. Internal Revenue Serv.,* 745 F.2d 702, 704 (D.C. Cir. 1984) ("the comprehensive remedial framework of the CSRA does not supplant the authority of courts to safeguard ... procedural rights under the fifth amendment")).[FN8]

Although it is true that the Constitution supports a private cause of action based on an alleged violation of the Due Process Clause (termed a *Bivens* action), the Seventh Circuit has held that plaintiffs alleging constitutional violations are precluded from maintaining a *Bivens* action in two circumstances: "The first is when the defendants demonstrate 'special factors counseling hesitation in the absence of affirmative action by Congress.' The second is when defendants show that Congress has provided an alternative remedy which it explicitly declared to be a *substitute* for recovery directly under the Constitution and viewed as equally effective."

*9 *Feit,* 886 F.2d at 851 (*quoting Carlson v. Green,* 446 U.S. 14, 18-19 (1980)). The latter condition does not apply to the CSRA because Congress has not explicitly declared the remedies provided in the CSRA to be substitutes for *Bivens* actions. *Id.* However, the *Feit* court held that the comprehensive nature of the CSRA and Congress's expertise and authority in the field of federal employee relations constitute "special factors counseling [[[judicial] hesitation," thereby precluding Plaintiff from bringing a *Bivens* action to court to redress violations of her constitutional rights in the context of an adverse personnel decision. *Id.* at 851-55.

Finally, one may not claim that one's administrative remedies are "ineffective, and thus not 'meaningful,'" *id.* at 835, in order to circumvent the CSRA's remedial framework and bring one's case to federal court. The *Feit* court held that "the 'special factors' doctrine does not require a foray into the meaningfulness of a federal employee's remedies within the CSRA." *Id.* at 854. In short, absent an entrance through a CSRA-provided window into federal court, a federal employee may not bring a *Bivens* action alleging due process violations in the context of an adverse employment decision because such actions are actionable under the comprehensive scheme provided by the CSRA. *Id.* at 850-55; *McDowell v. Cheney* 718 F. Supp. 1531, 1539-41 (M.D. Ga. 1989). *See also Schrachta v. Curtis,* 752 F.2d 1257, 1260 (7th Cir. 1984) (holding that detailed administrative framework established by CSRA shows congressional intent for CSRA to be exclusive means of redress); *Veit,* 746 F.2d at 511 (access into federal courts is available only as "expressly authorized by Congress in the CSRA or elsewhere"); *Berrios v. United States Dep't of the Army,* 884 F.2d 28, 31 (1st Cir. 1989) ("constitutional challenges to agency action ... are fully cognizable within this [CSRA] system").

The Court dismisses Plaintiff's due process claims without prejudice. The Court will not address the merits of Plaintiff's due process claims until Plaintiff has demonstrated a CSRA-mandated avenue into a federal district court. Once Plaintiff can show that she has a judicially reviewable action, then and only then will a federal court have jurisdiction to review her case.

D. Defendant's Motion for Summary Judgment

The Court affirms and adopts the Magistrate Judge's recommendation regarding Defendant's motion for summary judgment. Accordingly, the Court grants Defendant's motion for summary judgment on Plaintiff's Title VII claim because she has failed to show that there is a genuine issue of material fact that requires resolution by a trial on the merits.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-06535    Document 22-3    Filed 12/13/2007    Page 8 of 11

Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 461898 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

Page 7

*10 Plaintiff objects to the Magistrate Judge's disposition of Defendant's motion for summary judgment, arguing that the Magistrate Judge erroneously converted Defendant's 12(b)(1) motion into a motion for summary judgment. (Pl.'s Obj. at 22.) However, contrary to Plaintiff's contentions, the Magistrate Judge did not convert Defendant's 12(b)(1) motion into a motion for summary judgment. Rather, the Magistrate Judge considered and decided each motion separately. Thus, Plaintiff's objection is without merit.

Summary judgment is appropriate where no genuine issues of material fact exist and where the moving party, in this case the Defendant, is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Although the Court must draw all reasonable inferences in a light most favorable to the nonmoving party, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 317, 322-26 (1986), the nonmoving party may not rest on the mere allegations or denials in her pleadings, but must set forth specific facts that show a genuine issue for trial, Fed. R. Civ. P. 56(e). Thus, the nonmoving party must demonstrate that there is admissible evidence that will support her position. *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 443 (7th Cir. 1994). That evidence must be sufficiently strong that a jury could reasonably find for the nonmovant. *Walker v. Shansky,* 28 F.3d 666, 671 (7th Cir. 1994).

Plaintiff is doing exactly what Rule 56(e) proscribes: she is resting on the mere allegations in her pleadings. She has failed to demonstrate the existence of any admissible evidence in support of her position, whether it be depositions, answers to interrogatories, or affidavits, *see* Fed. R. Civ. P. 56(c), (e). Plaintiff has submitted only her complaint and various motions that *allege* certain facts. Such allegations fall short of being admissible evidence.

Defendant is entitled to summary judgment because Plaintiff has failed to establish a prima facie case under Title VII. A summary judgment proceeding implicates the substantive law of employment discrimination and the applicable burdens of proof. *Williams v. Williams Electronics,* 856 F.2d 920, 922 (7th Cir. 1988); *Liberty Lobby,* 477 U.S. at 252. In this case, the substantive law of employment discrimination allows a plaintiff to prove discrimination indirectly through the three-step, burden-shifting method of proof set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). First, this mechanism places on the plaintiff the burden of producing evidence sufficient to establish a prima facie case of discrimination. *McDonnell Douglas,* 411 U.S. at 801. Second, should the plaintiff establish a prima facie case, a presumption of discrimination arises. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254 (1981); *St. Mary's Honor Ctr. v. Hicks,* 113 S. Ct. 2742, 2747 (1993). The burden then shifts to the defendant to rebut the presumption by coming forward with some legitimate, nondiscriminatory reason for its actions. *McDonnell Douglas,* 411 U.S. at 801; *Hicks,* 113 S. Ct. at 2747. Third, if the defendant meets its burden of production, the presumption dissolves and the plaintiff, who is tasked throughout the trial with the ultimate burden of showing intentional discrimination, must prove that the defendant's proffered reasons are a pretext for discrimination. *Hicks,* 113 S. Ct at 2747 (citing *Burdine,* 450 U.S. at 253, 256).

*11 Establishing a prima facie case entails producing enough evidence to show that (1) the plaintiff belongs to a racial minority, (2) she was doing her job well enough to meet her employer's legitimate expectations, (3) in spite of her performance she was discharged, and (4) the employer sought a replacement for her. *Rush v. McDonald's Corp.,* 966 F.2d 1104, 1113-14 (7th Cir. 1992) (citing *Yarbrough v. Tower Oldsmobile, Inc.,* 789 F.2d 508, 511 (7th Cir. 1986)). This initial burden of production is light for all elements, including the second element. As the Seventh Circuit observed, a "determination that an individual is performing a job well enough to meet an employer's legitimate expectations, when made in the context of a prima facie case, may be based solely upon the employee's testimony concerning the quality of his work." *Williams Electronics,* 856 F.2d at 923 n.6.

Light though this burden may be, it is a burden nonetheless, and Plaintiff must produce *some* evidence, even in the context of summary judgment. *See DeLuca v. Winer Indus.,* 53 F.3d 793 (7th Cir. 1995) (affirming entry of summary judgment against discharged employee because employee failed to produce evidence to establish an element of prima facie case). Plaintiff has not carried even this light burden, notwithstanding her conclusory protests that she "proved her prima facie case with direct and indirect evidence, on the record, as a whole."(Pl.'s Obj. at 30.) She has filed no affidavits, depositions, or answers to interrogatories or submitted any admissible evidence showing that she was doing her job well enough to meet her employer's legitimate expectations. Furthermore, Plaintiff's failure to file a Rule 12(n) Statement of Facts controverting Defendant's 12(m) Statement obligates this Court to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-06535   Document 22-3   Filed 12/13/2007   Page 9 of 11

Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 461898 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

Page 8

deem admitted Defendant's 12(m) Statement. *See supra* pp. 1-2. Absent a 12(n) Statement or any other admissible evidence in Plaintiff's favor and in light of the great amount of evidence Defendant has presented showing that Plaintiff performed her job poorly, no reasonable jury could find that Plaintiff's work had met Defendant's legitimate expectations. Accordingly, Plaintiff has not established a prima facie case of employment discrimination and Defendant is entitled to judgment as a matter of law on Plaintiff's Title VII claim.

Even if one were to assume, for the sake of argument, that Plaintiff had successfully established a prima facie case, Defendant has an opportunity to proffer legitimate, nondiscriminatory reasons for discharging her. In attacking Defendant's evidence, Plaintiff astutely recognizes that this step also requires a presentation of evidence. As the *Burdine* Court observed, "the defendant must clearly set forth, *through the introduction of admissible evidence*," reasons for its actions that are sufficient to justify a judgment for the defendant. *Burdine,* 450 U.S. at 255 (emphasis added). The Supreme Court highlights this in *Hicks,* 113 S. Ct. at 2747: "the *McDonnell Douglas* presumption shifts the burden of *production* to the defendant...." *See also Hicks,* 113 S. Ct. at 2749, n.3 (*citing Watson v. Fort Worth Bank & Trust,* 487 U.S. 977, 986 (1988) (construing the *McDonnell Douglas* test as a means of "arranging the presentation of evidence")).

*12 Defendant meets its burden of production by presenting evidence that it discharged Plaintiff for not performing her job well enough to meet Defendant's legitimate expectations. Its primary submission is a transcript of the USACARA hearing on July 30, 1987. The transcript contains testimony by Plaintiff's co-workers and supervisors recounting numerous instances of Plaintiff's inadequate performance: improper preparation of documents, (Defense Exhibit 3 at 13, 93); failure to prepare travel orders, *id.* at 116, 123-25, 132-33; inappropriate telephone decorum, *id.* at 13, 18, 20, 96, 185-186; and disruptive or hostile behavior at the office, *id.* at 45, 48, 166, 185, 201.

Plaintiff attacks Defendant's proffered reason in two ways. First, she argues that Defendant's evidence, primarily the USACARA transcript, is inadmissible. Plaintiff's argument is meritless. As the Magistrate Judge observes, "transcripts of hearings in which witnesses testify under oath are, like affidavits, admissible in connection with a motion for summary judgment." Report and Recommendation at 11-12.

*See also Steven v. Roscoe Turner Aeronautical Corp.,* 324 F.2d 157, 161-62 (7th Cir. 1963) (certified testimony at administrative hearing may be admissible in a summary judgment proceeding; such testimony has same evidentiary value and safeguards as affidavits which are provided for in Fed. R. Civ. P. 56(e)); *S.E.C. v. Research Automation Corp.,* 585 F.2d 31, 34 n.5 (2d Cir. 1978) (sworn testimony taken in administrative investigation may be used pursuant to Fed. R. Civ. P. 56(c) on a motion for summary judgment). The transcript in this case consists of sworn testimony and is certified by a court reporter as a true record of the testimony given by the witnesses. (Defense Exhibit 3 at 234.) The transcript is therefore admissible.

Second, Plaintiff appears to assert that Defendant's proffered reason for discharge is pretextual. Plaintiff must counter any permissible reasons that Defendant proffers with admissible evidence. Plaintiff may not rest on mere allegations in her pleadings or on conclusory declarations. Plaintiff need not produce evidence that suggests that the proffered reason was a pretext for specifically discrimination, but only "'*produce evidence* from which a rational fact-finder could infer that the company lied' about its proffered reasons for [[her] dismissal."*Anderson v. Baxter Healthcare Corp.,* 13 F.3d 1120, 1124 (7th Cir. 1994) (*quoting Shager v. Upjohn Co.,* 913 F.2d 398, 401 (7th Cir. 1990)) (emphasis added).

Plaintiff neither produces nor points to evidence in the record to show that Defendant's proffered reason for discharge is incredible. Rather, she declares conclusorily that Defendant's proffered reason is unworthy of credence. (Pl.'s Obj. at 32.) In contrast to Plaintiff's bare, conclusory statements is Defendant's transcript which contains extensive testimony of various witnesses describing Plaintiff's poor job performance, (e.g., Defense Exhibit 3 at 94-97, 118, 125), and unfriendly manners, (e.g., Defense Exhibit 3 at 84-85, 138-39).

*13 A court on a motion for summary judgment must look at the record as a whole to determine if a jury could reasonably find for the plaintiff.*Liberty Lobby,* 477 U.S. at 252;*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 547, 587 (1986). In a case such as this, where the nonmoving party has failed to file a 12(n) Statement, has presented no evidence in her favor, and bases her claim on conclusory allegations that she was meeting her employer's legitimate expectations and that her employer's proffered reason for discharge is unworthy of credence, the Court concludes that no rational jury

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-06535   Document 22-3   Filed 12/13/2007   Page 10 of 11

Not Reported in F.Supp.                                                                                    Page 9
Not Reported in F.Supp., 1995 WL 461898 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

could find for Plaintiff. The Court accordingly grants Defendant's motion for summary judgment.

### III. SUMMATION

As the Magistrate Judge points out, pro se litigants present courts with a dilemma. (Report and Recommendation at 4.) On the one hand, courts strive to do justice for all, observing an individual's right to represent herself. *Id.* at 4, 5. On the other hand, courts must follow the Federal Rules of Civil Procedure and the Local Rules, along with the substantive laws, all of which are binding on parties both represented and unrepresented. *Id.* at 4. Although a court must hold pro se litigants to less stringent standards, *Kincaid v. Vail,* 969 F.2d 594, 598 (7th Cir. 1992), cert. denied sub. nom., *Sceifers v. Vail,* 113 S.Ct. 1002 (1993), Plaintiff has not met even these lenient standards. Plaintiff insisted on representing herself throughout this proceeding even though the Court advised her of the advisability of being represented by an attorney.

Because Plaintiff has failed to demonstrate that she has exhausted her administrative remedies and appropriately sought judicial review through one of the windows provided by the CSRA, the Court grants Defendant's motion to dismiss her due process claims for lack of subject matter jurisdiction. As Plaintiff has failed to produce evidence sufficient to support a prima facie case of discrimination or evidence that Defendant's proffered reason for termination is unworthy of credence, this Court grants Defendant's motion for summary judgment on her Title VII claim.

### IV. CONCLUSION

For the foregoing reasons, the Court affirms and adopts the Magistrate Judge's Report and Recommendation. The Court grants Defendant's motion to dismiss Plaintiff's due process claims and Defendant's motion for summary judgment on Plaintiff's Title VII claim. The Court denies Defendant's motion to strike all but the first seven pages of Plaintiff's complaint. The Court denies as moot Defendant's motion to dismiss Plaintiff's prayer for compensatory and punitive damages on her Title VII claim.

As this is a final judgment, Plaintiff has the right to appeal this Court's decision to the Seventh Circuit Court of Appeals. Pursuant to Federal Rule of Appellate Procedure 3(a), an appeal from this Court's decision must be taken by filing a notice of appeal with the clerk of the district court. Under Federal Rule of Civil Procedure 4(a)(1), Plaintiff, if she intends to appeal, must file a notice of appeal with the district court within 60 days from the date of this opinion.

### JUDGMENT

*14 IT IS ORDERED AND ADJUDGED for the foregoing reasons, the Court afirms and adopts the Magistrate Judge's Report and Recommendation. The Court grants Defendant's motion to dismiss Plaintiff's due process claims and Defendant's motion for summary judgment on Plaintiff's Title VII claim. The Court denies Defendant's motion to strike all but the first seven pages of Plaintiff's complaint. The Court denies as moot Defendant's motion to dismiss Plaintiff's prayer for compensatory and punitive damages on her Title VII claim.

> FN1. "A judge may designate a magistrate to hear and determine any pretrial matter pending before the court, except a motion ... for summary judgment, ... to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action." 28 U.S.C. § 636(b)(1)(A).
>
> FN2. While the Magistrate Judge in the conclusion of her Report and Recommendation denies as moot Defendant's motion to strike portions of Plaintiff's complaint, the Magistrate Judge nevertheless discusses the merits of Defendant's motion in the body of the Report and Recommendation. Thus, this Court will also address the merits of Defendant's motion to strike.
>
> FN3. Plaintiff objects to the Magistrate Judge's recommendation to deny Defendant's motion to strike. (Pl.'s Obj. at 15.) One should note that denying Defendant's motion to strike means that the Plaintiff has prevailed on this particular motion.
>
> FN4. Section 2302 defines "prohibited personnel practices" to include any action or failure to take action that "violates any law, rule, or regulation implementing, or directly concerning, the merit system principles

Case 1:07-cv-06535  Document 22-3  Filed 12/13/2007  Page 11 of 11

Not Reported in F.Supp.  
Not Reported in F.Supp., 1995 WL 461898 (N.D.Ill.)  
**(Cite as: Not Reported in F.Supp.)**

Page 10

contained in [5 U.S.C.] section 2301...."5 U.S.C. § 2302(b)(11).Section 2301 incorporates constitutional rights into the merit system principles: "All employees ... should receive fair and equitable treatment in all aspects of personnel management ... with proper regard for their privacy and constitutional rights."5 U.S.C. § 2301(b)(2).

FN5. The CSRA scheme categorizes federal employees into four groups: (1) those in the "competitive civil service"; (2) those who are "preference eligible"; (3) those in the "excepted" civil service; and (4) "probationers," being those who have one year or less of service. *Feit v. Ward,* 886 F.2d 848, 852 (7th Cir. 1989).

FN6.Title 5 U.S.C. § 7702(a)(1) describes a "mixed case" to be one where an employee (1) has been affected by an action appealable to the MSPB, and (2) alleges that a basis for the action was discrimination prohibited by Title VII.

FN7. Employment status also determines appealability to the MSPB. Unlike a federal nonprobationary employee, a probationer may appeal to the MSPB only in cases where: (1) the employee alleges discrimination based on partisan political reasons or marital status, 5 C.F.R. §§ 1201.3(a)(8)(i), 315.806(b) (1995); (2) the termination was based on conditions arising before appointment and the employee alleges that the procedure was improper, 5 C.F.R. §§ 1201.3(a)(8)(ii), 315.806(c); or (3) the employee alleges discrimination based on, among other things, race, but only in conjunction with either one of the two conditions addressed in (1) or (2), 5 C.F.R. § 315.806(d). Plaintiff's claims fall under none of these conditions.

FN8. The Court notes that the D.C. Circuit later questioned the rationale of *Williams* in *Spagnola v. Mathis,* 859 F.2d 223, 230 (D.C. Cir. 1988).

N.D.Ill.,1995.  
Porter v. U.S. Dept. of Army  
Not Reported in F.Supp., 1995 WL 461898 (N.D.Ill.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.