In the United States District Court
For the Northern District of Illinois
Eastern Division

| | |
|---|---|
| DIGISOUND-WIE, INC., | |
| Plaintiff, | 07 CV 6535 |
| v. | Judge Lindberg |
| BESTAR TECHNOLOGIES, INC., et al. | Magistrate Judge Mason |
| Defendants. | |

# Amended Complaint

Plaintiff DIGISOUND-WIE, INC. (Digisound-WIE), complains of defendants BESTAR TECHNOLOGIES, INC. ("BeStar Technologies"), DIRK DE YOUNG, HELENE DE YOUNG, FLORIAN GREILING, LILLI GREILING, and CC ELECTRO SALES, INC. ("CC Electro Sales"):

## Allegations Common to All Counts

### Jurisdiction and Venue

1. Jurisdiction for this action is brought pursuant to 28 U.S.C. § 1331 as an action arising under federal law. Jurisdiction for state claims is brought under 28 U.S.C. § 1367, because the state law claims form part of the same case or controversy as the federal law claims, or, alternatively, under 28 U.S.C. § 1332(a), as one in which the plaintiff and all of the defendants are citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs.

2. The federal law claims arise under the Lanham Act, 15 U.S.C. § 1125(a) — Count 7 — and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C) — Count 8. The state law claims are for breach of contract by Dirk de Young (Count 1), breach of the duty of loyalty by Dirk de Young and Helene de Young (Count 2), breach of contract by CC Electro Sales (Count 3), breach of fiduciary duty by CC Electro Sales (Count 4), tortious interference with

contract by all defendants (Count 5), tortious interference with reasonable expectation of economic advantage by all defendants (Count 6), misappropriation of trade secrets by all defendants (Count 9), and civil conspiracy against all defendants (Count 10).

3.  Because defendants Florian Greiling and Lilli Greiling are non-resident aliens, venue in this district is proper under 28 U.S.C. § 1391(d). Defendant BeStar Technologies and CC Electro Sales do business in this district, making venue in this district proper under 28 U.S.C. § 1391(c). Defendants Dirk de Young, Helene de Young, and CC Electro Sales entered into the contracts with Digisound-WIE that are part of the subject matter of this case in this district, where Digisound-WIE's principal office is also located. The de Youngs also worked for Digisound-WIE in this district. With knowledge that Digisound-WIE's principal office is located in this district, the defendants directed tortious activities within this district, including, on information and belief, seeking to sell Digisound-trademarked goods and divert sales by Digisound-WIE in this district, making venue in this district proper under 28 U.S.C. § 1391(b)(2).

## Parties

4.  Plaintiff Digisound-WIE is an Illinois corporation formed in 2001 as a sales subsidiary of its parent company Digisound-Electronic GmbH, which owns all of its issued and outstanding shares. Its principal office is 1512 Artaius Parkway, Suite 100, Libertyville, Illinois 60048. Digisound-WIE sells buzzers, sirens, and loudspeakers, which are incorporated into automotive, telecommunication, fire and security, and white good products. At all times relevant and continuing to the present, Digisound-WIE holds common law trademark rights to the word mark DIGISOUND and a design logo using that word.

5.  Defendant BeStar Technologies, Inc. was incorporated as an Arizona corporation on May 10, 2007 by defendants Dirk de Young and Helene de Young while they were employed

by Digisound-WIE. BeStar Technologies' principal office is 999 E. Fry Blvd., Sierra Vista, Arizona 85635, which is the same address of the office and warehouse that Digisound-WIE had used until July 2007. BeStar Technologies' listed shareholders are defendants Dirk de Young, Helene de Young, and Lilli Greiling, as well as Wu YiFie, who is Managing Director of BeStar Electronics Industry Co., Ltd. ("BeStar Electronics") and "Changzhou BeStar Acoustic Co." ("BeStar Acoustic"), and Gou Ling, who is on the Board of Directors of BeStar Electronics and/or BeStar Acoustic.

6. Defendant Dirk de Young currently resides at 6334 S. Volcano Lane, Hereford, Arizona 85615. He was employed by Digisound-WIE as its National Sales Manager from approximately September 2001 until he resigned effective on or about June 25, 2007.

7. Defendant Helene de Young currently resides at 6334 S. Volcano Lane, Hereford, Arizona 85615, is married to co-defendant Dirk de Young, and was also employed by Digisound-WIE from June 2004 until she resigned effective on or about June 25, 2007.

8. Defendant Florian Greiling is a German resident and was Managing Director of Digisound-Electronic GmbH until his unexpected resignation on May 31, 2007. Until his resignation, Florian Greiling was in charge of Digisound-WIE's operations on behalf of Digisound-Electronic GmbH.

9. Defendant Lilli Greiling is a German resident, the daughter of Florian Greiling, and as Florian Greiling's agent, is a shareholder of co-defendant BeStar Technologies, Inc.

10. Defendant CC Electro Sales is an Indiana corporation with its principal place of business at 715 N. Senate Ave Indianapolis, Indiana.

## Relevant Agreements

11. Digisound-WIE employed Dirk de Young as its National Sales Manager pursuant to the terms of a 2001 Employment Agreement, a genuine copy of which is attached as Exhibit

3

A. Helene de Young was employed under the terms of a May 31, 2004 offer letter, a genuine copy of which is attached as Exhibit B. Both agreements were entered into in this district, where the de Youngs worked for Digisound-WIE until sometime in 2005, when they moved to Arizona. During their employment, the de Youngs were Digisound-WIE's sole employees and were responsible for placing orders to assure a steady supply of parts to fill customer orders. Dirk de Young was also responsible for obtaining new customers and new orders from existing customers.

12.     On or about August 18, 2001, Digisound-Electronic GmbH and BeStar Electronics entered into a written "Contract for Chinese-foreign Equity Joint Ventures" (the "Joint Venture Contract"), a genuine copy of which is attached as Exhibit C. Pursuant to the Joint Venture Contract, BeStar Acoustic was formed as the Chinese joint venture entity, which is 51% owned by BeStar Electronics, 40% by Digisound-Electronic GmbH, and 9% by Orient-American Trade Co. The joint venture's purpose was and is for BeStar Acoustic to manufacture parts, in accordance with specifications provided by Digisound-Electronic GmbH and its affiliates, for sale by Digisound-Electronic GmbH and its affiliates outside of China and by BeStar Electronics within China. As the wholly owned sales subsidiary of Digisound-Electronic GmbH, Digisound-WIE was either a party to or an intended third party beneficiary of the Joint Venture Contract.

13.     On or about November 6, 2002, Digisound-WIE and CC Electro Sales entered into a written "Sales Agency Agreement," a genuine copy of which is attached as Exhibit D.

## Defendants' Wrongful Acts

14.     Sometime before or during April 2007, while the joint venture was still in effect (and which remains in effect), BeStar Electronics (through Wu Yifie), Florian Greiling (who was then Managing Director of Digisound Electronics GmbH), and Dirk de Young and Helene de

4

Young (who were then Digisound-WIE's only employees) formed a plan to misappropriate Digisound-WIE's (a) customer relationships, (b) relationship with CC Electro Sales, and (c) sales.

15. The plan included, among other things, to have Dirk de Young and Helene de Young compete directly with Digisound-WIE while they still served as Digisound-WIE's sole employees and afterward, even though they knew that (a) both of the de Youngs were legally prohibited from competing with Digisound-WIE while employed by it and (b) Dirk de Young's Employment Agreement with Digisound-WIE prohibited him from competing with it during and for one year after his employment with it ended.

16. Sometime before or during April 2007, BeStar Electronics, the de Youngs (while still employed by Digisound-WIE), the Greilings, and others with whom they conspired induced CC Electro Sales to breach its written contract with Digisound-WIE in at least two ways. First, they induced CC Electro Sales to represent them in offering for sale parts bearing a counterfeit of the DIGISOUND trademark, and other parts that were the subject of the Joint Venture Contract, even though CC Electro Sales was still bound by contract to solely represent Digisound-WIE in offering those parts. Second, they induced CC Electro Sales to terminate its contract with Digisound-WIE on June 25, 2007 (which CC Electro Sales purposely did on the same day that the de Youngs resigned their employment with Digisound-WIE) without giving the contractual minimum of 30 days' prior notice. Part of the purpose in inducing CC Electro Sales' breaches was to in turn induce Digisound-WIE's customers and prospective customers to purchase the parts bearing a counterfeit DIGISOUND trademark from them through a false representation, created by their words and conduct, that the parts that they were actually offering on behalf of BeStar Technologies were in fact legitimate Digisound-WIE goods, authorized by Digisound-

WIE, and backed by Digisound-WIE's warranties, thereby avoiding the customers' and prospective customers' long and uncertain processes for qualifying new parts and vendors. In committing the breaches and others acts alleged herein, CC Electro Sales knowingly joined in the plan and conspiracy of the other defendants to misappropriate Digisound-WIE's customer relationships and sales.

17. In April 2007, in furtherance of the foregoing plan and conspiracy, the de Youngs (while still employed by Digisound-WIE) stopped submitting Digisound-WIE orders for BeStar Acoustic parts for the purpose of preventing Digisound-WIE from filling its orders from customers, whose just-in-time or lean manufacturing systems depend on suppliers maintaining an adequate supply of inventory for delivery as needed. As the customers' inventories grew short, CC Electro Sales, while still purporting to be Digisound-WIE's agents, purposely delayed responding to customer inquiries about the status of orders they had placed with Digisound-WIE through CC Electro Sales.

18. On or about April 24, 2007, in furtherance of the foregoing plan, the de Youngs (while still employed by Digisound-WIE) placed a "replacement" order for 45,000 BeStar Acoustic parts. The de Youngs specifically requested that the goods be manufactured with the DIGISOUND trademark, even though they knew that these goods would be sold without Digisound's authorization or approval. None of the parts ever appeared in Digisound-WIE's inventory or records. On information and belief, BeStar Electronics invoiced Digisound-WIE for the parts, which were diverted to BeStar Technologies and sold to Digisound-WIE's customers as if they were in fact legitimate Digisound-WIE parts. BeStar Technologies in turn told its customers that the parts were fully legitimate DIGISOUND parts, which was false, because the

parts had been diverted from Digisound-WIE immediately after manufacture, and had not gone through any quality control or inspection by Digisound-WIE.

19. On May 4, 2007, in furtherance of the foregoing plan, the de Youngs (while still employed by Digisound-WIE) signed papers to incorporate BeStar Technologies and filed its Articles of Incorporation on May 10, 2007 with the Arizona Secretary of State.

20. In early June 2007, BeStar Electronics, through Wu YiFie, met in China with the de Youngs (who were still employed by Digisound), Matt Cohen of CC Electro Sales (while still under contract with Digisound-WIE), and others to finalize their steps to misappropriate Digisound-WIE's existing and prospective customer relationships and sales. Around the same time, and while still under contract with Digisound-WIE, CC Electro Sales represented to Digisound-WIE's customers that it had "factory-direct" availability of legitimate DIGISOUND parts.

21. On or about June 25, 2007, the de Youngs resigned their employment with Digisound-WIE and immediately opened an office and warehouse for BeStar Technologies, on whose behalf it had leased the space while still employed by Digisound-WIE. The de Youngs located the office and warehouse in the suite adjoining Digisound-WIE, thus providing BeStar Technologies the same street address as Digisound-WIE's office and warehouse.

22. On or about June 25, 2007, CC Electro Sales further breached its contract with Digisound-WIE by terminating it without providing the contractual minimum 30 days' prior notice, during which it was obligated, but failed, to continue to vigorously promote Digisound-WIE and solicit orders for it. Both before the termination and continuing thereafter, CC Electro Sales was representing BeStar Technologies for the sale of DIGISOUND trademarked and other goods made by BeStar Acoustic. After terminating its contract with Digisound-WIE, CC Electro

Sales entered into an almost identical contract with BeStar Technologies, which it and the de Youngs had prepared and negotiated long in advance with BeStar Electronics' knowledge and approval.

23. During September 2007, Wu Yifie, acting on behalf of BeStar Electronics and BeStar Acoustic, provided letters of assurance for Digisound-WIE to give to its customers. The letters stated that BeStar Acoustic supplies its "current products for [name of customer] only via Digisound and Digisound affiliated companies in USA." The statement was intentionally false and intended to deceive Digisound-Electronic GmbH and Digisound-WIE that BeStar Electronics and BeStar Acoustic were complying, and would continue to comply, with the Joint Venture Contract. While BeStar Electronics and BeStar Acoustics were giving Digisound-Electronic GmbH and Digisound-WIE additional assurances that they would continue to deliver DIGISOUND parts to them, they were actually ignoring Digisound-Electronic GmbH's and Digisound-WIE's product orders and instead selling those parts to Digisound-Electronic GmbH's and Digisound-WIE's customers through BeStar Technologies and one or more German companies, GREWUS GmbH and Zircom GmbH, in which defendant Florian Greiling has an ownership interest. BeStar Technologies in turn told its customers that the parts were fully legitimate DIGISOUND parts, which was false, because the parts had been diverted from Digisound-WIE immediately after manufacture, and had not gone through any quality control or inspection by Digisound-WIE.

24. During 2007, Digisound-WIE sent BeStar Electronics credit memos for defective goods shipped to it. While BeStar Electronics did not dispute the correctness or accuracy of the credit memos, it claimed that Chinese accounting regulations prevented it from reducing the amount it claimed from Digisound-WIE by the amounts of the credit memos. BeStar Electronics

8

proposed, and Digisound-WIE accepted, that BeStar Electronics would pay by wire transfer to Digisound-WIE's bank account a portion of the credit memos immediately after each Digisound-WIE wire transfer to BeStar Electronics' bank account, so that when Digisound-WIE completed making its payments on invoices, BeStar Electronics would also complete its payments on Digisound-WIE's credit memos. Despite Digisound-WIE's payments, BeStar Electronics failed to make any payments to Digisound-WIE on its credit memos. BeStar Electronics then falsely claimed lack of full payment from Digisound-WIE as an excuse for refusing to deliver parts to Digisound-WIE to meet its customer obligations.

25. By preventing BeStar Acoustic parts from being delivered to Digisound-WIE, BeStar Electronics caused and continues to cause Digisound-WIE to be unable to fill customer orders, which BeStar Electronics has instead filled through BeStar Technologies.

26. As a result of the foregoing, Digisound-WIE suffered lost sales and injury to its existing and prospective customer relations in an amount in excess of $75,000.

## Count 1 – Breach of Contract by Dirk de Young

1-26. For ¶¶ 1-26 of Count 1, Digisound-WIE repeats the preceding ¶¶ 1-26 applicable to all counts.

27. The foregoing actions by Dirk de Young breach ¶ 14 of his Employment Agreement with Digisound-WIE.

28. Digisound-WIE has fully performed its obligations under the Employment Agreement.

THEREFORE, plaintiff Digisound-WIE, Inc. prays for all appropriate relief, including:

A. A preliminary and permanent injunction prohibiting Dirk de Young, and all those acting in concert with him, from continuing to breach ¶ 14 of his Employment Agreement.

9

  B.  An award of Digisound-WIE's damages, the compensation that Digisound-WIE paid to Dirk de Young while he was in breach of his Employment Agreement, and the amount of his wrongful profits.

## Count 2 – Breach of Duty of Loyalty by Dirk De Young and Helene de Young

1-26. For ¶¶ 1-26 of Count 2, Digisound-WIE repeats the preceding ¶¶ 1-26.

29. The foregoing actions by the de Youngs breached their duty of loyalty to Digisound-WIE.

30. In breaching their duty of loyalty, the de Youngs acted with actual malice to Digisound-WIE.

THEREFORE, plaintiff Digisound-WIE, Inc. prays for all appropriate relief, including an award of Digisound-WIE's damages, the compensation Digisound-WIE paid to the de Youngs while they were acting in breach of their duty of loyalty, the de Youngs' wrongful profits, and punitive damages.

## Count 3 – Breach of Contract by CC Electro Sales

1-26. For ¶¶ 1-26 of Count 3, Digisound-WIE repeats the preceding ¶¶ 1-26 applicable to all counts.

31. In engaging in the foregoing conduct, defendant CC Electro Sales breached its Sales Agency Agreement with Digisound-WIE.

32. Digisound-WIE has fully performed its obligations under its Sales Agency Agreement with CC Electro Sales.

THEREFORE, plaintiff Digisound-WIE, Inc. prays for all appropriate relief, including an award of Digisound-WIE's actual damages and the commissions Digisound-WIE paid to CC Electro Sales while it as in breach of the Sales Agency Agreement.

## Count 4 – Breach of Fiduciary Duty by CC Electro Sales

1-26.  For ¶¶ 1-26 of Count 4, Digisound-WIE repeats the preceding ¶¶ 1-26 applicable to all counts.

33.  By virtue of the Sales Agency Agreement and the agency services that CC Electro Sales undertook for Digisound-WIE, CC Electro Sales owed Digisound-WIE a fiduciary duty, until at least July 25, 2007, to vigorously promote it and solicit sales for it, and for no competitor, and to disclose to it all facts in its knowledge that may materially affect Digisound-WIE's interests.

34.  In engaging in the foregoing conduct, CC Electro Sales breached its fiduciary duty to Digisound-WIE and acted with actual malice to it.

THEREFORE, plaintiff Digisound-WIE, Inc. prays for all appropriate relief, including an award of Digisound-WIE's actual damages, the commissions Digisound-WIE paid to CC Electro Sales while it as in breach of the Sales Agency Agreement and its fiduciary duty, and punitive damages.

## Count 5 – Tortious Interference with Customer Contracts

1-26.  For ¶¶ 1-26 of Count 5, Digisound-WIE repeats the preceding ¶¶ 1-26 applicable to all counts.

35.  In engaging in the foregoing conduct, defendants have tortiously interfered with Digisound-WIE's contracts with customers by intentionally causing Digisound-WIE to be unable to meet its customer orders and appropriating the opportunity to fill those orders with parts either misappropriated from Digisound-WIE or otherwise wrongfully diverted from Digisound-WIE.

36.  In tortiously interfering with Digisound-WIE's contracts, defendants have acted with actual malice to Digisound-WIE.

THEREFORE, plaintiff Digisound-WIE, Inc. prays for all appropriate relief, including an award of Digisound-WIE's damages, the defendants' wrongful profits, and punitive damages.

## Count 6 – Tortious Interference with Reasonable Expectation Of Economic Advantage by All Defendants

1-26.   For ¶¶ 1-26 of Count 6, Digisound-WIE repeats the preceding ¶¶ 1-26 applicable to all counts.

37.   Digisound-WIE had a reasonable expectation that it would be the sole seller in the U.S. of Digisound-trademarked parts and other parts manufactured by BeStar Acoustics. Digisound-WIE also had a reasonable expectation to continue to receive and fill product orders from existing customers and new product orders from prospective customers that the de Youngs and CC Electro Sales had solicited on its behalf.

38.   In engaging in the above conduct, Defendants acted with actual malice to Digisound-WIE.

THEREFORE, plaintiff Digisound-WIE, Inc. prays for all appropriate relief, including an award of Digisound-WIE's damages, the defendants' wrongful profits, and punitive damages.

## Count 7 – Violation of Lanham Act, 15 U.S.C. § 1125(a), by All Defendants

1-26.   For ¶¶ 1-26 of Count 7, Digisound-WIE repeats the preceding ¶¶ 1-26 applicable to all counts.

39.   In engaging in the foregoing conduct, the defendants violated Digisound's trademark rights in several ways.

40.   First, defendants used, offered and sold products in interstate commerce that bore DIGISOUND trademarks, that were not in fact not legitimate DIGISOUND products, authorized

by Digisound-WIE. Certain of the products sold and distributed by defendants had never been authorized, ordered or inspected by Digisound-WIE. These products were totally unauthorized by Digisound-WIE, and the DIGISOUND mark had been placed in order to deceive consumers.

41. Second, defendants in certain cases diverted products which had been ordered by Digisound-WIE before they reached Digisound-WIE's warehouse. Defendants then sold these products to customers of Digisound-WIE, falsely representing that the products were fully legitimate and authorized DIGISOUND products, when in fact they had never been received in Digisound-WIE's warehouse, had not been subject to any final inspection or quality control procedures by Digisound-WIE, and were not covered by Digisound-WIE's warranty.

42. The defendants' conduct has caused, and is likely to continue to cause, confusion and mistake, or to deceive others, as to the origin, sponsorship, or approval of the products in question. This conduct violates 15 U.S.C. § 1125(a)(1)(A).

43. Defendants have misrepresented the nature, characteristics, and qualities of the products they have sold as legitimate DIGISOUND products. This conduct violates 15 U.S.C. § 1125(a)(1)(B).

44. Digisound-WIE has been and is likely to continue to be damaged as a result of the defendants' infringement of its DIGISOUND trademark, and the explicit and implicit misrepresentations made by defendants in their offering and selling of the products in question.

THEREFORE, plaintiff Digisound-WIE, Inc. prays for all appropriate relief, including an award of Digisound-WIE's damages, the defendants' wrongful profits, treble damages, and attorneys' fees.

## Count 8 – Violation of Computer Fraud and Abuse Act by the de Youngs

1-26. For ¶¶ 1-26 of Count 8, Digisound-WIE repeats the preceding ¶¶ 1-26 applicable to all counts.

45. In engaging in the foregoing conduct, the defendants exceeded their authorization in accessing Digisound-WIE computers and wrongfully destroyed data stored on them, which violates the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C).

THEREFORE, plaintiff Digisound-WIE, Inc. prays for all appropriate relief, including an award of Digisound-WIE's damages.

## Count 9 – Misappropriation of Trade Secrets by All Defendants

1-26. For ¶¶ 1-26 of Count 9, Digisound-WIE repeats the preceding ¶¶ 1-26 applicable to all counts.

46. Before resigning their employment with Digisound-WIE, Dirk de Young and/or Helene de Young secretly copied data from Digisound-WIE's computers concerning its sales and operations and destroyed the data that resided on the hard drives of those computers. The data that was secretly copied included Digisound-WIE's pricing to different customers, purchase orders from customers, past and expected parts deliveries to customers, and the correlations between Digisound-WIE part numbers and BeStar part numbers.

47. Defendant CC Electro Sales has, without Digisound-WIE's consent, disclosed to and used on behalf of the defendants trade secret information that it created or received solely for the benefit of Digisound-WIE. Such trade secret information included, but was not limited to, sales proposals and product specifications and pricing to prospective customers, existing customer purchase orders, product specifications, and pricing, product needs of existing and

14

prospective purchasers, and the identities and contact information for key purchasing personnel at existing and prospective purchasers.

48. The defendants have used Digisound-WIE's above trade secret information under circumstances where they knew or had reason to know that the information could not be used without Digisound-WIE's consent.

49. The defendants have thereby violated the Uniform Trade Secrets Act.

50. The defendants' misappropriation of Digisound-WIE's trade secrets was willful and malicious.

THEREFORE, plaintiff Digisound-WIE, Inc. prays for all appropriate relief, including an award of Digisound-WIE's damages, defendants' wrongful profits, and punitive damages.

## Count 10 – Civil Conspiracy Against All Defendants

1-26. For ¶¶ 1-26 of Count 10, Digisound-WIE repeats the preceding ¶¶ 1-26 applicable to all counts.

51. In engaging in the foregoing conduct, the defendants have conspired to commit various torts against Digisound-WIE with the intent to misappropriate its customer and supplier relationships.

52. In engaging in the foregoing conduct, the defendants acted with actual malice to Digisound-WIE.

THEREFORE, plaintiff Digisound-WIE, Inc. prays for all appropriate relief, including an award of Digisound-WIE's damages, defendants' wrongful profits, and punitive damages.

DIGISOUND-WIE, INC.


By: _s/ Arthur Sternberg_
   One of Its Attorneys

Arthur Sternberg
Thompson Coburn LLP dba Thompson Coburn Fagel Haber
55 E. Monroe, 40th Floor
Chicago, IL 60603
(312) 580-2235

16