JUDGE LINDBERG
MAGISTRATE JUDGE MASON
Case 1:07-cv-06535   Document 56-2   Filed 03/04/2008   Page 1 of 13
Case 1:07-cv-06535   Document 1-2   Filed 11/16/2007   Page 1 of 13
07 C 6535

# EMPLOYMENT AGREEMENT

This Employment Agreement (the "Agreement") is made and entered into on the ___ day of _____, 2001 by and between Dirk de Young ("de Young") and Digisound-WIE, Inc., an Illinois corporation ("Digisound").

## RECITALS

**WHEREAS**, de Young will be employed as a National Sales Director of Digisound; and

**WHEREAS**, the parties hereto desire to set forth the terms of de Young's employment with Digisound, pursuant to the terms and conditions hereof; and

**NOW, THEREFORE**, in consideration of the promises hereinafter set forth, the parties hereto agree as follows:

1. <u>Recitals</u>. The parties hereto adopt the foregoing Recitals and affirm that the construction of the Agreement shall be guided thereby.

2. <u>Employment</u>. Digisound shall employ de Young as the Marketing Manager, USA, subject to the supervision of the President and the Chairman of the Board of Digisound.

3. <u>Duties and Responsibilities</u>. de Young shall devote his full time, attention, and energy to the affairs of Digisound as shall be required to perform his duties hereunder and, in pursuance of the policies and directions of Digisound, he shall use his best efforts to promote the business and affairs of Digisound. de Young's tasks and objectives are more fully described on Appendix A attached hereto.

4. <u>Term</u>. The term of this Agreement shall commence on and after the date hereof, and continue until terminated under Section 8, Termination For Cause, Section 10, Death and Disability or Section 11, Voluntary Termination (the "Term"), whichever is earlier.

5. <u>Compensation</u>. As compensation and consideration for the performance by de Young of his obligations under this Agreement, de Young shall be entitled to a salary during the term of this Agreement, payable in accordance with the normal payment procedures of Digisound and subject to such withholdings and other employee deductions as may be required by law, at the annualized rate of Seventy Five Thousand Dollars ($75,000).

6. <u>Incentive Compensation</u>.

    (a) <u>Digisound Incentive</u>. de Young will be entitled to incentives from Digisound attached hereto as Appendix B. Such amounts shall be reviewed annually and may be modified at Digisound's sole discretion. All incentives earned by de Young shall be paid six months after they are accrued by de Young.


EXHIBIT A

(b)     Vacation and Holidays. During each fiscal year of Digisound, de Young will be entitled to all paid holidays given by Digisound to its executive employees generally. For purposes of this Agreement, and subject to modification by Digisound, the initial paid holidays shall be: 1) New Year's Day; 2) Memorial Day; 3) July 4th; 5) Labor Day; 6) Thanksgiving and the Friday after Thanksgiving; and 6) Christmas Day. In addition, de Young shall be entitled to the following:

(i)     Fully paid vacation of four weeks per fiscal year, which shall be scheduled at such time or times as Digisound in consultation with de Young may reasonably determine.

7.     Expenses. Digisound will reimburse de Young for reasonable business related expenses incurred by him in connection with the performance of his duties hereunder during the Term, subject, however, to Digisound's approval and in accordance with the policies in effect from time to time during the Term and in compliance with Appendix C attached hereto. In addition, de Young shall be entitled to the following:

(a)     Throughout the term of this Agreement, Digisound shall provide a stipend of $250 per month for the expenses of a home office utilized by de Young for purposes within the scope of de Young's employment by Digisound, as well as pay all related expenses for maintenance and monthly service charges.

(b)     Throughout the term of this Agreement, Digisound shall reimburse de Young for de Young's monthly cell phone service and communication charges, as well as all business related calls made on such cell phone.

8.     Termination For Cause. Digisound shall have the right to terminate de Young's employment at any time for "Cause". For purposes of this Agreement, "Cause" shall mean: (i) de Young refuses to perform his duties hereunder, or otherwise breaches or fails to perform any material provision hereunder; (ii) any breach of Digisound's sexual harassment policy, (iii) de Young engages in fraud, embezzlement or any other illegal conduct, regardless of whether such conduct is designed to defraud Digisound or others; or (iv) de Young is convicted by a court of competent jurisdiction, or pleads "no contest" to a felony. Digisound shall provide a written notice of a termination for cause, and such notice shall specify the particular act or acts, or failure to act, that is or are the basis for the decision to so terminate. de Young's employment by Digisound will terminate automatically as of the receipt of the written notice from Digisound, or, if later, the date specified in such notice.

9.     No Insurance. Digisound shall not provide de Young coverage under any life, health, accident or disability insurance.

10.     Death and Disability. In the event de Young dies during the Term, his employment shall automatically terminate effective on the date of his death. In the event de Young shall suffer a disability which prevents him from performing satisfactorily his obligations hereunder for a period of at least thirty (30) consecutive days, Digisound shall have the right to terminate de Young's employment for "Disability", with such termination to be effective immediately upon giving notice thereof to de Young.

11. <u>Voluntary Termination</u>. For the first six months of this Agreement, Digisound may terminate this Agreement upon two weeks notice to de Young (the "Probation Period"). After the Probation Period, Digisound may terminate de Young upon 30 days written notice. de Young may terminate this Agreement at any time upon 30 days written notice.

12. <u>Severance Upon Termination</u>. de Young, his heirs and assigns, shall not be entitled to any severance amount upon his termination due to Death, Disability, a Termination For Cause or a Voluntary Termination.

13. <u>Entire Compensation</u>. Other than as specifically defined herein, the parties hereto acknowledge and agree that de Young shall not be entitled to any other wages, bonuses, or other employment benefits from Digisound for the Term.

14. <u>Non-competition</u>. For as long as de Young is receiving any payments pursuant to the terms hereof and for one (1) year thereafter, de Young agrees that he will not, without the written consent of the Board of Directors of Digisound, directly or indirectly, alone or as a partner, officer, director, employee, stockholder or creditor of any entity, (a) engage in any business activity which is in competition with the products or services provided by Digisound, within seventy-five (75) miles of the city of Chicago, Illinois, (b) engage in the sales or marketing of any products in competition with Digisound, (c) take employment with any competitor of Digisound, including, but not limited to, those companies listed on Appendix D attached hereto, (d) do business with any customer of Digisound or any potential customer of Digisound, or (e) solicit any employee of Digisound or interfere with the business relationship of any employee of Digisound. The period during which this restriction applies (the "Post-employment Period") shall be extended by the length of any period of time during the Post-employment Period during which de Young is in violation of this section plus the length of any court proceedings necessary to stop such violation. In addition, de Young shall forfeit all amounts owed to him by Digisound for violation of this section.

15. <u>Remedies</u>. de Young acknowledges and agrees that in the event he violates or acts in a manner contrary to the obligations of Section 14, Non-competition, Digisound shall be excused from performing any obligation on its part to be performed under this Agreement, including the payment of any amounts owed to de Young. de Young further acknowledges and agrees that a violation of any of the obligations undertaken by him pursuant to Section 14, Non-competition, will cause irreparable injury to Digisound and that Digisound shall be entitled to the entry of a preliminary injunction by a court of competent jurisdiction restraining de Young in accordance with the foregoing provision in the event of any violation or threatened violation of any such obligations, in addition to any and all other remedies available at law or equity.

16. <u>Notices</u>. Any notice required or permitted under this Agreement shall be deemed properly given if in writing and:

(a) In the case of de Young, either personally delivered or mailed by certified mail to de Young at his last known address; and

(b) In the case of Digisound, either personally delivered or mailed by certified mail to the management of Digisound.

17.   <u>Governing Law</u>.  The parties hereto agree that this Agreement shall be construed and interpreted pursuant to the law of the state of Illinois.

18.   <u>Complete Agreement</u>.  This Agreement constitutes the exclusive agreement between the parties hereto relating to the subject matter hereof, there being no prior or contemporaneous agreement which modifies or alters it. No amendment of this Agreement shall be binding unless in writing and signed by the parties hereto.

IN WITNESS WHEREOF, the undersigned parties have executed this Employment Agreement on the date hereof.

_____
Dirk de Young

DIGISOUND-WIE, INC.

_____
By:_____
Title:_____

17. **Governing Law.** The parties hereto agree that this Agreement shall be construed and interpreted pursuant to the law of the state of Illinois.

18. **Complete Agreement.** This Agreement constitutes the exclusive agreement between the parties hereto relating to the subject matter hereof, there being no prior or contemporaneous agreement which modifies or alters it. No amendment of this Agreement shall be binding unless in writing and signed by the parties hereto.

IN WITNESS WHEREOF, the undersigned parties have executed this Employment Agreement on the date hereof.

_____  9/19/01
Rick de Young

DIGISOUND-WIE, INC.

By: _____
Title: _____

Case 1:07-cv-06535   Document 56-2   Filed 03/04/2008   Page 6 of 13
Case 1:07-cv-06535   Document 1-2   Filed 11/16/2007   Page 6 of 13
20/09/2007 16:15   00494052686913   DIGISOUND   S.   02/02

17. <u>Governing Law</u>. The parties hereto agree that this Agreement shall be construed and interpreted pursuant to the law of the state of Illinois.

18. <u>Complete Agreement</u>. This Agreement constitutes the exclusive agreement between the parties hereto relating to the subject matter hereof, there being no prior or contemporaneous agreement which modifies or alters it. No amendment of this Agreement shall be binding unless in writing and signed by the parties hereto.

IN WITNESS WHEREOF, the undersigned parties have executed this Employment Agreement on the date hereof.

Dirk de Young

DIGISOUND-WIE, INC.

By: Florian Greiling
Title: President

# APPENDIX A

## Set description

| | |
|---|---|
| Name: | Dirk de Young |
| Job description: | Sales/Marketing |
| Rank: | Marketing Manager, USA |
| Reports to: | President and Chief Executive Officer of DIGISOUND-WIE, Inc. |
| General objectives of the Job: | Sales and Promotion of Group Companies products for the US-Market |
| Tasks: | Sales/Acquisition for following product groups: |

- acoustic devices for all applications (i.e. automotive, heavy duty vehicles, communication product, household equipment, etc.)

- fire alarm and security products such as sounders and beacons

- hybrid circuits and contract manufacturing including electronic design projects.

- implementation of suitable sales channels for US-market such as distribution and OEM companies

- permanent market research

- initiating and realization of suitable product advertising and exhibitions (trade fairs)

- to develop close business relation with customers

- Quote offers to customers, follow up to secure order

- reporting:
  monthly activity report on major events
  current project status
  12 months sales forecast with monthly and quarterly updates
  reports of business visits

## **APPENDIX B**

### **Digisound Incentives**

1.  de Young provides Digisound during the employment period with proper planning of business travel containing information as stipulated in the Company-Regulation for Reimbursement of Travel Expenses attached hereto as Appendix B.

   **Bonus:**     3,333.-US-$

2.  de Young provides Digisound during the employment period with detailed reports of his business travels containing all US- market relevant information enabling Digisound to set up close business contacts/sales with prospective customers in the United States.

   **Bonus:**     3,333.-US-$

3.  During the employment period de Young will initiate at least 5 sample orders per calendar quarter to be placed by United States automotive customers for Digisound products.

   **Bonus:**     3,334.-US-$

4.  For sales generated by de Young, de Young will be entitled to a payment equal to one half percent (.5%) of the sales made by Digisound to any end-user of Digisound products.

6

**APPENDIX C**

**Reimbursement of Travel Expenses**

DIGISOUND-WIE USA
Company-Regulation

1.  General

    DIGISOUND- WIE USA reimburses travel expenses which occur in connection with travel activities of Mr. Dirk de Young in order to cover US-market.

    Each individual travel will be closely coordinated by Mr. de Young with the President and Marketing-Manager, Mr. Florian Greiling.

    The following of the general travel procedure is to observe:

2.  Travel Plan Procedure

    For standard sales-trips Mr. de Young will submit to Mr. Greiling by **e-mail a travel-plan** which contains:

    - Time period of travel

    - detailed listing of location and Companies which are planned to be visited

    - purpose/target of the planned visit

    - breakdown of travel expenses expected

    The travel plan must be submitted to Mr. Greiling by Mr. de Young prior to actual beginning of such travel.

    Mr. Greiling or a person in charge has to agree to the planned travel.

    For emergency-travel, Mr. Greiling will make special arrangements.

3.  Permanent cash advance for travel expenses

    The accounted of Digisound- WIE will pay a onetime **advance of US-$ 1000,-** on a bank account to be named by Mr. de Young. In case cooperation between DIGISOUND- WIE and Dirk de Young will be terminated by either party, the onetime advance of US-$ 1000,- will be paid back by Mr. de Young within one week after such termination.

4. <u>Travel expenses</u>

Following travel expenses will be borne by DIGISOUND-Electronic:

- Hotel expenses (middle class)
- car rental (middle class car)
- flight tickets (economy class)
- train, taxi etc.
- fuel for car rental
- expenses for business entertainment

All occurred expenses must be proven by relevant expense voucher/receipt.

5. <u>Daily travel allowance</u>

For each business travel day which lasts more than 14 hours or over night (absenteeism from home town) DIGISOUND- WIE pays the daily travel expenses up to U.S.$45 against receipts

6. <u>Use of private car</u>

It is agreed that Mr. de Young will use his private car for business trips. As compensation, the company will pay the legal amount according to the United States Internal Revenue Service. The payment will be made by the end of each month against a report of travel mileage.

7. <u>Travel expense report</u>

For each business trip Mr. de Young will provide a travel expense report in which all occurred expenses are listed down together with relevant expense vouchers/receipts.

Travel expense report is to be sent to the accounting of the company

The accounting group of Digisound will review and confirm all travel expense reports and will transfer reimburseable expenses to the bank account named by Mr. de Young.

DIGISOUND- WIE USA

## APPENDIX D

### Competitors of Digisound

| Company Name | Address of Headquarters | Addresses of Subsidiary Companies in the USA |
|---|---|---|
| DB Products Ltd | 11/F, Guangdong Finance Building<br>88 Connaught Road West<br>Hong Kong | They have no subsidiary company in the USA. |
| FDK Corporation | Hamagomu Bldg., 5-36-11 Shinbashi, Minato-ku, Tokyo 105-8677<br>Japan<br><br>Shuwa No.2 Shibakoen 3-Chome Bldg.,3-22-1 Toranomon, Minato-ku, Tokyo 105-0001<br>Japan | FDK AMERICA INC.<br>2270 North First St.,<br>San Jose, CA 95131 U.S.A.<br><br>411 Waverley Oaks Road, Suite 324,<br>Waltham, MA 02452-8437, U.S.A.<br><br>6540 Lusk Blvd. Suite C 274, San Diego, CA 92121, U.S.A. |
| Fulleon Ltd | Llantarnam Park,<br>Cwmbran,<br>Gwent,<br>NP44 3AW,<br>UK | **Parent Company:**<br>Cooper Industries<br>600 Travis, Suite 5800<br>Houston, TX 77002-1001<br>USA |
| Mallory | North American Capacitor Company<br>7545 Rockville Road<br>Indianapolis, IN 46214-3073<br>USA | --- |
| Murata | Nagaoka Office<br>26 10, Tenjin 2-chome, Nagaokakyo-shi, Kyoto 617-8555 | Murata Electronics North America, Inc.<br>2200 Lake Park Drive,<br>Smyrna, GA 30080-7604, U.S.A. |
| Projects Unlimited, Inc. | 3680 Wyse Road<br>Dayton, Ohio 45414-5802<br>USA | |

| Company Name | Address of Headquarters | Addresses of Subsidiary Companies in the USA |
|---|---|---|
| Sonitron NV | Kasteelstraat 93<br>B-9100 Sint-Niklaas<br>Belgium | Representatives:<br><br>Ralph Bulger & Assoc. Inc.<br>1898 Harbour Oaks Drive<br>Snellville, GA 30078<br><br>deForest Sales Company<br>12970 Pandora Drive,<br>Suite 120<br>Dallas, TX 75238<br><br>Ertronics Inc. 57,<br>Kilvert Street<br>Warwick, RI 02886<br><br>Rynone Associates<br>PO Box 4445<br>Annapolis, MD 21403<br><br>Kallsen Midwest<br>3162 Mallard Cove Lane<br>Ft. Wayne, IN 46804<br><br>Technical Solutions Inc.<br>PO Box 548<br>Anoka, MN 55303-0548<br><br>MSB Associates Inc.<br>Kansas & Western Missouri :<br>5500 Buena Viste Dr. Ste 203<br>Roeland Park, KS 66205-2702<br><br>R.C. Nordstrom Inc.<br>30100 Telegraph Rd.<br>Suite 316<br>Bingham Farms, MI 48025<br><br>TCA Inc.<br>Westtown Bus. Ctr.<br>1570 Mc Daniel Dr.<br>West Chester, PA 19380 |

Case 1:07-cv-06535   Document 56-2   Filed 03/04/2008   Page 13 of 13
Case 1:07-cv-06535   Document 1-2   Filed 11/16/2007   Page 13 of 13

| Company Name | Address of Headquarters | Addresses of Subsidiary Companies in the USA |
|---|---|---|
| | | Synergy Sales Inc. Allaire Airport, Route 34 - Building 62E, PO Box 2521 Farmingdale, NJ 07727-2521<br><br>R.M. Scanlon & Associates Inc P.O. Box 3167 Syracuse, NY 13220<br><br>Queue Engineering 6777 Engle Road, Unit J Middleburg Hts., OH 44130 |
| STAR MICRONICS CO., LTD. | 20-10, Nakayoshida, Shizuoka 422-8654 Japan | Star Micronics America, Inc., 1150 King Georges Post Rd., Edison, NJ 08837<br><br>123 Powerhouse Road P.O. Box 9 Roslyn Heights, NY 11577 |
| System Sensor | 3825 Ohio Avenue St. Charles, IL 60174 USA | **Parent Company:** Honeywell 101 Columbia Road Morristown, NJ 07962 USA |
| YEC Group | 14F, Guoxin Bldg. Changxin Road, Nanshan District Shenzhen Guangdong China 518052 | American Audio Components Inc. (AAC) 1920 Whright Street La Verne, CA 91750 USA |

Doc. ID# 219976_4