In the United States District Court
For the Northern District of Illinois
Eastern Division

| | |
|---|---|
| DIGISOUND-WIE, INC., | |
| Plaintiff, | |
| v. | 07 C 6535 |
| BESTAR TECHNOLOGIES, INC., et al., | Judge Lindberg |
| Defendants. | |

# Plaintiff's Response to Greilings' Motion to Dismiss For Lack of Personal Jurisdiction

## 1. Introduction

The Amended Complaint's undisputed allegations, as well as extrinsic evidence, make a prima facie showing show that the Greilings are subject to this court's personal jurisdiction based on:

    a.    jurisdiction for the federal Lanham Act claim, with service having been made pursuant to FED.R.CIV.P. 4(k)(2), and supplemental jurisdiction for the state law tort claims, *Zurich Cap. Markets, Inc. v. Coglianese*, 388 F. Supp. 2d 847, 860 (N.D. Ill. 2004) and/or

    b.    specific personal jurisdiction for the state law tort claims, which arise out of, or are related to, the Greiling's sufficient minimum contacts with Illinois.

If the court determines, however, that a prima facie showing of jurisdiction has not yet been made, Digisound-WIE requests that it be allowed to continue with its discovery to establish the Greilings' contacts with the U.S. and Illinois.[1] *Riviera Distributors, Inc. v. High-Top*

---

[1] Although the court's April 4, 2008 Order denied the Greilings' motion to stay discovery as to them, they responded solely with objections to Digisound-WIE's First to Request to Produce. (Their response is attached as Exhibit A. To date, although Digisound-WIE's attorney immediately requested a conference to resolve the objections, the conference has not been held. (The request and response (combined on one page) are attached as Exhibit B.) Compliance with the First Request is necessary to determine the extent of each of the Greilings' activities in connection with the U.S. and Illinois. Paragraph 2 of the Request, for example, requests all communications between the Greilings and any other defendant.

*Amusements, Inc.*, 07-1239, 2008 WL 687385, *1 (C.D. Ill., March 11, 2008) (allowing discovery to establish personal jurisdiction).

On a motion to dismiss for lack of personal jurisdiction, the court must resolve any factual disputes in the pleadings and affidavits in the plaintiff's favor. *Riddell, Inc. v. Monica,* 03 C 3309, 2003 WL 21799935, *1 (N.D. Ill. July 25, 2003). Factual allegations in the Amended Complaint that are not disputed by the defendants' affidavits must be taken as true for purposes of the motion. *Zurich*, 388 F. Supp. at 855 (citing *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987).

## 2. Specific Jurisdiction Exists

Specific personal jurisdiction exists where the suit arises out of, or is related to, the defendant's minimum contacts with the forum state. *Riddell,* 2003 WL 21799935, at *3. In a specific jurisdiction inquiry, the plaintiff must first establish that defendants "purposefully established 'minimum contacts' in the forum State," such that they "should reasonably anticipate being haled into court" in that state. *Id.*, citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985).

A defendant's "minimum contacts" can be established under the "effects" doctrine. *See id.* Under the "effects" doctrine, personal jurisdiction over a nonresident defendant is proper when his or her tortious actions aimed at the forum state cause harm to the plaintiff in the forum state, and the defendant knows such harm is likely to be suffered. *Id.*, citing *Calder v. Jones*, 465 U.S. 783 (1984). Under the Seventh Circuit's broad interpretation of the doctrine, "the state in which the victim of a tort *suffers* the injury may entertain a suit against the accused tortfeasor," even if all the other relevant conduct took place outside Illinois. *Id.* (emphasis added), citing *Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1202 (7th Cir. 1997).

2

Digisound-WIE has alleged that defendants Lilli and Florian Greiling

a.  tortiously interfered with Digisound-WIE's contracts with customers by intentionally causing Digisound-WIE to be unable to meet its customer orders and appropriating the opportunity to fill those orders with parts either misappropriated from Digisound-WIE or otherwise wrongfully diverted from Digisound-WIE (Amended Complaint, ¶ 35),

b.  tortiously interfered with Digisound-WIE's reasonable expectation that it would be the sole seller in the U.S. of Digisound-trademarked parts and other parts manufactured by BeStar Acoustics and that it would continue to receive and fill product orders from existing customers and new product orders from prospective customers that the de Youngs and CC Electro Sales had solicited on its behalf (*id.*, ¶ 37),

c.  violated Digisound-WIE's trademark rights in violation of the Lanham Act (*id.*, ¶ 39),

d.  misappropriated and used Digisound-WIE's trade secrets (*id.*, ¶¶ 48-49), and

e.  conspired to commit various torts against Digisound-WIE with the intent to misappropriate its customer and supplier relationships (*id.*, ¶ 51).

The Amended Complaint also alleges that "with knowledge that Digisound-WIE's principal office is located in this district, the defendants directed tortious activities within this district, including, on information and belief, seeking to sell Digisound-trademarked goods and divert sales by Digisound-WIE in this district." (*Id.*, ¶ 3). As defendants were aware and, in fact, admit in their Motion, Digisound-WIE is an Illinois corporation and has its principal place of business in Illinois, their conduct was "aimed at" Illinois, where Digisound-WIE was injured. (*Id.*, ¶ 4). Under the circumstances, defendants could foresee that they would be required to answer for their actions in Illinois.

Asserting jurisdiction over the Greilings does not offend traditional notions of fair play and substantial justice. While no single factor is dispositive, the most important ones are the interests of the state involved and the relative convenience of litigating there. *Riddell*, 2003 WL 21799935, *4. Illinois has a significant interest in the adjudication of this case, since Digisound-

3

WIE is an Illinois company and, as discussed above, defendants' alleged tortious activity caused significant injury in Illinois. *Id.* Second, the burden on the Greilings of defending in Illinois is not so great as to deprive them of due process, given that Chicago is a major metropolitan area and transportation hub, and the Greilings' attorneys are already defending other defendants who do not dispute jurisdiction or venue. *Id.* Chicago's convenience is evidenced by the fact that Florian Greiling traveled through it during a December 2007 trip to meet with BeStar Technologies, Inc.'s principals. (See November 2007 emails attached as Group Exhibit C, which were produced by defendant BeStar Technologies). Therefore, because the two-prong analysis of specific personal jurisdiction has been satisfied for both Lilli and Florian Greiling, defendants' motion to dismiss for lack of personal jurisdiction should be denied on that basis.

### 3. FED.R.CIV.P. 4(k)(2) and Lanham Act Create Personal Jurisdiction over the Greilings

Regardless of jurisdiction under the Illinois long-arm statute, personal jurisdiction over the Greilings exists under the Amended Complaint's federal Lanham Act claim and the service of summons on the Greilings under FED.R.CIVP. 4(k)(2). The Greilings' motion does not attempt to rebut that federal law jurisdiction exists over them, as alleged in paragraph one of the Amended Complaint) and therefore the court also has supplemental jurisdiction over them (as also alleged in ¶ 1) as to the state law claims. *Zurich*, 388 F. Supp. 2d at 860. As the Seventh Circuit has stated, "the due process clause protects persons from being haled into a court unless they have 'minimum contacts' with the sovereign that established that court [and] the jurisdiction whose power federal courts exercise is the United States of America, not the State of Illinois." *ISI Int'l, Inc. v. Borden Ladner Gervais LLP,* 256 F.3d 548, 551 (7th Cir. 2001).

The Greilings have sufficient contacts with the U.S. for this court to, consistent with due process, assert personal jurisdiction over them for the federal law claim and supplemental

jurisdiction for the state law claims. First, Lilli Greiling admits she is a shareholder of a U.S.-based company, BeStar Technologies. (Motion to Dismiss at 3.). Her activity is thus purposely directed at the U.S., invokes the protection of U.S. law, and presumably seeks profiting from BeStar Technologies operations in the U.S.

Second, Florian Greiling was President of Digisound-WIE, managing its operations from its inception in August 2001 until May 2007. (Affidavit of Michael Zeich, attached hereto as Exhibit D). During that time, he traveled to the U.S. and Illinois ten times on behalf of Digisound-WIE and continued to systematically communicate with it in the U.S. (Exhibit D, ¶¶ 2-3 and Attachments 1-7; see Group Exhibit E (various emails to and from Florian, as produced by defendants BeStar Technologies and CC Electro Sales.)

Since then, Greiling has purposely engaged in activity directed to the U.S. to cause Digisound-WIE lose its U.S. customers and sales to BeStar Technologies, which would at minimum benefit Lilli Greiling, who is alleged to be acting as his agent as a shareholder of BeStar Technologies. (Amended Complaint, ¶ 9; Group Exhibit E, specifically DEF-EDOC000017-20, July 12, 2007 and July 20, 2007 emails produced by defendant BeStar Technologies.) Greiling also visited the U.S., including Chicago, at least twice between April 2007, while still employed by Digisound-WIE, and December 2007, for the benefit of BeStar Technologies. (Group Exhibit E, specifically CCE 06538, CCE 04838-4840, and CCE 04957-4959 (produced by CC Electro Sales) and DEF-EDOC00008-13; November 12, 2007, November 15, 2007 and December 10, 2007 emails produced by BeStar Technologies).

Fourth, both of the Greilings are alleged to have conspired with the U.S. defendants to commit tortious acts in the U.S. in order to misappropriate Digisound-WIE's customers and sales for each of their personal financial benefits. (Amended Complaint, ¶¶ 9, 14-25, 48, and 51-52.)

Those actions have caused Digisound-WIE to suffer lost sales and injury to its existing and prospective customer relations in the U.S. and Illinois of over $75,000. (Amended Complaint, ¶¶ 3, 26.) Because the Greilings do not dispute the allegations, the acts of their co-conspirators in the U.S. in furtherance of the conspiracy agreement to which the Greilings agreed or adopted are imputable to both of the Greilings as though they committed those acts themselves.

Although the Greilings have availed themselves of the benefits of doing business in the U.S., and have conducted extensive acts in the U.S. personally and through their co-conspirators, they contend they are not subject to personal jurisdiction in a specific state. Federal Rule of Civil Procedure 4(k)(2) was drafted to address this situation. It states, "If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons… is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state." *ISI Int'l,* 256 F.3d at 551. The provision was added in 1993 to respond to the Supreme Court's suggestion that the rules be extended to cover persons, like the Greilings, who reside outside of the U.S., but have ample contacts with the nation as a whole, yet attenuated contact with any state. *Id.*

Digisound-WIE has alleged that the Greilings violated the Lanham Act, a federal law, through their misuse and misrepresentations about Digisound-WIE's trademark. (Amended Complaint, ¶¶ 39-44). They do not dispute that they have been served by Digisound-WIE with summons. (Motion at 2.) Neither of the Greilings' affidavits state that they are subject to the jurisdiction of any specific state, and their affidavits can be fairly read as denying that. Digisound-WIE has thus properly invoked personal jurisdiction over the Greilings under a federal law claim and serving the Greilings with summons pursuant to the Hague Convention.

6

The court therefore also has supplemental jurisdiction (see Amended Complaint, ¶ 1) over the Greilings for the state law claims asserted against them in the Amended Complaint. *Zurich*, 388 F. Supp. 2d at 860; 28 U.S.C. § 1367. Accordingly, the motion to dismiss for lack of personal jurisdiction should be denied on that basis. Alternatively, ruling on the motion should be denied without prejudice (or deferred) pending discovery concerning each of the Greilings' contacts with the U.S. and Illinois. (See footnote 1.)

DIGISOUND-WIE, INC.

By: _s/ Arthur Sternberg_
    One of Its Attorneys

Arthur Sternberg
Susan Lorenc
Thompson Coburn LLP dba Thompson Coburn Fagel Haber
55 E. Monroe, 40th Floor
Chicago, IL 60603
(312) 580-2235

4716153_4

Westlaw.
Case 1:07-cv-06535    Document 90    Filed 04/11/2008    Page 8 of 18
Page 1
Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2008 WL 687385 (C.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 2008 WL 687385)

Riviera Distributors, Inc. v. High-Top Amusements, Inc.
C.D.Ill.,2008.
Only the Westlaw citation is currently available.
United States District Court,C.D. Illinois.
RIVIERA DISTRIBUTORS, INC., Plaintiff/ Counter-Defendant,
v.
HIGH-TOP AMUSEMENTS, INC., Defendant/ Counter-Plaintiff,
High-Top Amusements , Inc., Third-Party Plaintiff,
v.
Martin Lustig and Norman Barman, Third-Party Defendants.
No. 07-1239.

March 11, 2008.

Robert M. Riffle, Janaki Hannah Nair, Elias Meginnes Riffle & Seghetti, Peoria, IL, for Plaintiff/Counter-Defendant.
Allan S. Rubin, Draper Rubin & Shulman PLC, Gregory Fisher Lord, Mitchell Lord & Associates LLC, Southfield, MI, Elisabeth Pollock, Roger B. Webber, Beckett & Webber PC, Urbana, IL, for Defendant/Counter-Plaintiff and Third-Party Plaintiff.
Timothy James Jordan, Garan Lucow Miller Seward Cooper & Becker, Detroit, MI, Jeffrey B. Rock, Hasselberg Rock Bell & Kuppler, Peoria, IL, for Third-Party Defendants.

ORDER

MICHAEL M. MIHM, District Judge.
*1 On February 5, 2008, Magistrate Judge Byron G. Cudmore filed a Report & Recommendation in the above-captioned case. More than ten days have elapsed since the filing of the Report & Recommendation, and no objections were made. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); *Lockert v. Faulkner,* 843 F.2d 1015, 1017 (7th Cir .1988);

*Video Views, Inc. v. Studio 21, Ltd.,* 797 F.2d 538, 539 (7th Cir.1986). As the parties failed to present timely objections, any such objections have been waived. *Video Views,* 797 F.2d at 539.

The relevant procedural history is sufficiently set forth in the comprehensive Report & Recommendation of the Magistrate Judge. Riviera Distributors, Inc. brought this litigation against High-Top Amusements asserting claims of: (1) copyright infringement, (2) false designation, (3) trade dress infringement, (4) violation of the Uniform Deceptive Trade Practices Act, and (5) breach of settlement agreement. High-Top responded with a counter-complaint: (1) requesting declaratory judgment of the rights and obligations of parties under the settlement agreement; (2) requesting declaratory judgment that Riviera's copyrights are "void, invalid, and unenforceable"; and (3) asserting a breach of contract claim. High-Top also filed a Third-Party Complaint against Third-Party Defendant Martin Lustig, d/b/a Prestige Industries, Ltd (collectively, "Lustig") and Third-Party Defendant Norman Barman, d/b/a Universal Vending, Universal Video, and Universal Vending LLC (collectively, "Barman"), asserting claims of breach of contract, fraud, and indemnification.

The Court agrees with the recommendation that the declaratory relief sought in Count I of High-Top's Counterclaim is improper because the same relief already is sought in High-Top's other counterclaims and affirmative defenses, and that Count II of High-Top's Counterclaim appropriately is pleaded in the alternative if the Court determines that ¶ 8 of the Settlement Agreement is unenforceable. The Court also agrees with the recommendation that attorney fees and punitive damages, requested in Count III of High-Top's Counterclaim, are not recoverable pursuant to Illinois law. The Court grants High-Top leave to file an Amended Counter-Complaint if it believes that it may recover punitive damages resulting from a tort independent of the breach of contract.[FN1] The Court agrees with the recommenda-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2008 WL 687385 (C.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 2008 WL 687385)
Case 1:07-cv-06535    Document 90    Filed 04/11/2008    Page 9 of 18

tion that Barman and Lustig may be liable to High-Top if the Court finds High-Top liable on the copyright and trademark infringement claims, and that the Third-Party Complaints therefore are proper. Finally, the Court agrees that Lustig's affidavit is too conclusory to conclude that he lacks sufficient minimum contacts with Illinois so that the exercise of personal jurisdiction "does not offend traditional notions of fair play and substantial justice."*Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154 (1945); *see also World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559 (1980); *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174 (1985); *Asahi Metal Indus. Co. v.Super. Ct. of Cal.,* 480 U.S. 102, 107 S.Ct. 1026 (1987). Detailed information on the nature and extent of all Lustig's business activities (such as where sales are conducted, what products are sold and to who, where and how the products are marketed, where taxes are filed and paid, and whether any agents or employees in Illinois exist), Lustig's purchase of the boards from Riviera or other transactions with Riviera, the alleged infringement, the settlement agreement, negotiations, and litigation will assist the Court in making this determination. The Court agrees with the recommendation that parties may conduct limited discovery and renew the personal jurisdiction issue.

> FN1. As amended by Magistrate Judge Cudmore's text order of March 11, 2008.

*2 Accordingly, the Court adopts the Report & Recommendation of the Magistrate Judge [# 35] in its entirety. Plaintiff's Motion to Dismiss Counts I and II and to Strike Relief Requested in Count III is GRANTED IN PART to the extent that Count I is DISMISSED and the request for attorney fees and punitive damages in Count III is STRICKEN. Counter-Defendant Barman's Motion to Dismiss Third Party Complaint is DENIED. Counter-Defendant Lustig's Motion to Dismiss is DENIED with leave to renew after limited discovery on the question of personal jurisdiction. This matter is referred to the Magistrate Judge for further proceedings.

### REPORT AND RECOMMENDATION

BYRON G. CUDMORE, United States Magistrate Judge:
This case is before the Court for a Report and Recommendation on the following motions to dismiss and/or strike:

1) Plaintiff's motion to dismiss High-Top Amusements, Inc.'s Counter-Complaint as to Counts I and II, and to strike the relief requested in Count III (d/e 17);

2) Motion to dismiss High-Top's Third Party Complaint by Third Party Defendants Barman and Universal (d/e 26); and,

3) Motion to dismiss High-Top's Third Party Complaint by Third Party Defendants Lustig and Prestige Industries, Ltd. (d/e 28).

### STANDARD OF REVIEW

To the extent the motions are based on Fed.R.Civ.P. 12(b)(6), federal notice pleading standards govern, even as to the state claims. *Beanstalk Group, Inc. v. AM General Corp.,* 283 F.3d 856, 863 (7th Cir.2002)(federal notice pleading applies to state claims in diversity suits). All the Complaint must do is set forth a "short and plain statement of the claim showing that the pleader is entitled to relief...."Fed.R.Civ.P. 8(a)(2). Factual allegations are accepted as true and need only give " 'fair notice of what the ... claim is and the grounds upon which it rests.' " *EEOC v. Concentra Health Serv., Inc.,* 496 F.3d 773, 776-77 (7th Cir.2007), *quoting Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1964 (2007)(other citation omitted). However, the "allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'...." *Id., quoting Bell Atlantic,* 127 S.Ct. at 1965, 1973 n. 14. "Although this does 'not require heightened fact

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

pleading of specifics,' it does require the complaint to contain 'enough facts to state a claim to relief that is plausible on its face.' " *Killingsworth v. HSBC Bank Nevada,* 507 F.3d 614, 618 (7th Cir.2007), *quoting Bell Atlantic Corp. v. Twombly,* 127 S.Ct. at 1974.

## BACKGROUND AND ALLEGATIONS

Plaintiff Riviera Distributors, Inc. ("Riviera") owns copyrights on the software and audiovisual components of a video poker game. (Complaint ¶¶ 10-14). These copyrighted works were originally developed by a company named Merit Industries, Inc. Riviera purchased the copyrights at issue from Merit in March 2004, along with other video poker games. (Complaint ¶¶ 11, 13).

*3 Riviera alleges that Martin Lustig, d/b/a Prestige Industries, Ltd. (collectively, "Prestige"), directly infringed on Riviera's copyrights by creating a virtually identically copy of the game from Riviera's board and selling it under a different name, "Superstar." (Complaint ¶ 31-35). Prestige then allegedly created derivative works from this infringing game and "profit [ed] commercially by placing them in the stream of commerce."(Complaint ¶ 34). Defendant **High-Top Amusements**, Inc. ("High-Top"), purchased some of Prestige's infringing boards for placement and operation in Michigan. **High-Top** alleges that Prestige falsely represented that it owned the copyrights on the boards.

On February 4, 2007, **Riviera** and **High-Top** entered into a Settlement Agreement regarding **High-Top's** infringing activities. **High-Top** allegedly breached the Settlement Agreement by failing to return all used circuit boards, failing to perform required accountings, and misrepresenting the number of infringing games and boards it was operating. (Complaint ¶¶ 28-30). On August 16, 2007, **Riviera** sent **High-Top** a Notice of Default outlining **High-Top's** breaches and **Riviera's** legal positions. (Complaint ¶¶ 41, 42).**Riviera** asserted that its release under the Settlement Agreement was null and void in light of these breaches. (Complaint ¶ 42).

**High-Top** allegedly did not comply with **Riviera's** demands in the Notice of Default. **Riviera** estimates that **High-Top** is now operating more than 400 infringing games throughout Michigan. (Complaint ¶¶ 21, 22, 36-37).

**Riviera** filed its Complaint in this case in September 2007. The Complaint alleges the following claims:

Count I: Copyright Infringement, 17 U.S.C. § 501 *et seq*

Count II: False Designation, 15 U.S.C. § 1125

Count III: Trade Dress Infringement, 15 U.S.C. § 1125

Count IV: Uniform Deceptive Trade Practices Act, 815, ILCS § 510 *et seq*

Count V: Breach of Settlement Agreement

High-Top responded with a Counter-Complaint against Riviera, asserting that High-Top has substantially performed all the terms of the Agreement and while Riviera has not. (Counter-Complaint, d/e 10, ¶ 8). Count I of High-Top's Counter-Complaint asks for a declaratory judgment regarding the rights and obligations of the parties under the Settlement Agreement. Count II is an alternative count seeking a declaration that Riviera's copyrights are "void, invalid and unenforceable." (Counter-Complaint ¶ 12). Count III is a breach of contract action based on the Settlement Agreement.

High-Top also filed a Third Party Complaint against two groups of third party defendants responsible for selling High-Top the alleged infringing boards: Third Parties Martin Lustig, dba Prestige Industries, Ltd (collectively, "Prestige"); and, Third Parties Norman Barman, d/b/a Universal Vending, Universal Video and Universal Vending

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

LLC (collectively, "Universal"). (Third Party Complaint, d/e 10). High Top alleges that, in 2003 and 2004, it bought about 100 alleged infringing "chips" from Prestige and has since turned over about 50 of them to Riviera. In making these purchases, High-Top alleges it relied on Prestige's intentionally false representations that Prestige was the original developer of the chips, that Prestige owned the copyrights and that Prestige had the right to create, distribute and sell the chips. (Third Party Complaint ¶ 14). The remainder of the video games operated by **High-Top** use a chip purchased by **High-Top** from Universal, relying on identical representations. Since **Riviera** alleges that "all" of **High-Top's** video poker games are infringing, **High-Top** interprets that to include the games containing the Universal chip, though Universal is not mentioned in **Riviera's** Complaint. (Third Party Complaint ¶¶ 27-28).**High Top** pursues actions against the third parties for breach of contract, fraud and indemnity.

## ANALYSIS

I. Plaintiff **Riviera's** Motion to Dismiss and Strike Portions of **High-Top's** Counter-Complaint

A. Count I of Counter-Complaint (seeking declaratory judgment on Settlement Agreement)

*4 In Count I of its Counter-Complaint, **High-top** seeks a declaratory judgment: (1) declaring the rights of [**High-Top**] and **Riviera** under the Settlement Agreement; (2) declaring that the Settlement Agreement is valid and enforceable; (3) declaring that **High-Top** has substantially complied with and has not breached the Agreement; and, (4) declaring that **Riviera** has breached the Agreement. (Counter-Complaint, p. 3).

**Riviera** moves to dismiss this count,[FN1] arguing that declaratory relief is improper because the existing substantive claims already address and will require resolution of the same issues.

FN1.**Riviera** moves to dismiss under "rule 12" for failure to state a claim for declaratory relief. It may be more correct to characterize **Riviera's** request as one to decline to exercise jurisdiction. *See Amari v. Radio Spirits, Inc.,* 219 F.Supp.2d 942, 945 (N.D.2002)(declining to exercise jurisdiction over declaratory judgment claim); *Institute for Studies Abroad, Inc. v. International Studies Abroad, Inc.,* 263 F.Supp.2d 1154, 1157 n. 4 (S.D.Ind.2001).

28 U.S.C. § 2201(a) provides in relevant part:

In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights ... of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

The general purpose of declaratory relief is to determine the parties' rights and obligations as to anticipated future events, in order to avoid future liability. "Its purpose 'is "to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication, without waiting until his adversary should see fit to begin suit, after damage had accrued." ' " *Nucor Corp. v. Aceros y Maquilas de Occidente,* 28 F.3d 573, 577 (7th Cir.1994)(quoted cites omitted). Declaratory relief is available when: "(1) The controversy has ripened to a point where one of the parties could invoke a coercive remedy (i.e. a suit for damages or an injunction) but has not done so; and (2) Although the controversy is real and immediate, it has not ripened to such a point, and it would be unfair or inefficient to require the parties to wait for a decision." *Tempco Elec. Heater Corp. v. Omega Engineering, Inc.,* 819 F.2d 746, 749 (7th Cir.1987). A party cannot seek declaratory relief "simply as a predicate for a subsequent damages claim." *Bontkowski v. Smith,* 305 F.3d 757, 761 (7th Cir.2002) (citations omitted). Similarly, declaratory

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

relief is not available when a lawsuit is already pending and requires resolution of the same issues. *See Tempco,* 819 F.2d at 749 (separate declaratory judgment action served no useful purpose after trademark infringement claim was filed); *Amari v. Radio Spirits, Inc.,* 219 F.Supp.2d 942, 944 (N.D.Ill.2002)(declaratory judgment served no useful purpose where the same issues would be resolved in substantive action).

The Court agrees with Riviera that the declaratory relief sought in Count I of High-Top's counterclaim is improper. A "declaration" that High-Top did not breach the Settlement Agreement and Riviera did is effectively a determination of the merits of the parties' respective breach of contract claims. High-Top argues that a declaratory judgment should issue with regard to whether paragraph eight of the Settlement Agreement (the release) bars Riviera's copyright claims, because the copyright claims hinge on whether the release is enforceable. That is an argument that goes to the merits of High-Top's defense to Riviera's substantive breach of contract claim. A "declaratory judgment" that paragraph eight of the Settlement Agreement bars Riviera from pursuing its copyright claims would require the court to rule on the merits of Riviera's assertion that paragraph 12 of the Agreement voids paragraph eight's release because High-top failed to disclose or misrepresented information. All of these determinations are part of the "ripened" substantive claims already proceeding in this case, not a "controversy [that] has ripened to a point where one of the parties could invoke a coercive remedy (i.e. a suit for damages or an injunction) but has not done so."*Tempco,* 819 F.2d at 749.

*5 Thus, the Court will recommend that Count I of High-Top's Counter-Complaint ("Declaratory Judgment-Settlement Agreement) be dismissed, as the relief sought is not appropriate for declaratory judgment. That same relief may be and is already sought in High-Top's other counterclaims and affirmative defenses on the substantive claims.FN2

> FN2. High-Top also argues that it properly seeks declaratory relief in Count II (declaration of invalidity of copyrights). Riviera does not argue that the relief sought in Count II is improper, so the Court does not address the issue.

**B. Count II of Counter-Complaint (Declaration of Invalidity/Unenforceability of Copyrights)**

Count II of the Counter-Complaint is pled in the alternative: " ... in the event that the Court finds that the Settlement Agreement is invalid and unenforceable, then as an alternative claim, [High-Top] ... asserts that the copyrights at issue ... are void, invalid and unenforceable."(Counter-Complaint ¶ 12).

Riviera moves to dismiss this count on the grounds that it already stipulates to the validity of the Settlement Agreement, rendering the alternative count unnecessary. High-Top makes clear in its response, however, that Count II comes into play if the Court determines that *release* in ¶ 8 of the Agreement is unenforceable, rather than the entire Settlement Agreement. (High-Top's Memorandum, d/e 23, p. 8 n. 2)(offering to reword Count II to "... in the event that the Court finds that the Release ... is invalid and unenforceable, then, [High-Top] asserts that the copyrights at issue ... are void...."). Thus, the Court will recommend that Riviera's motion to strike Count II be denied.

**C. Relief Sought in Count III of Counter Complaint (Breach of Contract-Settlement Agreement)**

High-Top alleges in Count III of the Counter Complaint that Riviera breached the Settlement Agreement by failing to deliver certain game boards, by delivering game boards "not fit for their intended purposes" and by pursuing this action. (Counter-Complaint ¶ 52). High-Top asks for judgment in its favor on Count III and all "actual, consequential, exemplary, and punitive damages, costs and attorneys fees, and all equitable relief ..." (Counter-Complaint p. 12).FN3

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

> FN3. High-Top contends that the prayer for relief is general as to all counts, but it does not appear to be by its own terms. Count II also seeks attorney's fees.

Riviera moves to strike the request for attorneys' fees and punitive damages, arguing that such damages are not available under Illinois law in breach of contract actions.

High-Top implies that the relief sought in Count III may not be governed by Illinois law. (d/e 23, pp. 9-10). The Settlement Agreement, however, specifies that it is governed by Illinois law, and Count III is a claim based on breach of that Agreement. (Settlement Agreement ¶ 16, attached as Exhibit A to Counter-Complaint). High-Top does not explain what law does govern the remedies available in Count III if it is not Illinois.

Illinois common law follows the "American Rule": attorney's fees and costs are generally not recoverable by prevailing parties, unless provided for by statute or contract. *Installco Inc. v. Whiting Corp.,* 336 Ill.App.3d 776, 786 (4th Dist.2002) (citation omitted). High-Top does not assert it is entitled to attorney's fees on Count II I under the Settlement Agreement.[FN4] High-Top does contend that it can recover attorneys fees as consequential damages under the U.C.C., but the cases cited do not deal with attorney's fees incurred in pursuing a breach of contract action. The cases cited by High-Top deal with attorney's fees incurred in pursuing or defending third party actions necessitated by the breach. *See, e.g., Leighton v. Callier Steel Pipe & Tube, Inc.,* 1991 WL 18413 (N.D.Ill.1991)(not reported in F.Supp.)(recovery sought by middleman against original seller of defective steel pipe for attorney's fees incurred in defending lawsuit by ultimate purchaser of pipe); *Colton v. Decker,* 540 N.W.2d 172 (S.D.1995)(attorney's fees for prosecuting breach of warranty not recoverable, but attorney's fees incurred in clearing clouded title were); *Osburn v. Bendix Home Systems, Inc.,* 613 P.2d 445 n. 23 (Okla.1980)(stating that recovery of attorney's fees was not based on Code, but on state statute). As those cases show, attorneys fees may be recoverable as consequential damages when they arise from defending or pursuing third party litigation, but not when they are incurred in pursuit of the original breach of contract claim. *See Fidelity and Deposit Co. of Maryland v. Krebs Engineers,* 859 F.2d 501, 506 (7th Cir.1988)(American Rule precluded recovery of attorney's fees for prosecuting claim, but fees incurred in third party action were recoverable)(applying Wisconsin law); Clark, Barkley, and Smith, Christopher, 1 *The Law of Product Warranties* § 7.44 (Westlaw, updated Nov. 2007)("courts do allow attorney fees incurred by the aggrieved buyer in defending third-party claims generated by the breach of warranty."). Accordingly, the Court will recommend the request for attorney's fees in Count III be stricken.[FN5]

> FN4. The Court reviewed the Settlement Agreement and found no provisions regarding attorney's fees.
>
> FN5. High Top's claim for attorney's fees in Count II of the Counter-Complaint remains, as well as High Top's claims for consequential damages in its Third Party Complaint.

*6 As for punitive damages, Illinois common law holds that punitive damages are not recoverable on breach of contract claims, even for willful and wanton breaches. *Morrow v. L.A. Goldschmidt Associates, Inc.,* 112 Ill.2d 87, 98-99 (1986). Punitive damages are recoverable, however, "when the conduct causing the breach is also a tort for which punitive damages are recoverable."*Id.* at 95.The conduct must give rise to a tort independent of the breach of contract. *Id.;Hardin, Rodriguez & Boivin Anesthesiologistis, Ltd. v. Paradigm Ins. Co.,* 962 F.2d 628, 638-639 (7th Cir.1992)("While it is true that punitive damages are generally unavailable in contract cases in Illinois, ... there is an exception when the defendant is also found to have committed an independent tort, separate from the breach of contract."); *Sharpe v. Jefferson Distributing Co.,* 1998 WL 786397 (N.D.Ill.1998)(not reported in

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

F.Supp.2d)(punitive damages on breach of employment contract not dismissed where plaintiff alleged that her rebuff of unwanted sexual advances caused the breach).

In the Court's opinion, Count III does not give fair notice of the grounds upon which Plaintiff's claims for punitive damages rests. It alleges only breach of the terms of the Settlement Agreement. No reasonable inference arises of an independent tort that might support punitive damages. High-Top contends in its response that it "will demonstrate that Riviera never intended on fulfilling its obligations under the Agreement and furthermore, that it routinely enters into settlement agreements with parties with the intent of declaring a breach and thereafter alleging infringement."(d/e 23, p. 12). Yet even willful and wanton breaches will not support recovery of punitive damages on a breach of contract claim. *Morrow*, 112 Ill.2d at 98.

Accordingly, the Court will recommend that the request for attorneys fees and punitive damages be stricken from Count III. However, the Court will also recommend that Plaintiff Riviera be given leave to file an amended complaint, as requested, to the extent Riviera believes a viable claim for punitive damages can be asserted.

## II. Third Party Defendant Universal's Motion to Dismiss

High-Top sues Universal for misrepresentation, fraud and indemnity, alleging that, like Prestige, Universal sold High-Top chips that infringed on Riviera's copyrights.

Universal argues that High-Top fails to state a claim because Universal was not a party to the Settlement Agreement and the "basis for Riviera's claim against High-Top is High-Top's failure to perform its obligations under the settlement agreement."(d/e 26, p. 2). Universal asserts it cannot be held liable under Fed.R.Civ.P. 14(a).

The current version of Fed.R.Civ.P. 14 provides in pertinent part: [FN6]

FN6. Effective December 1, 2007.

(a)(1) ... A defending party may, as a third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it....

\* \* \*

*7 (a)(3) ... The plaintiff may assert against the third party defendant any claim arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff ...

Universal argues that this case is about breach of the Settlement Agreement and it cannot be liable for breach of an agreement to which it is not a party. However, this case is also about copyright and trademark infringement (Counts I-III of Riviera's Complaint) and deceptive practices (Count IV of Riviera's Complaint). Universal does not argue that it cannot be liable to High-Top in some fashion (such as contribution or indemnity) if High-top is found liable on those claims. *See, e.g., Monotype Imaging, Inc. v. Bitstream, Inc*., 376 F.Supp.2d 877, 883 (N.D.Ill.2005)("In order to state a claim for contributory copyright infringement, the plaintiff must allege that the defendant: (1) had knowledge of the direct infringer's conduct; and (2) materially contributed to the infringing conduct); *In re Aimster Copyright Litigation*, 252 F.Supp.2d 634, 654 (N.D.Ill.2002)(contributory copyright infringement occurs when the defendant "with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another"); *Too, Inc. v. Kohl's Dep't Stores, Inc.*, 213 F.R.D. 138, 140-142 (S.D.N.Y.2003)(allowing third party complaint for contributory copyright infringement).[FN7] Accordingly, the Court will recommend denial of Universal's motion to dismiss.

FN7. The Court makes no recommendation on whether High-Top has viable claims for

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

contribution or indemnity.

### III. Third Party Defendant Prestige's Motion to Dismiss

Prestige moves to dismiss in part for the same reason as Universal-that Prestige cannot be liable for High-Top's breaches of the Settlement Agreement. As discussed above, the Settlement Agreement breach claim is only Count V of the Complaint, not Riviera's entire case. Like Universal, Prestige does not address whether it may be liable to High-Top if High-Top is liable on Counts I-IV of the Complaint. (d/e 28, p. 2).

Prestige also moves to dismiss based on lack of personal jurisdiction.Fed.R.Civ.P. 12(b)(2).[FN8] High-Top bears the burden of proving a *prima facie* basis for personal jurisdiction. *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1275 (7th Cir.1997). If the court does not have personal jurisdiction over Prestige, it does not have the power to decide the claims against Prestige, even if ancillary jurisdiction under Fed.R.Civ.P. 14 is appropriate. *See* Wright, Charles A., Miller, Arthur R. and Kane, Mary K., 6 *Fed. Prac. and Proc. Civ.2d* § 1445, 6 FPP § 1445 (Westlaw cite, current through 2007 update).

> FN8. The Court refers to Prestige and Lustig collectively as "Prestige" for convenience.

"If personal jurisdiction is challenged under Rule 12(b)(2), the court must decide whether any material facts are in dispute. If so, it must hold an evidentiary hearing to resolve them, at which point the party asserting personal jurisdiction must prove what it alleged. Until such a hearing takes place, the party asserting personal jurisdiction need only make out a *prima facie* case of personal jurisdiction.

*8 *Hyatt International Corp. v. Coco,* 302 F.3d 707, 713 (7th Cir.2002). If the decision is made solely on written submissions, material factual disputes are resolved in favor of the plaintiff. *RAR, Inc.,* 107 F.3d at 1275 (7th Cir.1997).

Prestige argues that personal jurisdiction is not permitted under the Illinois' long-arm statute or due process. The Illinois long-arm statute sets forth several specific acts that convey personal jurisdiction, but it also has a "catch-all" provision that personal jurisdiction may be exercised "on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States."735 ILCS 5/2-209(c). Thus, the controlling question is whether exercising personal jurisdiction comports with federal and state due process concerns. *Hyatt,* 302 F.3d at 714 ("the Illinois long-arm statute now " 'permits its courts to exercise jurisdiction on any basis permitted by the Illinois and United States Constitutions.'") (quoted cite omitted); *Bolger v. Nautica International,* Inc., 369 Ill.App.3d 947, 950 (2d Dist.2007). The applicable federal and state due process standards do not differ materially for purposes of the Court's analysis. *See Hyatt,* 302 F.3d at 715 ("This court has previously suggested, ... that there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations ...")(*citing RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1276 (7th Cir.1997); *Bolger,* 369 Ill.App.3d at 949 n. 1 (" 'in almost all cases, when federal due process concerns regarding personal jurisdiction are satisfied, so are Illinois due process concerns.' ").[FN9]

> FN9. In *Rollins v. Ellwood,* 141 Ill.2d 244 (1990), the Illinois Supreme Court stated that personal jurisdiction may be taken " 'only when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant' acts which occur in Illinois or which affect interests located in Illinois.'" *Quote taken from Hyatt,* 302 F.3d at 715. *Hyatt* noted that "in no case post-*Rollins* has an Illinois court found federal due process to allow ... jurisdiction ... where Illinois limits prohibited

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

it...."*Id.*

Exercising personal jurisdiction may not "offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)(*quoted cite omitted* ). Federal due process requires that Prestige (and Lustig) have had "minimum contacts" with Illinois, purposeful contacts, not incidental. "Crucial to the minimum contacts analysis is a showing that the defendant 'should reasonably anticipate being haled into court [in the forum State],'... because the defendant has 'purposefully avail [ed] itself of the privilege of conducting activities there.' " *Hyatt,* 302 F.3d at 716 (quoted cites omitted). In addition to considering the burden on the defendant, "in an appropriate case" other factors may also be relevant such as the forum state's interest, efficiency, and Plaintiff's interest in "convenient and effective relief." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292 (1980).

Sufficient minimal contacts are present if the "controversies arise out of or are related to the defendant's forum contacts," otherwise known as "specific jurisdiction." *Hyatt,* 302 F.3d at 713. If specific jurisdiction is lacking, personal jurisdiction may still be asserted if "general jurisdiction" exists-where "the defendant 'has continuous and systematic' contacts with the state in question."*Hyatt,* 302 F.3d at 713 (quoted cite omitted). Isolated and sporadic contacts do not confer general jurisdiction. *See, e.g., Helicopteros Nacionales de Columbia S.A. v. Hall,* 466 U.S. 408, 416-18 (1984).

*9 Lustig avers that he is a resident of Michigan and has operated various businesses under assumed names through a Michigan Corporation, "Mace Industries, Inc." (Lustig Aff. ¶ 1-4, attached to d/e 28). He avers that "Prestige Industries, LTD was never an active corporation or assumed name ..." and that "[t]o the extent any sales/transactions took place between me and High-Top, it would have been under the assumed names "Games We Play" and/or Prestige Trading operated by Mace Industries, Inc." (Lustig Aff. ¶ 4). Lustig further avers that neither he nor Mace Industries "and its assumed names" own real estate or operate an office in Illinois. He also avers that neither he, "Prestige" nor "Mace Industries (and its assumed names) ... engage in continuous and systematic business in the State of Illinois."(Lustig Aff. ¶¶ 11-13). Lustig also avers that "No activities alleged to have resulted in liability by myself/Mace Industries, Inc. [or Prestige] to High-Top occurred outside the State of Michigan."(Lustig Aff. ¶¶ 14-15).

High-Top counters that Prestige's liability to High-Top does arise from Prestige's actions in Illinois, specifically, from Prestige's infringement of Riviera's copyright and contributory copyright infringement through its sales to High-Top. High-Top argues that Prestige's infringement constitutes a tortious act causing injury in Illinois which gives this Court personal jurisdiction not only over potential copyright claims against Prestige but also over derivative claims against Prestige. High-Top argues that Prestige and Lustig "could reasonably foresee that their activities ... would result in copyright infringement in Illinois ....", (d/e 34, p. 6), thus making it reasonable for Prestige to expect to be haled into court in Illinois, both for its original infringement and for its fraudulent inducement of High-Top's infringement.

Prestige does not address whether High-Top's claims against it arose from or are related to its alleged infringing activities. Prestige does not address the effect of its alleged infringing activities at all, except to mention that it has apparently settled with Riviera. (d/e 28, p. 10)("as Prestige previously entered into an Agreement with Riviera which precludes a finding of any liability by Riviera against Prestige, there *cannot* exist a derivative cause of action between High-Top and Prestige ....")(emphasis in original).

Even without Prestige's input, however, there are problems with High-Top's argument. Assuming that personal jurisdiction would exist over copyright claims by Riviera against Prestige, Riviera is not pursuing those claims here. Riviera is only pursuing

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

copyright claims against High-Top. The cases cited by High-Top involve infringement claims by owners of copyrights and trademarks, not ancillary claims against third parties.[FN10] Arguably, High-Top's third party claims do not arise from or relate to Prestige's infringement, but rather only from Prestige's misrepresentations, which occurred in Michigan. On the other hand, Prestige's original and contributory infringing activities arguably make it more foreseeable that Prestige would be haled into Illinois court. Neither party cites, nor has the Court found in its own non-exhaustive research, a case addressing personal jurisdiction over third-party defendants in a situation sufficiently analogous to this case.

> FN10. Infringement alone may not be enough to confer personal jurisdiction, but that question is not before the court. *See Janmark, Inc. v. Reidy,* 132 F.3d 1200, 1202 (1997)(infringement plus inducing customers to stop purchases from Illinois company); *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd Partnership,* 34 F.3d 410, 412 (7 th Cir.1994)(trademark infringement plus "entry" into state with broadcasts); *Honeywell, Inc. v. Metz Apparatewerke,* 509 F.2d 1137, 1141 (7th Cir.1975)(infringement plus marketing and promotion of infringing product nationwide through distributor); *Caterpillar, Inc. v. Miskin Scraper Works, Inc.,* 256 F.Supp.2d 849, 851-52 (C.D.Ill.2003)(Judge McDade) (must be tortious act plus "entry" into state).

*10 In the court's opinion, part of the difficulty in determining whether personal jurisdiction exists (either specific or general) is an incomplete factual record. The Court believes that Lustig's affidavit is too conclusory to support a confident conclusion that personal jurisdiction is lacking. Missing is detailed information on the nature and extent of all Lustig's business activities, such as where sales are conducted, what products are sold and to whom, where and how the products are marketed, where taxes are filed and paid and whether any agents or employees exist. Additionally, Lustig does not address his alleged purchase of boards from Riviera or his other transactions with Riviera-the alleged infringement, the settlement agreement, negotiations, litigation, etc.[FN11] The Court believes that limited discovery and additional briefing may provide a firmer footing for a decision on personal jurisdiction. Accordingly, the Court will recommend denial of Prestige's motion to dismiss, but with leave to renew after limited discovery on the personal jurisdiction issue.[FN12]

> FN11. High-Top also appears to attack Lustig's credibility. High-Top submits affidavits of its own showing that Lustig was operating under the name Prestige Industries, Inc., despite Lustig's averment otherwise (d/e 34, attached affidavits).

> FN12. Prestige's argument on personal service depends on the success of its personal jurisdiction argument: that service cannot be had since personal jurisdiction does not exist. Thus, the court does not address this argument.

WHEREFORE:

(1) The Court recommends that the motion to dismiss and strike by Riviera be granted in part and denied in part (d/e 17). The Court recommends that High-Top's Counter-Claim for declaratory relief (Count I) be dismissed. The Court further recommends that the request for attorney's fees and punitive damages be stricken in Count III of the Counter-Complaint, but with leave to file an amended complaint. The Court otherwise recommends denial of Riviera's motion to dismiss.

(2) The Court further recommends that the motion to dismiss by Universal be denied (d/e 26).

(3) The Court lastly recommends that the motion to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

dismiss by Prestige be denied (d/e 28), with leave to renew after limited discovery on the question of personal jurisdiction.

Any objections to this Report and Recommendation must be filed in writing with the Clerk of the Court within ten working days after service of a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1). Failure to timely object will constitute a waiver of objections on appeal. *Video Views, Inc. v. Studio 21, Ltd.,* 797 F.2d 538, 539 (7th Cir.1986). See also Local Rule 72.2.

C.D.Ill.,2008.
Riviera Distributors, Inc. v. High-Top Amusements, Inc.
Not Reported in F.Supp.2d, 2008 WL 687385 (C.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.