# SALES AGENCY AGREEMENT

Digisound-WIE, Inc., hereinafter referred to as "the Company," and
C C Electro Sales Inc., LLC, hereinafter referred to as "the Agent," in
consideration of the promises made herein, agree as follows:

## ARTICLE 1: RECITALS

Section 1.01: The Company is a corporation duly organized, validly existing, and in good standing under the laws of the State of Illinois. The Company has its primary office and place of business at 1512 Artaius Parkway, Suite 100, Libertyville, IL 60048. The Company maintains its sales office and distribution center in Wauwatosa, Wisconsin.

Section 1.02: The Company is engaged in the business of the sale of electronic acoustic components: transducers, audible and visual warning devices (buzzers, beepers, speakers, chimes, sirens, horns, alarms, sounders, beacons, flashers) for Automotive, Industrial, Heavy-Duty, Off-Road, Fire Protection and Security, Telecom, Office Equipment and Appliances. The agreement does not cover microphones. The agreement does not cover contract engineering services. The principal purpose of this agreement is to establish an aggressive, responsive sales organization to promote the above referenced products for the OEM industry in the Territory later defined in this agreement.

Section 1.03: The Agent is a corporation duly organized, validly existing, and in good standing under the laws of the State of Indiana. The Agent has its primary office and place of business at 715 North Senate Avenue, Indianapolis, IN 46202. The agent maintains branch offices in Cleveland and Cincinnati, Ohio and in Detroit and Grand Rapids, Michigan.
a) The Agent declares that he/she possesses the financial and physical resources to promote the sale and use of the products of the Company and is desirous of developing demand for and selling such products as authorized herein.
b) The Company is desirous of having the Agent develop demand for and sell its products on the terms and conditions set forth herein.

Section 1.04: Term. This agreement shall be valid for one (1) year from the date of this agreement being signed. Thereafter it shall remain valid for further periods of one (1) year duration unless either party initiate change within one month of the end of each term period.

## ARTICLE 2: AGENCY

Section 2.01:
a) The Company appoints the Agent as an exclusive sales representative for the sale of its products within the territory, unless otherwise agreed in writing by the parties. Unless otherwise agreed in writing, the Company shall only pay commissions to the Agent, as herein provided, on purchase orders initiated/originating from within the Territory, described as follows:

INDIANA/KENTUCKY; OHIO/W.PA./W.VA; MICHIGAN

The Territory, so described, may be subsequently enlarged, reduced, or otherwise changed in area by the Company and is hereinafter referred to as the "Territory."

b) Except as the Company may authorize in writing hereafter, the Agent shall not sell any of the Company's products outside of the Territory.

Section 2.02: Agent's Account Duties. The Agent shall adhere to, cooperate and comply with the Company's sales policies and programs. The Agent agrees to vigorously promote the Company and solicit orders within the territory; and, after sale, to provide reasonable follow-up services. The Agent shall also provide reasonable assistance in the distribution of promotion materials and the exhibition of the Company's capabilities in the territory. The Agent agrees that he is an independent contractor and, that he has no authority to perform any act,



including, but not expressly limited to, the acceptance of orders or the making of any contract or make any representation imposing any
obligation of liability of any sort upon the Company. He agrees to hold the Company harmless for any loss or liability of whatsoever kind or nature arising from its acts or representation. Conversely, the Company agrees to hold the Agent harmless from any loss or liability of whatsoever kind or nature arising from acts of, or the failure to act, by the Company. The Agent shall furnish to the Company's credit department any information which it may have from time to time relative to the credit standing of any of its customers. After the first full year of cooperation the agent shall provide reasonable support for sales forecasting activities.

Section 2.03: Compensation. The Company shall pay to the Agent, as compensation for services, a commission of FIVE PERCENT (5%), subject to adjustment of the NET INVOICE VALUE of all shipments of its products to any part of his/her territory, excluding any products sold through the distribution network of Cornell Dubilier. It should be computed on the net amount of the invoice after discount deductions, tooling and engineering charges, allowances, transportation charges, taxes, rebates and returns. Delivery can be within or outside of said Territory. Point of Origin of initial request for quote is the determining factor. If the Agent wishes the assistance of other Company representatives in the marketplace, the Agent must contact the Company to discuss this arrangement and compensation. The Company may reduce the commission payable to the Agent if it is agreed in discussion with the Agent, and determined that a reduction is necessary in order for the Company to accept the proposed purchase. The Company shall pay the commissions on or around the fifteenth (15th) day of each month for all shipments paid for during the preceding calendar month. Compensation will be paid by the Company's check. If the account goes to collection there will be no commissions paid and the account will be terminated (refer to Section 3.04).

Section 2.05: Termination. This agreement may be terminated by either party upon THIRTY (30) days notice given to the other party as herein provided. The Company will discuss with the Agent termination of this agreement if it has not received any request for quotes from the Agent during any 120-day period. The Company reserves the right to terminate this agreement immediately (without benefit of 30 days written notice) if the Agent commits any act or makes any statements which the
Company deems to be adverse to its best interests. In the event of termination by the Company, this agreement shall remain applicable to any orders for products which the Agent has previously placed. The Company should continue to pay the Agent the commission for any part numbers for which the original purchase order was obtained while the present agreement was in effect for one (1) year after the termination of this Agreement. The commission payable shall be based on 50% of the prevailing last rates being paid to the Agent and for the part numbers for which a purchase order is dated before the notice of termination. The continuation of payments is excluded in the following cases: The Agent has entered into an agreement to represent a known competitor of the Company; it is determined that the Agent has made any statements written or verbal disparaging the Company, the Agent has ceased to operate as an on-going concern.

Section 2.06: Authority to Employ Sales Personnel. The Agent may employ such sales personnel at such compensation and on such other conditions as the Agent deems proper to sell the products of the Company in the Territory. The contract which the Agent makes with such sales personnel shall contain a provision that they are the employees of the Agent and are to be paid by the Agent alone and that, in employing the sales personnel, the Agent is acting individually and not as an agent for the Company.

Section 2.07: Payment of Expenses. The Agent shall assume and pay all the costs of conducting the sales agency hereunder, including commissions or other compensation to sales personnel in the Agent's employ.

## ARTICLE 3: OPERATIONS

Section 3.01: Samples and Advertising Matter. The Company shall furnish the Agent a reasonable supply of samples and advertising matter to be used in connection with this agency. Samples and product literature are the exclusive property of the Company and, on termination of this agreement, the Agent shall return them to the Company.

Section 3.02: Forwarding Orders. The Agent shall forward all orders promptly to the Company and each order shall be subject to the Company's acceptance. The Agent shall put at the disposal of the Company its full customer service capability, including, but not limited to the EDI facility for all customers within the Territory and by special arrangement for customers outside of the territory. This shall include pulling of all customer

delivery schedules and providing them promptly to the Company and the provision of ASNs to the Customers upon receipt of the necessary shipping information from the Company.

Section 3.03: Terms of Sale: All sales shall be at prices and upon terms established by the Company and it shall have the right, in its sole discretion, from time to time, to establish, change, alter or amend prices and other terms and conditions of sales. The Agent shall not accept orders in the Company's name or make price quotations or delivery promises without the Company's prior approval.

Section 3.04: Acceptance of Orders. All orders are subject to acceptance or rejection by an authorized officer of the Company. The Company shall be responsible for all credit risks and collections but the Agent shall assist and cooperate in obtaining necessary credit information and the collection of delinquent accounts. At least once a month the Company shall supply the Agent with information on orders received and shipped and receivables aging report for those accounts over 45 days old.

## ARTICLE 4: MISCELLANEOUS PROVISIONS

Section 4.01: Notices.
a) All communications under this agreement shall be in writing and shall be delivered by hand or mailed by overnight courier or by registered or certified mail, postage prepaid:

1) If to the Agent, at 715 North Senate Avenue, Indianapolis, IN 46202, marked to the attention of Carol Cohen, or at such other address as the Agent may have furnished the Company in writing.
2) If to the Company, at 7402 W. Garfield Ave., Wauwatosa, WI 53213, marked for the attention of Dirk de Young, or at such other address as the Company may have furnished the Agent in writing.
a) Any notice so addressed shall be deemed to be given: if delivered by hand, on the date of such delivery; if mailed by courier, on the first business day following the date of such mailing; and if mailed by registered or certified mail, on the third business day after the date of such mailing.

Section 4.02: Assignment. The Agent shall not assign this agreement without the prior written consent of the Company.

Section 4.03: Nondisclosure of Confidential Information. The Agent, except in connection with this Company, shall not disclose to any person or entity or user, either during the term or at any time thereafter, any information not in the public domain or generally known in the industry, in any form, acquired by the Agent while employed by the Company or any predecessor to the Company's business or, if acquired following the term, such information which, to the Agent's knowledge, has been acquired, directly or indirectly, from any person or entity owing a duty of confidentiality to the company or any of its subsidiaries or affiliates, relating to the Company, its subsidiaries or
affiliates, including, but not limited to, information regarding customers, vendors, suppliers, trade secrets, training programs, manuals or materials, technical information, contracts, systems, procedures, mailing lists, know-how, trade names, improvements, price lists, financial or other data (including the revenues, costs or profits associated with any of the Company's products or services), business plans, code books, invoices and other financial statements, computer programs, software systems, databases, discs and printouts, plans (business, technical or otherwise), customer and
industry lists, correspondence, internal reports, personnel files, sales and advertising material, telephone numbers, names, addresses or any other compilation of information, written or unwritten, which is or was used in the business of the Company or any subsidiaries or affiliates thereof. The Agent agrees and acknowledges that all of such information, in any form, and copies and extracts thereof, are and shall remain the sole and exclusive property of the Company and, upon termination of this agency, the Agent shall return to the Company the originals and all copies of any such
information provided to or acquired by the Agent in connection with the performance of
this agency and shall return to the Company all files, correspondence and/or other communications received, maintained and/or originated by the Agent during the course of this Agency. The Agent's obligation under this section 4.03 shall not apply to any information which:
a) is known publicly;
b) is in the public domain or hereafter enters the public domain without the fault of the Agent;
c) is known to the Agent prior to his/her receipt of such information from the Company, as evidenced by written records of the Agent; or
d) is hereafter disclosed to the Agent by a third party not under any obligation of confidence to the Company.

Section 4.04: Waiver and Amendments. Any waiver, alteration, amendment or modification of any of the terms of this agreement shall be valid only if made in writing and signed by the parties hereto.

Section 4.05 Disputes and Arbitration- The parties agree that any disputes or questions arising hereunder, including the construction or application of this agreement, shall be settled by arbitration in accordance with the rules of the American Arbitration Association then in force, and that the arbitration hearings shall be held in the city in which the principal office of the Company is located.

If the parties cannot agree upon an arbitrator within ten days after demand by either of them, either or both parties may request the American Arbitration Association to name a panel of five arbitrators. The Company shall strike the names of two on this list, the Agent shall then strike two names, and the remaining name shall be the arbitrator. The decision of the Arbitrator shall be final and binding upon the parties both as to law and to fact, and shall not be appealed to any court in any jurisdiction. The expenses of the arbitrator shall be shared equally by the two parties, unless the arbitrator determines that the expenses shall be otherwise assessed.

**COMPANY:**

Dated this ___06___ day of ___November___ in the year ___2002___
DIGISOUND-WIE, INC.

BY: Florian Greiling, President _____
                                    Signature

**AGENT:**

Dated this _____ day of _____ in the year _____.
C C ELECTRO LLC

BY: _____
signature

_____
type or print name and company/title