Westlaw.

Not Reported in F.Supp.2d                                                                      Page 1
Not Reported in F.Supp.2d, 2003 WL 1906136 (S.D.Ind.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 1906136)**

**H**Fehribach v. Ernst and Young, LLP
S.D.Ind.,2003.
Only the Westlaw citation is currently available.
United States District Court,S.D.
Indiana,Indianapolis Division.
Gregory S. **FEHRIBACH**, Chapter 7 Trustee of
Taurus Foods, Inc., Plaintiff,
v.
ERNST AND YOUNG, LLP, Defendant.
**No. 1:02-CV-01270-JDT.**

Jan. 6, 2003.

Phillip J. Fowler, Brian W. Welch, Bingham McHale
LLP, Indianapolis, IN, for Appellant.
John C. Hoard, Elliott D. Levin, Rubin & Levin,
P.C., Indianapolis, IN, for Appellee.

### ENTRY ON DEFENDANT'S MOTION TO STAY PROCEEDINGS PENDING ARBITRATION[FN1]

> FN1. This Entry is a matter of public record
> and is being made available to the public on
> the court's web site, but it is not intended for
> commercial publication either electronically
> or in paper form. Although the ruling or
> rulings in this Entry will govern the case
> presently before this court, this court does
> not consider the discussion in this Entry to
> be sufficiently novel or instructive to justify
> commercial publication or the subsequent
> citation of it in other proceedings.JOHN
> DANIEL TINDER, Judge.

*1 Pursuant to this court's earlier entry,[FN2] this matter
comes before the court in the form of a review of the
bankruptcy court's proposed findings of fact and
conclusions of law on Ernst and Young's ("E & Y")
motion to stay the proceedings pending arbitration of
adverse claims instituted by the chapter 7 trustee of
Taurus Foods ("Taurus"). The underlying dispute
concerns auditing work E & Y performed for Taurus,
and specifically whether claims arising out of that
work must be submitted to arbitration, in the first
instance, and who decides that question, in the
second.

> FN2.See Entry Establishing Matter as
> Review of Proposed Findings and
> Conclusions in Non Core Proceeding and
> Allowing Reply Brief Only, dated October
> 31, 2002.

**I. Background**

*A. Facts*[FN3]

> FN3. This section summarizes the factual
> findings of the bankruptcy court, which have
> not been objected to by either of the parties
> and are thus adopted by the court.

Taurus engaged E & Y to audit and report on its
financial statements for the fiscal year ended January
1994. E & Y issued a clean audit opinion for that
year. In or around November 1994, Taurus and E &
Y entered into a second agreement whereby E & Y
would audit Taurus' financial statements for the fiscal
year ending January 28, 1995 in accordance with
Generally Accepted Auditing Standards, as well as
render various tax and consulting services. E & Y
issued its report regarding the 1995 audit on August
4, 1995, concluding as it did in the previous year that
Taurus' financial statements presented fairly, in all
material respects, the financial position of Taurus as
of January 28, 1995, in accordance with Generally
Accepted Accounting Principles. There is no
evidence before the court as to any contract or
engagement letter with respect to the 1995 audit.

Seven months after the issuance of the 1995 audit
report, E & Y and Taurus again agreed to E & Y's
provision of auditing services for the Taurus fiscal
year ending January 27, 1996. An engagement letter
dated March 13, 1996 (the "1996 Engagement
Letter") detailed the nature of the services to be
provided. The Engagement Letter also contained the
following arbitration clause:

Any controversy or claim arising out of or relating to
the services covered by this letter or hereafter
provided by us [E & Y] to the Company [Taurus]
(including any such matter involving any parent,
subsidiary, affiliate, successor in interest, or agent of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 1906136 (S.D.Ind.)
(Cite as: Not Reported in F.Supp.2d, 2003 WL 1906136)

the Company or of Ernst & Young LLP) shall be submitted first to voluntary mediation, and if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures set forth in the attachment to this letter. Judgment of any arbitration award may be entered in any court having proper jurisdiction.

The dispute resolution procedures referenced in the letter provide that "the following procedures shall be used to resolve any controversy or claim ("disputes") as provided in our engagement letter of March 13, 1996."Under the heading "Arbitration," the procedures further state: "Any issue concerning the extent to which any dispute is subject to arbitration, or concerning the applicability, interpretation or enforceability of these procedures, including any contention that all or part of these procedures are invalid or unenforceable, shall be governed by the Federal Arbitration Act and resolved by the arbitrators."The Controller of Taurus signed the 1996 Engagement Letter in November 1997.

*2 E & Y did not issue an opinion on the Taurus financial statements for the 1995-1996 fiscal year.

On February 19, 1998, Taurus entered into bankruptcy. The chapter 7 trustee thereafter filed a complaint alleging claims for breach of contract and negligence arising out of the 1995 and 1996 E & Y audits; on March 22, 2002, the trustee filed an amended complaint in which he dropped the claims pertaining to the 1996 audit and reasserted the claims arising out of the 1995 audit. E & Y renewed its motion to stay the proceedings pending arbitration of those claims.

*B. Bankruptcy Court Decision*

The bankruptcy court handed down its opinion on June 19, 2002, denying E & Y's motion for a stay.[FN4]First addressing the threshold question of who-the court or the arbitrators-should determine the arbitrability of the trustee's claims, the court determined that the language in the 1996 Engagement Letter mandating that disputes over arbitration themselves be committed to arbitration was not meant to sweep in claims arising out of a prior agreement to perform auditing services for the previous fiscal year (1994-1995). Thus, it was for a court to decide the question of whether the claims

arising out of the 1995 auditing services were arbitrable. The bankruptcy court then proceeded to conclude that, in fact, the trustee's claims were neither related to nor arose out of the services covered by the 1996 Engagement Letter or any services thereafter provided, and so they were not subject to arbitration.

> FN4. As previously noted, in a prior entry this court concluded that, due to the nature of the underlying proceeding as "non-core," the bankruptcy court's opinion should be considered a submission of proposed findings of fact and conclusions of law submitted to this court for entry of a final order after appropriate review. *See* 28 U.S.C. § 157(c)(1).

E & Y objects to the bankruptcy court's ruling on the grounds that in deciding the gateway issue as to who should resolve disputes over arbitrability, the court jumped ahead to the second issue of whether the claims in question were encompassed by the 1996 arbitration clause. Finding they were not, the court then sprang back and resolved the threshold issue on that basis. E & Y argues that the court should never have entertained the question of the applicability of the 1996 arbitration clause because any disagreement in that regard was to be submitted to the arbitrators pursuant to the dispute resolution procedures. Further, the bankruptcy court also erred on the substantive issue of arbitrability, since in E & Y's view the claims arising out of the 1995 audit were "related to" the subject matter of the 1996 agreement, which E & Y characterizes as the provision of auditing services "in general."

The standard of review for a bankruptcy court's proposed findings of fact and conclusions of law is *de novo* with respect to those matters to which a party has timely and specifically objected. 28 U .S.C. § 157(c)(1). E & Y's objections relate wholly to the court's legal conclusions, which will be reviewed under that standard. Having received the Defendant's Objections, the Plaintiff's Response, and the Defendant's Reply, the court now rules as explained below.

**II. Discussion**

*A. Who Decides Arbitrability*

Not Reported in F.Supp.2d                                                    Page 3
Not Reported in F.Supp.2d, 2003 WL 1906136 (S.D.Ind.)
(Cite as: Not Reported in F.Supp.2d, 2003 WL 1906136)

The bankruptcy court aptly summed up the multiple levels of disputes in this matter:

**\*3** The first level is whether E & Y was negligent and breached its contract entered into with Taurus with respect to the 1995 audit, i.e., the merits of the case. The second level is whether the parties agreed to arbitrate the merits of the case. The third level is 'who should have the primary power to decide' the second level dispute-do the arbitrators or does the court decide whether the parties agreed to arbitrate the merits of the case?

As the bankruptcy court recognized, the "who decides" question necessarily precedes the other two, although, as will be discussed shortly, the third and the second level disputes are not as neatly separable as might first appear.

In *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995), the Supreme Court took up the question of the proper treatment of the "third-level" or gateway dispute over who has the authority to resolve questions of arbitrability. According to the Court, this issue should be handled just as any other contractual matter, albeit with one important qualification. "Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute .... so the question 'who has the primary power to decide arbitrability' turns upon what the parties agree about *that* matter."*Id.* at 943 (citations omitted). When deciding that question, "courts generally (though with a qualification we discuss below) should apply ordinary state-law principles that govern the formation of contracts."*Id.* at 944 (citations omitted). Here that means the court must look to Indiana contract law. However, because of the general principle that "a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration,"*id.* at 945, and since "a party often might not focus upon .... the significance of having arbitrators decide the scope of their own powers,"*id.*, the Supreme Court added the proviso that a court should not infer agreement to commit disputes over arbitration to arbitrators "unless there is clear and unmistakable evidence that they did so."*Id.* at 944 (internal quotation marks omitted); *see also Howsam v. Dean Witter Reynolds, Inc.*, 123 S.Ct. 588, 592 (2002) ("the question whether the parties have submitted a particular dispute to arbitration ....

is an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.") (citing *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649 (1986); *First Options*, 514 U.S. 938 at 944).

Armed with this precedent, E & Y contends that determination of the "who decides" issue is straightforward. The 1996 Engagement Letter includes an attachment stipulating that all disputes over the reach of the arbitration clause contained therein are to be relegated to the arbitrators. That agreement is "clear and unmistakable evidence" of the parties' intent with regard to this issue. So, in denying the 1996 arbitration clause applies to his claims, the trustee is raising a challenge as to the scope of that clause, and, therefore, that dispute is committed to the arbitrators.

**\*4** This court agrees with the bankruptcy court that the inquiry cannot rest there. Under Indiana law, the paramount concern in interpreting a contract is the intent of the parties. *See First Fed. Sav. Bank of Ind. v. Key Markets, Inc.*, 559 N.E.2d 600, 603 (Ind.1990). The question, then, is whether the parties intended to require arbitration over the arbitrability of claims arising out of a contract for services for *one year* just by framing the issue as a dispute over the reach of an arbitration clause contained in a contract for services for a *subsequent* year. According to E & Y, the literal language of the dispute resolution procedures controls, and the answer is yes. This reading produces some odd results, however. It has the consequence that the instant E & Y alleges that an adverse claim is subject to the 1996 arbitration agreement, limited as that agreement may seem, arbitration is required to determine the applicability of the 1996 clause to that claim. On the logic of this position, if, say, E & Y had prepared tax returns for Taurus in 1990, and Taurus later brought suit against E & Y based on those returns, E & Y could send the whole case to arbitration simply by asserting that Taurus' claims somehow fell under the 1996 arbitration clause. This would be true regardless of the merits of the claim for arbitrability.

However, this unusual result is neither required by, nor consistent with, *First Options* and Indiana contract law principles. "[A] contract will not be interpreted literally if doing so would produce absurd results, in the sense of results that the parties,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 1906136 (S.D.Ind.)
(Cite as: Not Reported in F.Supp.2d, 2003 WL 1906136)

presumed to be rational persons pursuing rational ends, are very unlikely to have agreed to seek."*Beanstalk Group, Inc. v. AM Gen. Corp., 283 F.3d 856, 860 (7th Cir2002)* (applying Indiana law and citing *USA Life One Ins. Co. of Indiana v. Nuckolls, 682 N.E.2d 534, 539 (Ind.1997)*). The court does not think that Taurus could have reasonably believed it was surrendering its right to courtroom adjudication to such an extent that claims arising out of auditing services governed by a separate contract could be referred to arbitration-even over their alleged arbitrability-on the basis of a later arbitration clause that, on all appearances, lacks retroactive reach. This is made even more clear when the dispute resolution procedures are juxtaposed with the arbitration clause itself. *See OEC-Diasonics, Inc. v. Major, 674 N.E.2d 1312, 1315 (Ind.1996)* (a "contract must be read as a whole when trying to ascertain the parties' intent.") Without consideration of the substantive scope of the underlying arbitration clause, it is otherwise impossible to apply the parties agreement as to the "who decides" issue to the circumstances of this case.

The arbitration provision contained in the 1996 Engagement Letter states that "[a]ny controversy or claim arising out of or relating to the services covered by this letter or hereafter provided by [E & Y] to [Taurus]" shall be submitted to arbitration. The services "covered by this letter" evidently refer to auditing services with respect to Taurus fiscal year 1995-1996, the preparation of two shareholder tax returns and miscellaneous tax advice-and not auditing services "in general" as E & Y maintains.[FN5](See App. to Def.'s Objections, Ex. C, 1996 Engagement Letter ("This [letter] will confirm our engagement to audit and report on the financial statements of Taurus Foods, Inc. for the year ended January 27, 1996.")) The reference to auditing services for the 1995-1996 fiscal year effectively builds a temporal restriction into the arbitration agreement. Thus, while the clause is prospectively open-ended by virtue of the phrase "any services .... hereafter provided," it is difficult to see how it could have any application to claims arising out of conduct that preceded the provision or agreement to provide the services covered by the letter.[FN6]

FN5. Certainly, E & Y's fee of $16,000 does not appear to be for auditing services in the abstract.

FN6. As the bankruptcy court notes, it would have been easy to give retroactive effect to the arbitration clause through slight amendment of the language, viz., "any services covered by this letter or *heretofore* or hereafter provided"; or by requiring arbitration of any claim relating to the parties' business relationship, *see Zink v. Merrill Lynch Pierce Fenner & Smith, Inc., 13 F.3d 330, 332 (10th Cir.1993)*.

**\*5** E & Y cites a number of precedents purporting to show that the "relate to" language in the arbitration clause opens up the possibility of retroactive application. The court discusses those cases in the next section. Here it suffices to note that the implausibility of that interpretation casts serious doubt on whether the parties intended the dispute resolution procedures to have the sweeping effect asserted by E & Y. And where one side advances a non-meritorious construction of an arbitration clause that would push an unwilling party into arbitration, in *that* situation, at least, the parties can't be said to have intended for their agreement to impose arbitration of arbitrability. Under such circumstances, the dispute resolution procedures lack the requisite "clear and unmistakable" evidence demanded by *First Options* before a party can be held to have abandoned its right to a judicial hearing on the "third level" dispute. "[O]ne can understand why courts might hesitate to interpret silence or ambiguity on the 'who should decide arbitrability' point as giving the arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they would have reasonably thought a judge, not an arbitrator, would decide."*First Options, 514 U.S. at 945*.

This conclusion does not mean that a court must fully resolve the second-level dispute in order to dispose of the third-level dispute: as E & Y contends, such a result would indeed be circular and rob agreements to arbitrate controversies over arbitrability of their meaning. Rather, a brief examination of the arbitration clause to ensure that the party seeking arbitration presents a colorable claim as to its scope is all that is necessary. So, for example, an allegation of tortious interference with contract against E & Y contemporaneous with the 1995-1996 audit would be referred to arbitration without further consideration as such a claim is arguably within the scope of the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                      Page 5
Not Reported in F.Supp.2d, 2003 WL 1906136 (S.D.Ind.)
(Cite as: Not Reported in F.Supp.2d, 2003 WL 1906136)

arbitration clause. *See Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907 (7th Cir.1999) (tortious interference with employment contract by supplier arbitrable under clause requiring arbitration of claims arising from or relating to distributorship agreement); *see also Sweet Dreams Unlimited, Inc. v. Dial-A-MAttress Int'l, Ltd.*, 1 F.3d 639, 643 (7th Cir.1993) ("We have routinely held that a party may not avoid a contractual arbitration clause merely by casting its complaint in tort.") (citations omitted). The facial validity of such an invocation of the arbitration clause would be sufficient to send the ultimate issue of arbitrability directly to the arbitrators. But where, as here, a claim appears to be so far outside the bounds of the arbitration clause such that literal enforcement of a second agreement to arbitrate disputes over its reach would likely frustrate the parties' reasonable expectations and deprive a party of its day in court; then in that case a court will reserve to itself the power to decide arbitrability. As that is true of E & Y's assertion of arbitrability here, the bankruptcy court did not err in concluding that the court had authority to adjudicate the dispute over arbitration.

*B. Scope of Arbitration Clause*

**\*6** The court thus proceeds to the second-level dispute between the parties, namely, the question of whether the trustee's claims for negligence and breach of contract arising out the 1995 auditing services are covered by the 1996 arbitration clause. The 1996 clause calls for arbitration of any claim arising out of or relating to the services covered by the Engagement Letter. E & Y contends that the trustee's claims, which it concedes don't arise out of the 1996 services covered by the Engagement Letter, nonetheless relate to them. It is true that, as their respective meanings would suggest, the phrase "relating to" is broader in scope than "arising from." *See Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 52 F.3d 1292, 1295 (9th Cir.1994). Nonetheless, in contending that the "relating to" language gives the arbitration clause retroactive reach, E & Y blurs a critical distinction. Certainly, E & Y is correct to observe that the conduct of an audit for 1995-1996 requires examination of financial statements that were also scrutinized in the course of the previous year's audit, as well as the work papers produced during that audit. In this sense, the integrity of the 1996 audit depends on, and thus "relates to," the results of the 1995 audit. But that is not to say that the *claims* arising out of the earlier year's audit work bear any relation to the services rendered in a subsequent year. The 1995 audit and claims arising out of the performance of that audit are two different things. And the contract specifically states that it is the claims which must relate to the 1996 auditing services; and clearly they do not. For it is undisputed that the factual allegations underlying the trustee's amended complaint are devoid of reference to any acts of commission or omission with respect to auditing services provided for the 1995-1996 fiscal year.

Therefore, even though the arbitration clause involved in this case is fairly characterized as broad, *see Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir.1999) (arbitration clause containing "arising out of" and "relating to" language capable of expansive reach), and under federal law there exists a presumption in favor of arbitrability, *see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (doubts over arbitrability resolved in favor of arbitration); *Miller v. Flume*, 139 F.3d 1130, 1136 (7th Cir.1998) (same), that clause nonetheless cannot support a construction that would allow it to reach back and capture the claims brought by the trustee. No matter how phrased-whether it is said that the allegations do not "touch matters" covered by the arbitration agreement, *see Collins & Aikman Products Co. v. Building Systems, Inc.*, 58 F.3d 16, 20-21 (2d Cir.1995) or that the dispute lacks a "significant relationship to the contract," *see J.J. Ryan & Sons v. Rhone Poulence Testile, S.A.*, 863 F.2d 315, 321 (4th Cir.1988)-the claims brought by the trustee are outside the scope of the 1996 arbitration clause. "[C]laims that present no question involving construction of the contract [containing the arbitration clause] and no questions in respect of the parties rights and obligations under it, are beyond the scope of the arbitration agreement."*Collins, 58 F.3d at 23.*

**\*7** E & Y cites an abundance of authority for the proposition that "events predating a contractual agreement may nevertheless 'relate to' the agreement where the dispute touches upon the agreement's subject matter."(Pl.'s Reply Br. at 11.) However, the meaning of that proposition is entirely dependent on the subject matter in question. Where, for example, a clause calls for arbitration of disputes arising out of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 6
Not Reported in F.Supp.2d, 2003 WL 1906136 (S.D.Ind.)
(Cite as: Not Reported in F.Supp.2d, 2003 WL 1906136)

or relating to the parties "business relationship," or the customer's "account," then, clearly, events preceding the agreement may be encompassed thereby in those instances where they touch upon a relationship or account that *itself* predates the agreement. Many of E & Y's precedents are of this type. *See, e.g., Rand Bond of North Am., Inc. v. Saul Stone & Co.,* 726 F.Supp. 684, 687-688 (N.D.Ill.1989) (any dispute relating to party's accounts subject to arbitration; clause "speaks in terms of relationships and not timing"); *Whisler v. H.J. Meyers & Co., Inc.,* 948 F.Supp. 798, 802 (N.D.Ill.1996) (same); *see also Trott v. Paciolla,* 748 F.Supp. 305, 308-309 (E.D.Pa.1990) (any dispute relating to parties' "business relationship" relegated to arbitration). Those cases are inapplicable here because the subject matter in this case, auditing services for 1995-1996, did not predate the agreement itself. Other of E & Y's precedents involve cases in which the claims at issue arose directly under the contract containing the arbitration clause, *see Mehler v. Terminix Int'l Co.,* 205 F.3d 44, 49 (2d Cir.2000); *Collins,* 58 F.3d at 21, or where the parties tried to avoid arbitration by casting allegations in terms of tort and not contract, *see Kiefer,* 174 F.3d at 910. Here, by contrast, the claims instituted by the trustee don't arise under the 1996 Engagement Letter, and therefore don't implicate the parties' contractual relationship as created by that agreement. Thus, these decisions wholly fail to support E & Y's cause.

In sum, analysis of the trustee's claims and their lack of any relation to the subject matter of the agreement containing the arbitration clause leaves no doubt that those claims are not within the scope of that clause.

**III. Conclusion**

In conclusion, E & Y's objections to the bankruptcy court's proposed findings of fact and conclusions of law are **OVERRULED.**The motion for a stay of the proceedings pending arbitration will therefore be **DENIED.**A district court's denial of a stay of proceedings pending arbitration is directly appealable under 9 U.S.C. § 16(a)(1)(A), however, and the court would consider a motion to stay the adversary proceedings pending appeal of this ruling. *See Bradford-Scott Data Corp., Inc. v. Physician Computer Network, Inc.,* 128 F.3d 504 (7th Cir.1997) (granting stay of district court proceedings until appeals from denial of stay pending arbitration were

resolved).

S.D.Ind.,2003.
Fehribach v. Ernst and Young, LLP
Not Reported in F.Supp.2d, 2003 WL 1906136 (S.D.Ind.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.