LEXSEE 1998 U.S. DIST. LEXIS 2869

CURTIS E. HAUGEN and EUGENE, CHAMBERS, Plaintiffs, v. PETER HOL-
LENBACH, as trustee of the Charles Hollenbach, Inc. Profit Sharing Plan and
Trust, CHARLES HOLLENBACH, INC., PROFIT SHARING PLAN, CHARLES
HOLLENBACH, INC., THE PRINCIPAL FINANCIAL GROUP, INC., a foreign
corporation, PRINCIPAL MUTUAL LIFE INSURANCE COMPANY,
SILVERMAN, KORENTHAL & COMPANY, an Illinois corporation, and HOW-
ARD KORENTHAL, an individual, Defendants.

No. 96 C 7192

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
ILLINOIS, EASTERN DIVISION

1998 U.S. Dist. LEXIS 2869

March 10, 1998, Decided
March 11, 1998, Docketed

**DISPOSITION:** [*1] Recommended that this Korenthal Defendants' motion for summary judgment should be granted. Principal Defendants' motion for summary judgment has been withdrawn and its request for leave to deposit plan assets with court should be denied without prejudice.

**COUNSEL:** For CURTIS E HAUGEN, EUGENE CHAMBERS, plaintiffs: Lester Abram Ottenheimer, III, Corey Scott Berman, Diane Jane Silverberg, Kovitz, Shifrin & Waiteman, Buffalo Grove, IL.

For PETER HOLLENBACH, defendant: Donald T. Bertucci, Attorney at Law, Chicago, IL.

For PRINCIPAL FINANCIAL GROUP, INC., THE, PRINCIPAL MUTUAL LIFE INSURANCE COMPANY, defendants: Daniel John McMahon, Wilson, Elser, Moskowitz, Edelman & Dicker, Chicago, IL.

For PRINCIPAL MUTUAL LIFE INSURANCE COMPANY, defendant: Steven L Severson, Paul W Heiring, Faegre & Benson, Minneapolis, MN.

For SILVERMAN, KORENTHAL & COMPANY, HOWARD KORENTHAL, defendants: Philip V. Martino, Elizabeth Anne Graber, Rudnick & Wolfe, Chicago, IL.

For PROFIT SHARING PLAN, defendant: James Michael Kuhn, United States Attorney's Office, Chicago, IL.

**JUDGES:** REBECCA R. PALLMEYER, United States Magistrate Judge. Judge Paul E. Plunkett.

**OPINION BY:** REBECCA R. PALLMEYER

**OPINION**

### REPORT [*2] AND RECOMMENDATION

Plaintiffs Curtis Haugen and Eugene Chambers were employees of Charles Hollenbach, Inc. (hereinafter, "the Company") and participants in the Company's pension plan until the Company became insolvent in 1992. During the months that the Company slipped further and further into debt, Plaintiffs allege, Peter Hollenbach, a principal of the Company and trustee of the pension plan, withdrew large sums from the plan and invested it in the Company or made other improper investments, resulting in large losses to the value of Plaintiffs' plan accounts.

Haugen's and Chambers' claims for wages owed them by the company were paid in full by Howard Korenthal, who was appointed to act as assignee for the benefit of creditors of the company. Despite repeated requests, however, neither Plaintiff has received a distribution of his share of the pension plan. In 1996, Plaintiffs filed this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. against their former employer, Charles Hollenbach, Inc.; the Charles Hollenbach, Inc. Profit Sharing Plan;

Peter Hollenbach, as Trustee of the pension plan; Principal Financial Group, Inc. and Principal [*3] Mutual Life Insurance Company, as administrator of the plan's assets; and Howard Korenthal and his firm, Silverman Korenthal & Company, who acted as assignee of the assets of the Company for the benefit of creditors. Plaintiffs believe each of these Defendants is responsible in some fashion for the loss of value of Plaintiffs' accounts in the pension plan and/or the fact that Plaintiffs have not yet recovered their share of plan assets.

Two motions for summary judgment have been filed. First, the assignee, Defendant Howard Korenthal and his firm, Defendant Silverman, Korenthal & Company (hereinafter jointly "Korenthal") seek summary judgment in their favor. Korenthal argues that, although he was responsible for administering claims against the estate of Charles Hollenbach, Inc., he had no control over or responsibility for the pension plan assets; thus, Plaintiffs' claim for those assets must be dismissed as against Korenthal. Defendants Principal Financial Group, Inc. and Principal Mutual Life Insurance Company have also moved for summary judgment, arguing that Plaintiffs' state law claims against them are preempted by ERISA and their claims for distribution of plan assets are premature. [*4] In addition, the Principal Defendants have moved under FED. R. CIV. P. 67 for leave to deposit all plan assets under their control into the court. Early this year, Plaintiffs and the Principal Defendants advised the court that the summary judgment issues had been settled, but that the motion for leave to deposit plan assets remains pending.

Because Plaintiffs' claims for plan benefits do not constitute claims against the Company, this court now recommends that the Korenthal Defendants' motion for summary judgment be granted. In this court's view, the parties' resolution of issues raised in the Principal Defendants' motion for summary judgment renders moot the request of those Defendants for leave to deposit plan assets into the court. Accordingly, this court recommends that motion be denied without prejudice. The motions are addressed below in turn.

**KORENTHAL DEFENDANTS' MOTION**

**Factual Background**

1

> 1  The facts set forth here are taken from the Statement of Uncontested Facts in Support of Motion for Summary Judgment (hereinafter "Defs.' 12(M) Stmt."), Plaintiffs' 12(N) Statement in Opposition to Silverman, Korenthal & Company and Howard Korenthal's Motion for Partial Summary Judgment (hereinafter "Pls.' 12(N) Stmt."), Plaintiffs' Additional Facts (hereinafter "Pls.' 12(N)(3)(b) Stmt."), and depositions, affidavits, and other pertinent documents contained in the record.

[*5] Plaintiffs Curtis E. Haugen and Eugene Chambers were employees of Charles Hollenbach, Inc. and participants in one or more of its retirement plans (collectively, hereinafter "the Plan") before the Company terminated its business on November 6, 1992. (Defs.' 12(M) Stmt. PP 1, 3.) As part of the termination process, Peter Hollenbach (hereinafter "Hollenbach"), the former president of the now-defunct company (Defs.' 12(M) Stmt. P 2), executed an Assignment for the Benefit of Creditors on behalf of the Company (hereinafter "the Assignment"), in which he appointed Defendant Howard Korenthal (hereinafter "Korenthal") of Silverman, Korenthal & Company the assignee of the Company's assets. (Defs.' 12(M) Stmt. PP 3, 4; Contract of Assignment, Ex. A to Affidavit of Howard Korenthal (hereinafter "Korenthal Aff.").) The preamble of the Assignment acknowledged that the company was indebted to "diverse persons which it is presently unable to [pay] in full. . . ." (Contract of Assignment, Ex. A to Korenthal Aff.) [2]

> 2  Under Illinois law, an assignment for the benefit of creditors is "a voluntary transfer by a debtor of his property to an assignee in trust for the purpose of applying the property or proceeds thereof to the payment of his debts[.]" *Illinois Bell Telephone Co. v. Wolf Furniture House, Inc.*, 157 Ill. App. 3d 190, 194, 509 N.E.2d 1289, 1292-93, 109 Ill. Dec. 277 (1st Dist. 1987). This procedure is not statutorily authorized in Illinois, but rather is a common law "alternative to bankruptcy filing." *Consolidated Pipe & Supply Co. v. Rovanco Corp.*, 897 F. Supp. 364, 371 (N.D. Ill. 1995). An assignment for the benefit of creditors must be "supported by a writing evidencing the trust agreement and delineating the trustee's duties," *Federal Deposit Ins. Corp. v. Juron*, 713 F. Supp. 1116, 1119 (N.D. Ill. 1989), but otherwise the only limitation on the contract of assignment is that it not force creditors to accept a rata share of the amount owed in settlement of their claims or otherwise impose conditions "onerous" to creditors. *Consolidated Pipe & Supply Co.*, 897 F. Supp. at 370.

[*6] Pursuant to his role as assignee of the Company's assets, Korenthal notified all creditors, including Plaintiffs Haugen and Chambers, of the Assignment (Defs.' 12(M) Stmt. P 5), and invited each creditor to "submit affidavits of claim stating how much they were owed and the basis for each claim." (*Id.* P 6.) [3] Both Plaintiffs accepted this invitation. On November 18,

Case 1:07-cv-06535   Document 111-3   Filed 05/13/2008   Page 3 of 6

Page 3
1998 U.S. Dist. LEXIS 2869, *

1992, Haugen submitted to Korenthal a claim in the amount of $ 7,193.60 for "unpaid wages or moneys withheld from his paycheck[.]" (*Id.* P 8.) On November 24, 1992, Chambers submitted a similar claim to Korenthal in the amount of $ 4,644.60. (*Id.* P 9.)

> 3  Plaintiffs' response to this paragraph of the Rule 12(M) Statement states merely, "The notice . . . speaks for itself." Because that response constitutes neither an admission nor a denial of Defendants' characterization, the court deems Defendants' statement admitted. From this court's review it appears that Mr. Korenthal's three-page letter of November 9, 1992 reviews the history of the Company's operations, describes assets and liabilities in some detail, seeks assistance in locating a purchaser for the business, and concludes, "I would appreciate it if you would complete the attached Affidavit of Claim form and return it to us by December 15, 1992." (11/9/92 Letter from Korenthal to Company Creditors, Ex. A to Pls.' 12(N)(3)(b) Stmt. (hereinafter, "11/9/92 Korenthal letter").)

[*7] It is undisputed that neither Haugen nor Chambers submitted claims for any funds assertedly due them under the Plan, nor was any claim submitted on behalf of the Plan itself. (Defs.' 12(M) Stmt. PP 11-12; Pls.' 12(N) Stmt. PP 11-12). Plaintiffs claim that they attempted to file claims for funds from the Plan but that Steve Nerger, an employee who had been assigned by Korenthal to "carry out the day-to-day functions of the assignee" (Pls.' Opp. Mem. at 1), discouraged them from doing so. According to Plaintiffs, they requested the rollover of their Plan monies "several times" from Nerger (Pls.' 12(N)(3)(b) Stmt. P 10; Plaintiffs' Answers to Defendants the Principal Mutual Life Insurance Company's First Set of Interrogatories P 2(b)), but he responded on each occasion that "he did not want to hear about the request." (Pls.' 12(N)(3)(b) P 11.) Defendants do not dispute this assertion, which is consistent with their position that Korenthal had no control over Plan assets. Korenthal testified that distributing Plan assets was beyond his authority as Assignee. (Korenthal Deposition (hereinafter "Korenthal Dep.") at 24.) Plaintiffs concede, in fact, that Hollenbach, the Plan trustee, by and [*8] through his appointed agent, the Principal Mutual Life Insurance Company, retained exclusive control of Plan funds notwithstanding the Assignment. (Plaintiffs' Memorandum of Law in Opposition to Silverman, Korenthal & Company and Howard Korenthal's Motion for Partial Summary Judgment at 4.)

In addition to the wage claims filed by Haugen and Chambers, Korenthal reviewed claims submitted by the Hollenbach family in the aggregate amount of $ 752,290.56, including wage claims of $ 413,258.88. (Pl.'s 12(N)(3)(b) P 5, Amended Claim, Ex. B to Pl.'s 12(N)(3)(b) Stmt.) As Plaintiffs assert, the Hollenbach claim included $ 450,000 that Hollenbach had withdrawn from the Plan and advanced to the Company between June 28, 1991 and May 22, 1992. (Pl.'s 12(N)(3)(b) P 6; Amended Claim, Ex. B to Pls.' 12(N)(3)(b) Stmt.; Settlement Negotiations Document, Ex. C to Pl.'s 12(N)(3)(b) Stmt.) Korenthal knew the Hollenbach family's claim consisted in part of money Hollenbach had withdrawn from the Plan but appeared to understand the withdrawal represented Peter Hollenbach's own share of Plan assets; Korenthal testified that he had "reviewed the movement [of the $ 450,000] . . . and concluded that the money [*9] was Peter [Hollenbach]'s money from the pension plan or the profit sharing plan that was advanced to Peter." [4] (Korenthal Dep. at 20.)

> 4  Korenthal also wrote, in a letter to creditors of the Company, that his investigation of the Company's books revealed that "$ 550,000 had been advanced to Hollenbach from the Company's profit sharing trust" and that "an additional $ 200,000 was disbursed from the profit sharing trust to be invested in mortgage securities and other investments." (11/9/92 Korenthal letter.)

After the Company's creditors submitted their claims, Korenthal liquidated the Company's assets (with the exception of six life insurance policies on Hollenbach's life which the Company owned and of which the Company was the beneficiary) and checked the submitted claims for accuracy. (Defs.' 12(M) Stmt. P 9; 6/30/93 Letter from Korenthal to Company Creditors, Ex. D to Pls.' 12(N)(3)(b) Stmt.) Some time later (the record is unclear as to the date) Korenthal and the Hollenbach family negotiated a settlement [*10] of the Hollenbach family's claim under which the family received $ 75,000 in cash and was named the beneficiary of four of the six insurance policies on Peter Hollenbach's life with a total death benefit of $ 943,000. (*Id.* P 14; 6/30/93 Letter from Korenthal to Company Creditors, Ex. D to Pls.' 12(N)(3)(b) Stmt.) In a June 30, 1993 letter, Korenthal advised all creditors, including Plaintiffs, of the proposed settlement with the Hollenbach family. (Defs.' 12(M) Stmt. P 15.) The letter stated, further, that wage claims, including those of Plaintiffs Haugen and Chambers, would be paid in full. (*Id.* P 17.) Neither Plaintiff nor any other creditor objected to the proposed settlement. (*Id.* P 18.)

The settlement also disposed of the remaining creditors' claims. Under the terms of the settlement, the Company's priority creditors--that is, creditors like Plaintiffs who had submitted wage claims, entitled to priority under Illinois law--were paid out of the Company's liqui-

Case 1:07-cv-06535   Document 111-3   Filed 05/13/2008   Page 4 of 6

Page 4
1998 U.S. Dist. LEXIS 2869, *

dated assets. (Defs.' 12(M) Stmt. P 17.) Any remaining creditors, meanwhile, were named beneficiaries of the Company's two remaining life insurance policies (hereinafter "the Executive Life policies"), which Korenthal [*11] asserts have an aggregate value of $ 1,000,000. [5] (Id. P 16.) Plaintiffs do not dispute Defendant's assertion that their wage claims were satisfied in full. (Defs.' 12(M) Stmt. P 20; Pls.' 12(N) Stmt. P 20.)

> 5   Defendant asserts that, under the terms of the settlement, "Assignee [retained only] enough cash to maintain the [Executive Life] policies for five years; and that all creditors [will] be paid in full [only] if Peter [dies] within that five-year period." (Defs.' 12(M) Stmt. P 16.)

**Procedural History**

On November 1, 1996, Plaintiffs filed a seven-count complaint against Hollenbach, as trustee of the Plan; the Company; the Plan; Principal Financial Group; Principal Mutual Life Insurance Company; and Korenthal and his firm. The complaint asserted, in Count VI, a common law breach of fiduciary duty claim against Korenthal, and charged the remaining Defendants with having committed various violations of the Employment Retirement Income Security Act (hereinafter "ERISA") and state [*12] law. As alleged in Plaintiffs' First Amended Complaint, filed May 5, 1997, Korenthal breached a common law fiduciary duty to Plaintiffs by: (1) settling the claims of Hollenbach and his family for an unreasonably high value when the claims of remaining creditors, including Plaintiffs, remained unsatisfied; (2) retaining insurance policies (the Executive Life policies) issued by a distressed or insolvent insurer; (3) failing to ensure that creditors received the portion of their claims deriving from Plan funds; (4) failing to "ensure preferential treatment to [Plaintiffs]" as Plan participants; (5) failing to pay Plan funds to Plaintiffs; and (6) and otherwise failing to properly exercise discretion with respect to the claims of creditors. (First Amended Complaint P 43.) [6]

> 6   The First Amended Complaint also alleged a claim against both Korenthal and Silverman under Illinois's Preference of Claims for Wages Act, 770 ILCS 85/1. That claim, however, was subsequently withdrawn by stipulation on May 23, 1997.

[*13] **Discussion**

The Korenthal Defendants have moved for summary judgment on Count VI of Plaintiffs' Amended Complaint. Summary judgment is appropriate whenever the pleadings, depositions, answers to interrogatories, and admissions on file, together with any submitted affidavits, fail to raise "a genuine issue of material fact[.]" FED. R. CIV. P. 56(c). Consistent with the procedure's underlying purpose of expediting litigation, a court must grant a motion for summary judgment if, viewing the record as a whole, it determines that a rational trier of fact could not logically find in favor of the non-movant were the case to proceed to trial. *Gleason v. Mesirow Financial, Inc.*, 118 F.3d 1134, 1139 (7th Cir. 1997) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986); *McKenzie v. Illinois Dept. of Transp.*, 92 F.3d 473, 479 (7th Cir. 1996).

Plaintiffs Haugen and Chambers charge Defendants with the tort of breach of fiduciary duty. In Illinois, a successful claim for breach of fiduciary duty requires proof of: (1) the existence of a fiduciary duty, (2) breach of that duty, and (3) resulting damages. *LaSalle Bank Lake View v. Seguban*, [*14] 937 F. Supp. 1309, 1324 (N.D. Ill. 1996); citing *Martin v. Heinold Commodities, Inc.*, 240 Ill. App. 3d 536, 608 N.E.2d 449, 181 Ill. Dec. 376 (1st Dist. 1992); aff'd in part, rev'd in part on other grounds, 163 Ill. 2d 33, 643 N.E.2d 734, 205 Ill. Dec. 443 (1994). Courts in Illinois have held that a fiduciary duty may arise in either of two ways. First, it may arise as a matter of law, pursuant to particular relationships such as the attorney-client or principal-agent relationship. *Ransom v. A.B. Dick Co.*, 289 Ill. App. 3d 663, 672, 682 N.E.2d 314, 321, 224 Ill. Dec. 753 (1st Dist.) app. denied, 174 Ill. 2d 593, 686 N.E.2d 1172 (1997). Alternatively, where a fiduciary relationship does not arise as a matter of law, it may arise where the totality of the circumstances point to a confidential relationship between the parties. *Id.* at 672, 682 N.E.2d at 322.

At least one Northern District opinion specifically recognized a fiduciary duty on the part of an assignee to creditors of the assignor, see *Page v. Liberty Mutual Fire Ins. Co.*, 869 F. Supp. 596, 600 (N.D. Ill. 1994), and Defendants have conceded this point. They argue, however, that they are entitled to summary [*15] judgment because, although Howard Korenthal owed a fiduciary duty to creditors of the Company, no such debtor-creditor relationship exists between the Company and Plaintiffs for the Plan assets. (Reply Memorandum in Further Support of Motion for Partial Summary Judgment Filed By Silverman, Korenthal & Company and Howard Korenthal (hereinafter "Defs.' Reply") at 2.) As Defendants put it, "the Plan owes Plaintiffs money--and not the Company[.]" (*Id.*) Defendants urge that Plaintiffs have offered no support for the contention that Defendants had any duty to ensure that the Plan itself filed claims against the estate or that any Plan participants file such claims. (Memorandum In Support of Motion for Partial Summary Judgment (hereinafter "Defs.' Mem. Supp. Mot. Summ. J.") at 7-8.) Defendants emphasize that the only claims Plaintiffs did submit were paid in full. (*Id.* at 8-9.)

The threshold issue before this court is whether Plaintiffs, in their capacity as Plan beneficiaries, were creditors of the Company. Plaintiffs appear to assume that the Assignment of the Company's assets to Korenthal encompassed Plan funds, but the record contains no evidence to support that assumption. [*16] It is undisputed, in fact, that Howard Korenthal did not receive custody of Plan funds pursuant to the Assignment; Plaintiff has conceded that it was Principal Mutual, the Plan's service provider, which retained possession of Plan funds through the Assignment. (Principal Mutual's 12(M) Stmt. P 13; Pls.' Resp. Principal Mutual's 12(M) Stmt. P 13.) As Plaintiffs recognize, Korenthal viewed Plan funds to be beyond the scope of the Assignment (Korenthal Dep. at 24) and Steve Nerger, Korenthal's representative, consistently refused to entertain their requests for Plan monies. (Pls.' 12(N)(3)(b) P 11.) Indeed, Plaintiffs appear to recognize that the Plan was itself a creditor of the Company; they note that Korenthal's November 9, 1992 letter characterized notes payable to the Plan in the amount of $ 550,000 as a liability of the Company and that Korenthal testified that Peter Hollenbach "moved" at least $ 450,000 from the Plan and advanced it to the Company. (Korenthal Dep. at 20.)

Plaintiffs contend these circumstances give rise to a claim that Korenthal breached fiduciary duties to them, but this court is unpersuaded. First, Plaintiffs have not argued that the Korenthal Defendants are liable [*17] for a breach of fiduciary duty under ERISA, and the plain language of the statute appears to preclude such a claim. ERISA provides that a "person is a fiduciary with respect to a plan," and therefore subject to ERISA fiduciary duties "to the extent" that he or she "exercises any discretionary authority or discretionary control respecting management" of the plan, or "has any discretionary authority or discretionary responsibility in the administration" of the plan. 29 U.S.C. § 1002(21)(A). The Korenthal Defendants do not manage or administer the Plan, and Plaintiffs do not so contend. Nor is there any evidentiary support for the notion that the Assignment encompassed Plan assets. To the contrary, as Korenthal's letter reflects, the advance of Plan funds to the Company constituted a liability of the Company.

Plaintiffs suggest that Korenthal's awareness of this transfer of Plan funds created an obligation on his part to ensure that claims for Plan funds were filed and processed; again, however, Plaintiffs offer no factual or legal support for this suggestion. The facts reflect Korenthal's apparent understanding that the advance to the Company was of Peter Hollenbach's own Plan account, [*18] not of assets properly payable to Plaintiffs. Finally, Plaintiffs offer no legal authority for the proposition that as an assignee for the benefit of creditors of the Company, Korenthal had some fiduciary obligation to see to it that claims for Plan assets be filed and paid. Even if the law imposes some obligation on an assignee to search for claims against the estate, Plaintiffs present no rationale for expanding that obligation to claims against a pension plan that is a separate legal entity.

This court concludes that Plaintiffs' claims against Korenthal should be dismissed.

**PRINCIPAL DEFENDANTS' MOTION**

Defendants Principal Financial Group, Inc. and Principal Mutual Life Insurance Company are named in two counts of Plaintiffs' First Amended Complaint. In Count V, Plaintiffs allege that the Principal Defendants [7] control the assets of the Plan but have refused Plaintiffs' requests for distribution of their share of those assets. Principal's refusal to pay Plaintiffs is purportedly based on directions from Peter Hollenbach, the trustee of the Plan, to Principal as the Plan's administrator. Specifically, Principal refused to release any Plan funds until the Internal [*19] Revenue Service had issued a "letter of determination." [8] Shelley Scott of Principal asserted in a letter dated February 18, 1993, that this requirement is imposed "by law, not through the notification of Peter Hollenbach." (Letter of Scott to Kenny, Ex. D to First Amended Complaint.) In its brief in support of the motion for leave to deposit plan assets, however, Principal relies on the fact that Hollenbach had instructed Principal Mutual not to make distributions to Plaintiffs until Hollenbach had received the determination letter. As its reason for not distributing assets to Plaintiffs, Principal asserts that Peter Hollenbach "has never advised Principal Mutual that he has received a favorable determination letter from the IRS." (Principal Memo, at 3-4.) Count V seeks a declaration that Defendants' refusal to release Plaintiffs' funds is unlawful. Court VII alleges a common law claim for conversion against the Principal Defendants and others.

> 7 Principal Financial contends that it has no employees, has no involvement in the plan administration and "does not actually hold any Plan assets." Principal Financial has nevertheless joined in Principal Mutual Life Insurance Company's motion in order "to avoid any potential disputes on this point." (Memorandum of Law in Support of Motion for Leave to Deposit Plan Assets (hereinafter "Principal Memo"), n.1. The court accordingly refers to the two Defendants together as the "Principal Defendants."

[*20]

> 8 Citing a treatise, Principal explains that when, as in this case, a pension plan is terminated, "it is generally advisable to apply for and obtain a favorable 'termination determination' letter" from IRS, which would "assure[] . . . that the plan will

be treated as qualified up to its termination date and that its assets, and benefits distributed from it, will continue to receive the favorable tax treatment applicable to qualified retirement plans." V.L. BRIGGS, ET AL., EMPLOYEE BENEFITS DICTIONARY, 45 (BNA 1992).

As noted earlier, the Principal Defendants moved for leave to deposit with the Clerk of this Court "any and all assets of the Charles Hollenbach, Inc. Profit Sharing Plan," (Principal Memo, at 1) and requested that summary judgment be entered in their favor after such deposit is made. Plaintiffs objected to that motion, urging that they are entitled to immediate payment of funds held by Principal on their behalf. On January 16, 1998, counsel for the Principal Defendants wrote to this court, advising that the Principal Defendants had entered into an agreement with Plaintiffs which [*21] rendered Principal's motion for summary judgment moot. (Severson letter of 1/16/98.) According to counsel's letter, Principal's motion to deposit Plan assets remained pending. Also pending, according to Principal's counsel, is an issue raised by litigation that Peter Hollenbach has filed in state court, purportedly on behalf of the Plan; specifically, Principal's counsel seeks a determination from this court regarding the propriety of Peter Hollenbach's request that his attorneys' fees for that litigation be paid by Plan assets.

This court continues to have the view, expressed at a status conference some weeks ago, that the payment of Plan assets to Plaintiffs (and other Plan beneficiaries) cannot, as a matter of law, be contingent upon Peter Hollenbach's notifying Principal that he has received a "letter of determination" from IRS. Thus, the court concludes that the absence of such a letter does not by itself constitute valid defense to Plaintiffs' request for a distribution of their Plan shares. Because the motion for summary judgment has been resolved between the parties, however, the court need not address this issue.

The Principal Defendants appear to view this court's expressed [*22] conclusions on the "letter of determination" issue as an endorsement of their proposal to deposit all Plan assets with the clerk of this court. The court does not, however, view its role as that of Plan administrator, and is not inclined to recommend that all Plan assets be deposited with the Clerk. The court's responsibility is to decide cases and controversies before it--here, the claims of two Plaintiffs against several Defendants, including Principal. Contrary to Principal's suggestion, the issue of Peter Hollenbach's claim for fees is not presented by the complaint or by any cross-complaint. Peter Hollenbach asserts that the issue is in fact pending before a state court (Bertucci letter of 1/15/98), and no party has offered facts to rebut that assertion.

This case is not, as Principal contends, "tailor-made" for application of Rule 67. (Principal Memo at 6.) The funds at issue are Plaintiff Haugen's and Chambers' Plan assets. If there are competing claimants to these funds, Principal has neither identified them, named them as parties, nor explained the basis for their claim(s) to these assets. Although the parties have not provided detail, the court assumes there may be other [*23] Plan participants who have or may have claims for recovery of Plan assets. Principal's request for leave to deposit Plan assets appears to assume the court is capable of locating each such claimant, determining the appropriate amount of his/her claim, adjudicating any objections or defenses, and then directing an appropriate distribution. Again, however, the case at issue involves only two Plaintiffs. If others have valid claims, they have neither presented them to this court nor sought court resolution of disputes. The court simply has no jurisdiction over the Plan assets as a whole, nor any expertise or authority to perform Plan administration.

Principal's settlement with Plaintiffs renders Principal's motion for summary judgment moot. Principal's request that the court take custody of Plan assets and determine an appropriate distribution of those assets should be denied.

**CONCLUSION**

The Korenthal Defendants' motion for summary judgment should be granted. The Principal Defendants' motion for summary judgment has been withdrawn and its request for leave to deposit plan assets with the court should be denied without prejudice.

ENTER:

Dated: March 10, 1998

REBECCA R. PALLMEYER

[*24] United States Magistrate Judge

Counsel have ten days from the date of service to file objections to this Report and Recommendation with the Honorable Paul E. Plunkett. See FED. R. CIV. P. 72(b); 28 U.S.C. § 636(b)(1). Failure to object constitutes a waiver of the right to appeal. *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).