IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DIGISOUND-WIE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No.   07 CV 6535 |
| ) | |
| BESTAR TECHNOLOGIES, INC. et al. ) | Judge Lindberg |
| ) | |
| Defendant. ) | |

**DEFENDANT CC ELECTRO SALES, INC.'S
REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO STAY AND
COMPEL ARBITRATION OR, IN THE ALTERNATIVE,
TO DISMISS COUNTS 5, 6, and 10**

Defendant, CC Electro Sales, Inc. ("CC Electro Sales"), by and through its attorneys, respectfully submits this Reply Memorandum in Support of Its Motion to Stay and Compel Arbitration or, in the Alternative, to Dismiss Counts 5, 6, and 10.[1]

### I. All of Digisound's Claims "Arise Under" the Sales Agency Agreement.

In its Response, Digisound does not, and cannot, contest that Count 3 of the Amended Complaint, which asserts that CC Electro Sales breached the parties' Sales Agency Agreement, is subject to arbitration, and therefore concedes the issue. Rather, it argues that each of the remaining Counts against CC Electro Sales (Counts 4, 5, 6, 7, 9 and 10) are not similarly subject to arbitration, even though common to each of them are assertions based on the parties' conduct under the Sales Agency Agreement. As such, Digisound's argument is contrary to the clear admonition that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses*

---

[1] Although CC Electro Sales incorporated by reference the motion to dismiss Counts 5, 6, and 10 filed by defendants BeStar Techonologies, Inc., Dirk De Young, and Helene De Young, the Court has subsequently denied that motion. CC Electro Sales will not belabor that portion of its motion, and presumes that the Court will deny dismissal for the same reasons.

*H. Cone Mem'l Hospital v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983). Digisound entirely overlooks that a request to arbitrate may not be denied by the court "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999). Here, as pleaded in its Amended Complaint, all of Digisound's claims against CC Electro Sales incorporate by reference the very same conduct relating to an alleged breach of contract that is indisputably arbitrable under the Sales Agency Agreement, and all such claims are therefore covered by the parties' arbitration clause.

In an effort to avoid the effect of its own pleading, Digisound first attempts to limit the reach of the Sales Agency Agreement's arbitration clause, contending that the "arising under" language it utilizes denotes a more limited scope than "arising out of" or "relating to" language. While the case it cites for this proposition, *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639 (7th Cir. 1993), noted that "'arising under' may denote a dispute somehow limited to the interpretation and performance of the contract itself," the Seventh Circuit did not directly address this issue, since the arbitration agreement before it provided arbitration of all disputes "arising out of" that agreement." The Court found that such language "reaches all disputes having their origin or genesis in the contract, whether or not they implicate the interpretation or performance of the contract per se." 1 F.3d at 642. However, Digisound also overlooks a further admonition from the Court:

> We note that contracting parties control their own fate when it comes to deciding which disputes to consign to arbitration. On the one hand, they may delineate precisely those claims that are subject to arbitration or, on the other, they may employ general – even vague – language in their arbitration provisions. The may also combine these techniques by using general language to authorize arbitration together

> with specific language to identify the types of disputes that are not subject to arbitration, thereby limiting the reach of phrases such as "arising out of," "arising under" or "arising out of or relating to." . . . The parties here, however, have not taken any steps to narrow the reach of the Agreement's arbitration clause, and, in light of the heavy presumption in favor of arbitration, we are left to conclude that [a count for recision of the contract] is arbitrable.

1 F.3d at 643. Thus, even if "arising under" language is more limited than "arising out of," such linguistic distinction does nothing to show that the claims asserted in the Amended Complaint by Digisound are not arbitrable. The parties did nothing to limit the reach of the "arising under" clause, and all of Digisound's claims clearly "arise under" the Sales Agency Agreement.

Turning its attention to the non-breach claims, Digisound asserts that Count 4, which alleges breach of fiduciary duty against CC Electro Sales, is not subject to arbitration because "it arises in tort and is based on a duty imposed by law, not the Agreement." (Response at 1.) This argument is entirely misguided. Digisound completely ignores that there would be no relationship between the parties (principal-agent or otherwise) – and hence no fiduciary duties – were it not for the Sales Agency Agreement, for the Sales Agency Agreement is the only source of any fiduciary relationship that may have existed between the parties. The non-binding Delaware authority it cites, *Parfi Holding AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 156-57 (Del. 2002), is thus entirely inapposite. In *Parfi*, the Delaware Supreme Court held that breach of fiduciary duty claims brought by minority shareholders were not arbitrable under an Underwriting Agreement between the parties because those fiduciary duties arose as a matter of Delaware corporate law, not "out of or in connection with" the agreement. 817 A.2d at 151. The Court stated: "The fiduciary duties [defendant] owes [plaintiff] are beyond the contract and rest on an independent set of rights provided for in the Delaware corporation law." 817 A.2d at 158. Thus, because Delaware law provided that

majority shareholders owe fiduciary duties to minority shareholders, those fiduciary duties arose separate and apart from any agreement between the parties.

Here, by contrast, it is clear that the Sales Agency Agreement is the only source of the alleged fiduciary relationship between the parties, and also created any alleged fiduciary duties owed by CC Electro Sales. In the Amended Complaint, Digisound specifically recognized this, alleging that: "**By virtue of the Sales Agency Agreement** and the agency services that CC Electro Sales undertook for Digisound-WIE, CC Electro Sales owed Digisound-WIE a fiduciary duty . . . ." (Amended Complaint, ¶ 33, emphasis added.) Thus, the very allegations of Digisound's Amended Complaint concede that the alleged fiduciary duties "arise under" the Sales Agency Agreement.

Moreover, Digisound ignores that Count 4 specifically incorporates Paragraphs 1-26 of the Amended Complaint into Count 4, and asserts that CC Electro Sales breached its fiduciary duties by "engaging in the foregoing conduct" set out in Paragraphs 1-26. As set forth in CC Electro Sales' Motion, Paragraphs 1-26 allege, among other things, that: 1) Digisound and CC Electro Sales **entered into the Agreement** (¶ 12); 2) CC Electro Sales **breached the Agreement** by representing the other defendants to offer counterfeit Digisound products, including while it was acting on behalf of Digisound under the Agreement (¶ 16); 3) CC Electro Sales, purportedly **while acting as Digisound's agent**, purposely delayed responding to customer inquiries regarding Digisound orders (¶ 17); 4) CC Electro Sales, **while under contract with Digisound**, represented to customers that it had "factory-direct" availability of Digisound parts (¶ 20); and 5) on or about June 25, 2007, CC Electro Sales "**further**" **breached the Agreement** by terminating it without providing the required 30-days' notice (¶ 22.) These very same allegations are pled in support of its breach of contract claim against CC Electro Sales (Count 3). By pleading that CC Electro Sales owed it fiduciary

4

duties by virtue of the Sales Agency Agreement, and that CC Electro Sales breached those duties by allegedly breaching the Sales Agency Agreement, Count 4 clearly "arises under" the Sales Representative Agreement and must be arbitrated. A claim that CC Electro Sales breached fiduciary duties created by the Sales Agency Agreement certainly "arises under" that Agreement.

Counts 5 and 6, which attempt to assert claims for tortious interference, similarly "arise under" the Sales Agency Agreement. Again, these claims incorporate Paragraphs 1-26 of the General Allegations, which set forth the ways in which CC Electro Sales allegedly breached the Sales Agency Agreement. As Digisound claims in its response, Counts 5 and 6 "stem from CC Electro's representations . . . that it had "factory-direct" availability of legitimate DIGISOUND parts, in an effort to misappropriate Digisound-WIE's existing and prospective customer relationships and sales." (Response at 2.) But Digisound ignores that these alleged representations were made "around" early June 2007, when CC Electro Sales was still operating under the Sales Agency Agreement (Amended Complaint, ¶¶ 20, 22) and, again, are also asserted to have been made in breach of the Agreement. (Amended Complaint ¶¶ 22 ("CC Electro Sales further breached its contract . . .) and 31 ("In engaging in the foregoing conduct, defendant CC Electro Sales breached its Sales Agency Agreement with [Digisound].)

Counts 5 and 6, by virtue of incorporating allegations regarding the Sales Agency Agreement and conduct which allegedly breached that Agreement (and, thus, implicate the parties' rights and obligations under the Agreement), accordingly "arise under" the Agreement. The case cited by Digisound for the proposition that its claims arise independent of the Agreement is inapposite. *See Fehribach v. Ernst and Young, LLP,* 2003 WL 1906136 at * 6 (S.D. Ind. January 6, 2003) ("[C]laims that present no question involving construction of the contract [containing the arbitration clause] and

no questions in respect of the parties rights and obligations under it, are beyond the scope of the arbitration agreement.") (alterations in original, citation omitted). Counts 5 and 6, which also are pled to have arisen under the Sales Agency Agreement, touch upon the parties' rights and obligations thereunder and are also subject to arbitration. *Contrast Genesco, Inc. v. T. Kakiuchi & Co, Ltd.*, 815 F.2d 840, 856 (2d Dist. 1987) (claim that companies tortiously interfered with plaintiff's contractual relationship with an executive officer of its purchasing division though commercial bribery not arbitrable because the claim was unrelated to the purchase contracts between plaintiffs and defendants, which contained arbitration clause).

The same analysis is applicable to Counts 7 and 10, which allege violations of the Lanham act and conspiracy, respectively. Both of these counts also incorporate Paragraphs 1-26 of the Amended Complaint, and allege that "[i]n engaging in the foregoing conduct" CC Electro Sales committed some wrongful act. As acknowledged by Digisound, in determining whether a claim is arbitrable, the court must focus on the factual allegations of the complaint. *Goldberg v. Focus Affil., Inc.*, 152 F.Supp.2d 978, 980 (N.D.Ill. 2001). "In determining whether a particular claim falls within the scope of the parties' arbitration agreement, we focus on the factual allegations of the complaint rather than the legal causes of action asserted. . . . **If the allegations underlying the claims "touch matters" covered by the parties' sales agreements, then those claims must be arbitrated, whatever the legal labels attached to them.**" *Genesco*, 815 F.2d at 846 (emphasis added, citation omitted). Again, by virtue of incorporating into Counts 7 and 10 allegations regarding the Sales Agency Agreement and the alleged breach thereof, which conduct also forms the basis for the Lanham Act and conspiracy claims, these counts "touch matters" covered by the Sales Agency Agreement. Accordingly, they also must be arbitrated.

Count 9, which attempts to allege a violation of the Illinois Trade Secrets Act, also touches matters covered by the Sales Agency Agreement. Although this Count does not allege that the "foregoing conduct" contained in Paragraphs 1-26 violated the Act, as the other counts do, it also incorporates by reference all of the allegations of Paragraphs 1-26 regarding the Sales Agency Agreement and the alleged breaches thereof by CC Electro Sales. Notably, Digisound does not address the fact that the Sales Agency Agreement contains a nondisclosure provision, which precludes CC Electro Sales from disclosing any information "acquired . . . while employed by" Digisound, including many of the alleged trade secrets purportedly misappropriated by CC Electro Sales. It also does not even acknowledge that, but for the Sales Agency Agreement between Digisound and CC Electro Sales, the alleged confidential information/trade secrets would not have been disclosed to CC Electro Sales. The basis for the alleged trade secret misappropriation by CC Electro Sales arises wholly from the contractual relationship between the parties, and thus Count 9 also "arises from" the Sales Agency Agreement and must be arbitrated.

Accordingly, as set forth above, Digisound cannot escape the general proposition that "Once it is clear that the parties have a contract that provides for arbitration of some issues between them, any doubts concerning the scope of the arbitration clause are resolved in favor of arbitration." *Miller v. Flume*, 139 F.3d 1130, 1136 (7th Cir. 1998). Count 3 for breach of the Sales Agency Agreement is unquestionably subject to arbitration, and the remaining claims of the Amended Complaint also "arise under" that Agreement. The Court should therefore grant the present Motion, stay all proceedings against CC Electro Sales, and enter an order compelling the parties to arbitrate all of the disputes raised in the Amended Complaint.

## II. Staying the Entire Litigation Against CC Electro Sales is Appropriate.

Should the Court determine that any count against CC Electro Sales is not subject to arbitration, it should nonetheless stay the entire litigation between Digisound and CC Electro Sales pending arbitration of the other arbitrable claims. Digisound does not contest that the Court may stay non-arbitrable claims where: 1) there is a risk of inconsistent rulings; 2) the parties will be bound by the arbitrator's decision; and 3) prejudice will not result from any delay. *See Volkswagen of America, Inc. SUD's of Peoria, Inc.*, 474 F.3d 966, 972 (7th Cir. 2007). Here, by virtue of Digisound incorporating Paragraphs 1-26 of the Amended Complaint into every Count, there certainly is the risk that the Court and the arbitrator could reach inconsistent conclusions regarding whether CC engaged in any of the alleged wrongful conduct. Moreover, Digisound has failed to allege, much less provide any proof, that any prejudice would result from staying the non-arbitrable claims against CC Electro Sales. By pleading its Amended Complaint in the confusing manner it did, incorporating breach of contract allegations into every other count, Digisound should not be heard to complain about a delay in adjudicating any non-arbitrable claims, which could have been avoided by a clearer complaint.

Digisound's reliance on the Second Circuit case of *Collins & Aikman Prod. Co. v. Building Systems, Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) is wholly misplaced. There, the Court did nothing more than recognize that piecemeal litigation is a possibility under the Federal Arbitration Act, and that non-arbitrable claims may be severed from the arbitrable ones so that litigation can proceed. Digisound ignores, however, that the Court upheld the district court's decision to stay the non-arbitrable claims, though they were "severed" from the arbitrable claim, because those claims incorporated conduct which was within the reach of the arbitration clause. 58 F.3d at 20-21. All of

8

the counts against CC Electro Sales in Digisound's Amended Complaint implicate conduct covered by the arbitration agreement – breach of the Sales Agency Agreement – and they should be stayed pending that arbitration.

## CONCLUSION

Digisound chose, in pleading its Amended Complaint, to incorporate into each and every count allegations regarding the Sales Agency Agreement and CC Electro Sales' alleged breach thereof – a claim which indisputably must be arbitrated. As such, all of Digisound's claims "arise under" the Sales Agency Agreement, and must be arbitrated. Accordingly, for the reasons set forth above, and for those contained in CC Electro Sales' Motion, CC Electro Sales, Inc. respectfully requests that the Court grant its Motion, stay all proceedings against it, and compelling arbitration of the issues raised in the Amended Complaint.

Respectfully submitted,

CC ELECTRO SALES, INC.

By: /s/ Daniel E. Beederman
One of Its Attorneys

Daniel E. Beederman, Attorney No. 03121545
Adam J. Glazer, Attorney No. 6199294
David S. Makarski, Attorney No. 6237604
Schoenberg Finkel Newman & Rosenberg, LLC
222 S. Riverside Plaza, Suite 2100
Chicago, Illinois 60606
(312) 648-2300

## CERTIFICATE OF SERVICE

TO:    Arthur B. Sternberg                   Daniel R. Formeller
Susan M. Lorenc                  James K. Borcia
Thompson, Coburn, Fagel, Haber   Charmagne Topacio
55 East Monroe St., 40th Floor       Tressler, Soderstrom, Maloney & Priess, LLP
Chicago, IL 60603               233 South Wacker Drive, 22nd Floor
                                          Chicago, IL 60606

Daniel E. Beederman, one of the attorneys for Defendant CC Electro Sales, Inc., hereby certifies that he caused a copy of the attached **Defendant CC Electro Sales, Inc.'s Reply Memorandum in Support of Its Motion to Stay and Compel Arbitration or, In the Alternative, To Dismiss Counts 5, 6 and 10** to be served on the above identified counsel, using the court's CM/ECF system, on the 20th day of May, 2008. Counsel certifies that all documents required to be served by Rule 5(a), Fed. R. Civ. P., have been served.

                                                                     /s/ Daniel E. Beederman

F:\DSM\CC Electrosales\Reply Mo Stay.wpd